IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DUSTIN LEE HONKEN,       )
                         )      No. 10-CV-03074-LRR
        Petitioner/Defendant,  )      No. 01-CR-3047-MWB
                         )
    vs.                  )
                         )
UNITED STATES OF AMERICA, )
                         )
        Respondent/Plaintiff. )

**GOVERNMENT'S ANSWER TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**

**Table of Contents**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     LEGAL STANDARD FOR 28 U.S.C. § 2255 RELIEF. . . . . . . . . . . . . . . . . . . . 4

III.    RESPONSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      Petitioner's Claims are Without Merit. . . . . . . . . . . . . . . . . . . . . . . . 9

                1.      Admission of Court's Sentencing Findings in Prior Case. . . . . . . 9

                2.      Petitioner's 1998 Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . 10

                3.      Alleged Failure to Disclose Exculpatory Evidence. . . . . . . . . . . 11

                4.       Petitioner's Conviction for a Continuing Criminal Enterprise. . . . 12

                5.      Multiplicitous Charges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                6.      Admission of Hearsay Evidence Regarding Drug Quantity. . . . . 14

                7.      Alleged Exclusion of Qualified Jurors. . . . . . . . . . . . . . . . . . . 14

                8.      Under-representation of Minorities in the Jury Pool. . . . . . . . . . 15

1

9. Alleged Ineffective Assistance in Presenting Mitigating Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10. Future Dangerousness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11. Victim Impact Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12. Error Related to Petitioner's Co-Defendant's Trial. . . . . . . . . . . 20

13. Stipulation to Admission of Maps. . . . . . . . . . . . . . . . . . . . . . . 21

14. Admission of Petitioner's Involvement With Drugs and Violence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15. Evidence of Petitioner Escape Attempt. . . . . . . . . . . . . . . . . . . 24

16. Evidence Purportedly Supporting Defendant's Theory of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

17. Dismissal of a Juror. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18. Security Measures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

19. Government's Use of Scientific Evidence. . . . . . . . . . . . . . . . . . 29

20. Cumulative Error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

21. Manner of Execution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B. Statement Regarding Use of Other Federal Remedies and Evidentiary Hearings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

2

Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, Respondent United States of America, provides the following answer to petitioner Dustin Honken's Section 2255 motion.

## I. INTRODUCTION

On December 13, 2010, Petitioner filed a Motion for Relief Pursuant to 28 U.S.C. § 2255. In his motion Petitioner asserts 21 grounds in which he claims his convictions and death sentences were obtained in violation of his rights under the Fifth, Sixth and Eighth Amendments to the United States Constitution. The vast majority of Petitioner's claims rely on an allegation of ineffective assistance of counsel in an attempt to justify his failure previously to raise these claims and avoid procedural default. Petitioner does not appear to claim he is in possession of newly discovered evidence as an explanation for failing to raise any of these issues previously. Nor does Petitioner claim actual innocence.

This Court previously granted Petitioner's motion for permission to file an amendment, giving him until June 1, 2011, to file such amendment. The Court nevertheless ordered the government to file an answer to Petitioner's motion. Limitations defenses are forfeited unless pleaded in an answer or an amendment to the answer. See Day v. McDonough, 547 U.S. 198, 207-208 (2006) (citing Rules 8(c), 12(b) and 15(a) of the Federal Rules of Civil Procedure). This Answer pertains only to Petitioner's original motion filed on December 13, 2010. The government may file an amended answer in response to an amended motion where it may assert limitations defenses at that time.

3

## II.  LEGAL STANDARD FOR 28 U.S.C. § 2255 RELIEF

Petitioner seeks relief pursuant to Title 28, United States Code, Section 2255. That section provides that a prisoner in custody under sentence of a federal court may seek to have a sentence of incarceration vacated, set aside or corrected upon the ground that the sentence

> was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or as otherwise subject to collateral attack . . ..

To obtain relief under Section 2255, a petitioner must establish: 1) the sentence was imposed in violation of the Constitution or the laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) the sentence was in excess of the maximum allowed by law; or 4) his sentence is otherwise subject to collateral attack. See *Hill v. United States*, 368 U.S. 424 (1962).  Section 2255 was enacted to create a jurisdictional basis in the sentencing court for certain types of post-conviction claims, in general those dealing with the imposition of the sentence for which the court would have access to the necessary files.  *Lee v. United States*, 501 F.2d 494, 499-500 (8th Cir. 1974).

Section 2255, however, did not grant subject matter jurisdiction over all types of post-conviction claims.  *Lee*, 501 F.2d at 500.  It established subject matter jurisdiction for the enumerated claims in the statute, which relate to the legality of the sentence. *Lee*, 501 F.2d at 500.  To allow jurisdiction under section 2255 in all cases would defeat its purpose in creating limited subject matter jurisdiction over those claims concerning the imposition of the sentence.  *Lee*, 501 F.2d at 500.  Congress only intended to shift

4

Case 3:10-cv-03074-LTS-KEM     Document 8     Filed 01/05/11     Page 4 of 32

jurisdiction over specific types of claims in order to distribute post-conviction cases more efficiently. *Lee*, 501 F.2d at 500. Section 2255 is not intended as a substitute for direct appeal, and matters which could have been raised on appeal will not be considered. *United States v. Sappington*, 527 F.2d 508 (8th Cir. 1975).

Particularly where a petitioner had a fair opportunity to previously present his federal claims to a federal court, the court is entitled to presume that the petitioner stands fairly and finally convicted and will give respect to the prior judgment. *United States v. Frady*, 456 U.S. 152, 164-65 (1982). For this reason, in a section 2255 collateral challenge, a petitioner, in order to gain relief under any claim, is obliged to show "a good deal more" than would be sufficient on a direct appeal from a sentence. *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citing *United States v. Frady*, 456 U.S. at 165 ("error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment")). Accordingly, the court is authorized to grant relief only if it determines that the challenged judgment resulted from "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Pollard*, 959 F.2d at 1020 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A claim is procedurally defaulted and barred from consideration on collateral review where a petitioner failed to raise a claim that could have been raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622 (1998). A court cannot review a petitioner's claims on the merits, when procedurally defaulted, unless the movant "is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the

5

failure to consider the claims would result in a fundamental miscarriage of justice." *McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997). The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *McCall*, 114 F.3d at 758. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal citations and quotations omitted).

One common cause for default alleged by defendants is ineffective assistance of counsel. The Sixth Amendment to the United States Constitution provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. The Supreme Court set out a two-pronged test for constitutionally ineffective assistance of counsel in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838 (1993). Counsel is constitutionally ineffective under *Fretwell* when, (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect. *Fretwell*, 506 U.S. at 368-69.

As stated by the Supreme Court in *Strickland v. Washington*:

> When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

6

The benchmark for judging any claim of ineffectiveness is whether an attorney's conduct so undermined the proper functioning of the process that it "cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 686. In other words the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. In scrutinizing counsel's performance a court is to be highly deferential. *Strickland*, 466 U.S. at 689. When examining a counsels' performance, the Court should exercise a strong presumption that the representation was within a wide range of reasonable assistance. See, e.g., *Strickland*, 466 U.S. at 687; *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002); *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001). A defendant bears a heavy burden in overcoming the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Lawrence v. Lockhart*, 767 F.2d 449, 450 (8th Cir. 1985). The presumption exists to "eliminate the distorting effects of hindsight" and recognizes that "it is all too easy for a court, examining counsel's

7

defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

A defendant must show not only that counsel's conduct fell below an objective standard of reasonableness, but show:

> that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694. The same deferential review applies to the "prejudice" portion of the test. *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989). The failure to establish "prejudice" is dispositive of the case without consideration of the *Strickland* "performance" factor. *Sanders*, 875 F.2d at 211 n.8. Accordingly, the Court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiency. *Strickland*, 466 U.S. at 697. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, the Court should do so. *Strickland*, 466 U.S. at 697. In order to show prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Pfau v. Ault*, 409 F.3d 93, 939 (8th Cir. 2005) (internal quotation and citation omitted).

If a petitioner fails to demonstrate ineffective assistance of counsel as cause for the procedural default, her collateral claim cannot survive. *Wainright v. Sykes*, 433 U.S. 72 (1977). In the context of an ineffective assistance of counsel assertion of cause to excuse procedural default, a defendant must ordinarily demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the

8

standard of conduct.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

III.     **RESPONSE**

     A.     Petitioner's Claims are Without Merit

Petitioner's allegations are without merit.  To the extent Petitioner rests the viability of his present claims of error on assertions of ineffective assistance of counsel, he is wrong.  Petitioner's trial and appellate attorneys were not ineffective.  Their conduct did not fall below an objective standard of reasonableness.  Nor can Petitioner demonstrate that he was prejudiced by his attorneys' allegedly ineffective assistance.  Petitioner's assertions of prejudice are pure conjecture and speculation.  To the extent Petitioner rests his present claims of errors on assertions of fundamental miscarriages of justice, his claims fail because he has not claimed and cannot demonstrate actual innocence.  Moreover, even assuming ineffective assistance of counsel, none of the alleged errors are of a magnitude to have resulted in a conviction of one who is actually innocent.  Finally, to the extent Petitioner objects to the manner of his execution, this Court does not have jurisdiction to address that claim and it is properly brought only in the district where Petitioner's sentence is to carried out.  The government will respond more fully to each of Petitioner's claims below.

     1.     Admission of Court's Sentencing Findings in Prior Case

Petitioner's first claim of error asserts his attorneys were ineffective for failing to object to admission of the district court's sentencing findings in relation to his prior drug conviction.  Petitioner's trial and appellate counsel were not ineffective.  Their conduct did not fall below an objective standard of reasonableness.  Admission of the evidence was not in error.  If there were error in the admission of the evidence, there were valid

strategic reasons for counsel to agree to admission of the evidence.  In any event, Petitioner cannot demonstrate he was prejudiced by admission of the evidence or his trial and appellate counsels' failure to object to admission of the evidence.

### 2.    Petitioner's 1998 Sentencing

In Petitioner's second claim of error, he asserts his trial and appellate counsel were ineffective for allegedly failing to assert that findings made in 1998 by the district court based on the presentation of some evidence of the murders at Petitioner's sentencing on drug charges somehow barred presentation of the evidence at his murder trial.  At Petitioner's 1998 sentencing hearing, years before Petitioner was charged with murder or his victims' bodies were discovered, the government presented some evidence showing Petitioner obstructed the government's investigation. Petitioner claims the district court made factual findings in his favor at the sentencing hearing.  Petitioner claims his "rights to due process, constitutional collateral estoppel, and against double jeopardy precluded the government from re-litigating the factual issues that were decided in his favor in the prior criminal proceeding" (Petitioner's Motion, at 13), and that his attorneys were ineffective for failing to raise this argument.

Petitioner's claim is without merit.  His attorneys were not ineffective for failing to assert the government was precluded from presenting evidence allegedly decided in his favor by a district court judge in relation to a prior sentencing hearing.  Petitioner was not charged with murder in the prior case.  The government was not barred from presenting evidence in support of murder charges.  Petitioner's due process rights were not violated, nor was there a viable claim of collateral estoppel, nor were his rights against double jeopardy violated.  Petitioner's attorneys' conduct did not fall below an

10

objective standard of reasonableness for failing to raise this argument. Nor was Petitioner prejudiced.

### 3. Alleged Failure to Disclose Exculpatory Evidence

Petitioner claims that one or more witnesses will assert they were "threatened, cajoled, induced and coaxed" into providing "false, exaggerated, and misleading testimony implicating Petitioner." (Petitioner's Motion, at 15). Petitioner faults his counsel for failing to adequately investigate these witnesses and impeach them with this alleged information.

Petitioner's claims are without merit. The government did not engage in the alleged misconduct. To the extent Petitioner claims witnesses were transported together and spoke about their trial testimony, if that occurred the government was not aware of it and therefore did not fail to comply with its obligations to present allegedly exculpatory evidence. It should be noted Petitioner does not claim the government was aware of this information. To the extent Petitioner claims Terry Bregar now says his blindness was caused by a stroke that affected his memory, the government did not engage in misconduct because Bregar told the government his blindness was caused by diabetes. The government was and is unaware that Bregar had or has any memory issues.

Petitioner's attorneys were not ineffective. They adequately investigated, cross examined, and impeached government witnesses. Petitioner's assertion that his counsel could have called other witnesses to impeach the government witnesses is similarly without merit. Petitioner's attorneys' decisions regarding whom to call as witnesses at trial did not fall below the standard of reasonableness. Petitioner's failure

11

to identify the "numerous witnesses" who would have allegedly testified that government witnesses fabricated their testimony bars this Court from considering this claim. Nor can Petitioner demonstrate that he was prejudiced by the alleged errors Petitioner raises in this section. The credibility of government cooperators was vigorously attacked at trial. Any potential further impeachment of government cooperators would have been immaterial given the overwhelming weight of the evidence.

Finally, Petitioner claims the government violated his Fifth and Sixth Amendment rights when he made statements to witnesses who later cooperated. Presumably, Petitioner's theory is that those witnesses were government agents based on historic cooperation and they questioned Petitioner about charges for which he then had Fifth and/or Sixth amendment counsel. Petitioner's claim is factually vague and prevents any analysis because the time and place of the alleged questioning is not provided. Timing is everything in this area of the law in order to determine whether Petitioner had a right to counsel with respect to which charges. In any event, this claim is procedurally barred from consideration by this court. Petitioner could have, but failed to, raise these claims before the district court or on appeal. Petitioner makes no claim of ineffective assistance of counsel with regard to this alleged error, and therefore cannot save it from procedural default.

4. Petitioner's Conviction for a Continuing Criminal Enterprise

Petitioner asserts he was wrongly convicted of being an organizer, supervisor, or manager of five or more other people in a Continuing Criminal Enterprise because his brother occupied a higher position than him. (Petitioner's Motion, at 25). Petitioner

12

also claims the district court erroneously instructed the jury with regard to the unanimity requirement for determining the identity of the five people Petitioner organized, supervised, or managed. (Petitioner's Motion, at 26). Petitioner claims his attorneys' performance was deficient for failing to raise these claims. Petitioner also claims, without explanation or support, the government failed to "disclose material evidence that Petitioner did not organize, supervise, or manage Jeffrey Honken in the drug operation." (Petitioner's Motion, at 28).

As to the last claim, Petitioner does not claim his attorneys were ineffective, and has not alleged any other basis for failing to raise this claim before the district court. Therefore, this claim is procedurally barred. Petitioner cannot maintain this claim based on an assertion of newly discovered evidence when he has wholly failed to allege the existence of any facts upon which to base this assertion.

As to Petitioner's other claims of error in this section, they are without merit. Contrary to Petitioner's view, the evidence fully demonstrated he was the organizer, supervisor and manager of the drug operation. Petitioner's attorneys were not ineffective for allegedly failing to develop and present evidence that Jeffrey Honken was the organizer, manager or supervisor. Nor were Petitioner's attorneys ineffective for failing to object to the jury instructions. Finally, Petitioner cannot demonstrate he was prejudiced by any of the alleged error.

#### 5. Multiplicitous Charges

Petitioner claims his trial attorneys were ineffective for failing to object to multiplicitous counts. Counts 8 through 12 were found on appeal to constitute lesser-included offenses of the Continuing Criminal Enterprise charges, Counts 13-17.

13

Petitioner claims his trial counsel should have objected to the counts and, had they done so, the outcome would have been different.

Petitioner's trial attorneys were not ineffective. They challenged the government's indictment and any alleged failure to raise a multiplicity argument did not fall below an objective standard of reasonableness. Moreover, Petitioner cannot demonstrate he was prejudiced by the alleged error.

Finally, this ground is barred from consideration as part of his Section 2255 motion as Petitioner fully litigated this issue on direct appeal.

### 6. Admission of Hearsay Evidence Regarding Drug Quantity

Petitioner claims his attorneys were ineffective for failing to object at trial, or raise as alleged error on appeal, the admission of alleged hearsay evidence regarding drug quantity. Specifically, Petitioner claims admission of a laboratory report was hearsay and violated his confrontation rights, and that his attorneys should have objected to its admission. Petitioner's attorneys were not ineffective for failing to object to admission of this evidence. They made a strategic decision not to belabor the issue when the government would simply have produced the author of the report had they objected. Moreover, the government presented significant other evidence regarding drug quantity such that the lab report was less important. Regardless, Petitioner suffered no prejudice. The evidence of drug quantity was overwhelming, independent of the laboratory report.

### 7. Alleged Exclusion of Qualified Jurors

Petitioner alleges his attorneys were ineffective for failing to object to the elimination of 29 allegedly qualified jurors as part of an agreement with the government.

14

Petitioner's attorneys were not ineffective. They negotiated a reasonable agreement with the government to eliminate jurors both sides determined would not make good jurors because of their extreme views on the death penalty or for other reasons. Petitioner's attorneys did this as part of a quid pro quo arrangement with the government which resulted in the government agreeing to eliminate jurors who appeared to be favorable to the government and/or the death penalty. Trial counsel's strategic decision to reach an agreement to expeditiously deal with hundreds of prospective jurors as part of a give-and-take arrangement with the government did not fall below an objective standard of reasonableness.

Nor was Petitioner prejudiced by counsels' conduct. Questionnaires were sent to hundreds of prospective jurors and the parties had literally hundreds of jurors available from whom to select a jury. In the end, the parties did not need to question all of the prospective jurors because they were able to seat a death qualified jury long before they ran out of venire members. Thus, even assuming counsel's conduct was ineffective, Petitioner cannot demonstrate he was prejudiced.

8.        Under-representation of Minorities in the Jury Pool

Petitioner claims his attorneys were ineffective for failing to challenge the allegedly unconstitutional system for summoning venire persons. Petitioner claims this resulted in a jury pool which under represented minorities. Petitioner's claim is without merit. His attorneys' conduct did not fall below an objective standard of reasonableness. Nor can he demonstrate he was prejudiced by the alleged failure to raise this claim.

15

<u>Alleged Ineffective Assistance in Presenting Mitigating Evidence</u>

Petitioner alleges his attorneys were ineffective for failing to make a better presentation of evidence allegedly showing his father was a bad man who's influence adversely affected Petitioner. He claims he was subject to abuse and grew up in a dysfunctional relationship with his father. Petitioner claims that, while his attorneys were aware of some of this evidence and presented some of it at the penalty phase of trial, they were ineffective and should have done better. Petitioner also claims his attorneys failed to discover and present evidence that his mother and paternal uncle and other relatives suffered from depression. Petitioner claims his counsel were ineffective for failing to present evidence regarding the effect his past drug use had on him. Petitioner claims he will present expert testimony that he suffers from a "life long anxiety disorder" which is "the leading edge of the symptoms secondary to his history of abuse, trauma and family dysfunction." (Petitioner's Motion, at 49). Allegedly, Petitioner "suffers from features seen in ADD (Attention Deficit Disorder) and OCD (Obsessive Compulsive Disorder)" (Petitioner's Motion, at 49), though apparently no expert will claim he suffers from either of these disorders. Petitioner also claims he will present expert testimony about the effect his past drug use had on his ability to reason.

Petitioner's claims are without merit. All of this alleged evidence pertaining to his childhood, drug use, anxiety and so forth are relevant in this collateral litigation only to the extent Petitioner can demonstrate his trial attorneys were ineffective for failing to develop and present this evidence at his trial, and that had they done so it would have made a difference in the outcome. Petitioner cannot satisfy this burden. His attorneys performance in presenting the penalty phase evidence did not fall below an objective

16

standard of reasonableness.  They had Petitioner mentally examined by a professional.
They presented evidence about Petitioner's drug use, his childhood, and his allegedly
bad dad.  While Petitioner's fourth set of attorneys claim they would have done a better
job presenting mitigation evidence, Petitioner cannot demonstrate the mitigation case
his attorneys did present was so below an objective standard of reasonableness that
his trial attorneys were ineffective.  Moreover, Petitioner engages in pure conjecture
when he asserts that he was prejudiced and that, had this evidence been presented,
the outcome would have been different.

Indeed, with regard to alleging prejudice, Petitioner merely "reminds the Court
that prejudice is established in the penalty phase if the unpresented mitigation could
have led to a reasonable likelihood that even one juror would have voted for life."
(Petitioner's Motion, at 55).  Petitioner volunteers to "fully brief this issue at the direction
of the Court."  (Id.).  This assertion of prejudice is wholly inadequate to state a claim.
Petitioner has failed to allege how he was prejudiced.  It is not sufficient to merely
remind the court of the law, or agree to brief the issue if directed by the Court.
Petitioner was bound as part of his Motion to allege the basis for how he claims he was
prejudiced by trial counsels' alleged ineffectiveness.  When, as here, he has completely
failed to do so, the Court should dismiss this portion of his motion now, without further
litigation or briefing.

### 10.    Future Dangerousness

Petitioner claims the district court erroneously instructed the jury regarding future
dangerousness.  He asserts the court erred when it included a "high custody
classification" in a list of factors the jury may consider in determining future

17

dangerousness. Petitioner claims that because of the nature of the expert testimony he presented, the inclusion of this factor showed the court "took sides" with the government's view regarding custody classifications. (Petitioner's Motion, at 57). Unrelated to future dangerousness, but included in the same section of his motion, Petitioner also claims the district court erred regarding instructing the jury on the burden of proof. According to Petitioner, the court should have instructed the jury that before it could "return a verdict of death, it must be convinced beyond a reasonable doubt of the relative weight of the aggravating and mitigating circumstances." (Id.). Petitioner seeks to avoid procedural default for failing to raise these alleged errors before now by blaming his counsel, claiming they were ineffective.

Petitioner's claims are without merit. The instructions were not erroneous. Custody classification is a permissible factor a jury may consider in determining future dangerousness and the court's instruction to that effect did not take anyone's side. Petitioner is simply wrong about the burden of proof – while the government must prove the existence of aggravating factors beyond a reasonable doubt, the jury does not have to find beyond a reasonable doubt the aggravating factors outweigh the mitigating factors. To the extent there was any error in the instructions, Petitioner's attorneys' failure to object to the alleged errors was not so egregious that it fell below an objective standard of reasonableness. Finally, Petitioner cannot demonstrate prejudice; indeed, he merely alleges he was prejudiced without even attempting to explain how.

11. Victim Impact Evidence

Petitioner claims the presentation of victim impact evidence in this case was "far too emotional, highly charged, and speculative, and therefore was unduly prejudicial

18

and failed to comport with the Eighth Amendment." (Petitioner's Motion, at 58). Petitioner claims the victim impact evidence "caused the Court to have an emotional reaction, which may have been seen by some jurors," which Petitioner then speculates may have tainted their views. (Petitioner's Motion, at 59). Petitioner goes on to allege the government's victim impact evidence painted an "untrue picture" of DeGeus, which trial counsel allegedly failed to challenge. Finally, Petitioner claims the Court's instruction regarding victim impact evidence failed to allow the jury to "narrow those deserving of the death penalty." (Id.). Again, to avoid procedural default for failing to raise these arguments below, Petitioner claims he would have but for ineffective assistance of counsel. Without explanation or factual basis, Petitioner claims "[t]hese failures caused Petitioner prejudice at trial and on appeal." (Petitioner's Motion, at 63).

Petitioner's claims have no merit. The evidence was not "too emotional, highly charged, or speculative" such that it violate Petitioner's rights under the Eighth Amendment. Petitioner claims the trial judge reacted emotionally is without factual basis, and his assertion that one or more jurors may have seen the judge's reaction and may have been impacted by it is base conjecture. Moreover, the instruction was not erroneous. The purpose of statutory aggravating factors are to narrow the class of defendants eligible for the death penalty. Victim impact evidence is not a statutory aggravating factor. Rather, it is a nonstautory aggravating factor that is presented as part of the selection phase of sentencing. It does not serve a narrowing function – rather, it serves the function of individualizing the case for a defendant the jury has found eligible for the death penalty. Regardless, Petitioner's claims that his attorneys were ineffective for failing to raise these arguments is unavailing. Even assuming there

19

was error, his attorneys' performance was not so deficient that if fell below an objective standard of reasonableness. Furthermore, Petitioner has failed to adequately allege prejudice, let alone demonstrate he was prejudiced by the alleged error.

### 12. Error Related to Petitioner's Co-Defendant's Trial

Petitioner claims the government presented a different case in the trial of his co-defendant, Angela Johnson, allegedly representing Petitioner as nonviolent and "suggesting" he was incapable of murder. (Petitioner's Motion, at 64). Petitioner claims this was improper and violated his Eighth Amendment rights and right to due process. These claims are procedurally barred, however, as he could have raised them before. To avoid procedural default, Petitioner again blames his attorneys, asserting they were ineffective for failing to present the evidence the government presented in the Johnson trial showing she was manipulative. Petitioner claims that evidence was available to his attorneys and they inexplicably failed to present it.

The government's presentation of evidence in the two trials was not improper or in any way inconsistent. It's theory then and today is that it is unlikely that either defendant would have committed the horrendous murders but for the participation of the other. Petitioner was the planner, the schemer, the organizer, and the evil genius behind the murders. He planned violence, threatened violence, and prepared to engage in violence. He had not personally, however, committed any significant act of physical violence himself. Rather, until he met Johnson, Petitioner had others engage in physical violence for him. Johnson, however, was an emotional, hotheaded, and violent woman who pushed Petitioner to carry out his evil plans. Johnson was Lady Macbeth and Petitioner McBeth.

20

Furthermore, Petitioner's attorneys were not ineffective for failing to present evidence vilifying Johnson. The decision may have been strategic – for vilifying Johnson does little to help Petitioner when he was the one who shot two little girls to death. In addition, the decision may have been dictated by Petitioner – in the debrief he gave on the eve of trial in an attempt to evade the death penalty, he attempted to exonerate Johnson and minimize her involvement and responsibility. Petitioner may have dictated to his counsel the degree to which he would allow them to blame Johnson. Regardless, Petitioner's attorneys' performance did not fall below an objective standard of reasonableness. Moreover, Petitioner cannot demonstrate he was prejudiced by any allegedly deficient performance by his attorneys.

### 13. Stipulation to Admission of Maps

Petitioner faults his attorneys for stipulating to admission of maps drawn by Angela Johnson showing the location of the bodies, this despite the fact he personally signed the stipulation. Petitioner's most recent set of attorneys assert trial counsel should not have entered into this stipulation, instead requiring the government to call Robert McNeese to testify about how he obtained the maps. Petitioner's current counsel reason that there was much to be gained by attacking McNeese, the fingerprint and handwriting analysis, and the conclusion that Johnson actually drew the maps.

Petitioner's claim of error in this regard betrays a fundamental failure to comprehend the nature of the evidence, which explains why trial counsel chose not to challenge its admission. The circumstantial evidence surrounding Johnson's arrest, the production of maps, and the discovery of the bodies so overwhelmingly demonstrated Johnson drew the maps and knew the location of the bodies that attempts to suggest

21

otherwise would have jeopardized any credibility counsel would have had with the jury. The evidence was sufficient without McNeese's testimony to show that no one else in the Benton County Jail could have led authorities to the bodies. Regardless of McNeese's credibility, he could not fabricate maps that, in fact, led to the bodies of Petitioner's murder victims.

Further, McNeese was a difficult witness to control, particularly on cross examination. Johnson made many statements about Petitioner that never made it before the jury, and could not because of the stipulation. Once McNeese took the stand, however, there was ever present the danger that a question would elicit from him statements Johnson made about Petitioner – a danger avoided by means of the stipulation.

Moreover, McNeese and his relationship with the government and Johnson was tangential to Petitioner's case. It was not unreasonable for trial counsel to view attacking McNeese and the government on a matter that did not directly involve Petitioner as unproductive. Therefore, Petitioner cannot demonstrate his attorneys' performance fell below and objective standard of reasonableness.

Nor can Petitioner demonstrate he was prejudiced by the stipulation. It is pure speculation to suggest that contesting this evidence and attacking McNeese's credibility would have had any impact at all on the outcome of this trial. Indeed, in Johnson's case the full frontal attack on McNeese and the government in relation to production of the maps reaped no benefit to her.

      14.    <u>Admission of Petitioner's Involvement With Drugs and Violence</u>

Petitioner faults his attorneys for failing to adequately object to statements by

22

Scott Gahn about his prior drug activity and threats of violence. Petitioner alleges the government engaged in misconduct when the "prosecutor deliberately asked a question on redirect examination that he knew, or should have known would elicit testimony that the Court had previously ruled inadmissible." (Petitioner's Motion, at 76). The question was: "How do you know that to be true?" Gahn replied that one time he owed Petitioner money for "coke" and felt that if he didn't pay "it could be bad news." (Trial Tr. 225-226). Petitioner further faults his attorneys for failing to adequately raise this alleged error in his motion for a new trial. Incredibly, in a case involving evidence Petitioner distributed pounds of 97% pure methamphetamine and murdered five people, including two little girls, Petitioner claims Gahn's passing comment was prejudicial.

The government did not engage in misconduct. Petitioner fails to fully set forth the context of the government's question and Gahn's answer so as to allow this Court to assess whether the government knew, or should have known, that it's question would have caused Gahn to bring up past drug activity. Gahn was on cross examination by Petitioner's counsel and was being questioned about the night Nicholson disappeared and why Petitioner was looking for Nicholson that night.

Parrish: I do have one last area with you. Would you agree that in 1993 you told the grand jury, when they asked you about this, that Mr. Honken – when he did ask for Greg Nicholson – just said, "I want to talk to him"?

Answer: Absolutely.

Parrish: And you would agree that, when you testified here today you said – some 11 years later, you said he was emphatic, he was insistent,

23

| | |
|---|---|
| | he was almost desperate? |
| Answer: | I know that to be the truth. |
| Parrish: | Thank you so much. |
| Answer: | You're welcome. |
| Court: | Mr. Miller, anything further? |
| Miller: | Yes, your honor.  How do you know that to be true? |

(Sent Tr. 225) (punctuation changed to make it more understandable).

It was in response to this last question by Mr. Miller, one of the prosecutors, that Gahn made a passing comment about cocaine.  Given the context in which this question was posed by the prosecutor, there is no basis to allege the prosecutor knew or should have known that Gahn would answer by bringing up a past cocaine debt.

Regardless, Petitioner's attorneys were not ineffective.  They objected to admission of drug activity outside the period of the charged conduct, though frankly it should have been admissible.  When Gahn unexpectedly made a passing reference to it anyway, counsel likely made a strategic decision not to object for fear of drawing more attention to the passing comment.  Counsel properly raised the issue in a post-trial motion, and it was dealt with on the merits.  Accordingly, their performance did not fall below an objective standard of reasonableness.  In any event, Petitioner cannot demonstrate he was prejudiced by this alleged error.  Frankly, it is rather absurd to suggest that this passing comment by Gahn would have changed the outcome of any case, much less this one.

### 15. Evidence of Petitioner Escape Attempt

Petitioner claims the Court admitted evidence of his attempt to escape from the

24

Woodbury County jail improperly as "intrinsic evidence" of charged conduct and pursuant to Rule 404(b) of the Federal Rules of Evidence. Petitioner claims this evidence should have been barred because it was "not necessary" to prove the charged conduct and "its relevance was marginal at best." (Petitioner's Motion, at 79). Petitioner claims the Court admitted the evidence because trial counsel failed to make the right argument. (Petitioner's Motion, at 80). Petitioner consumes the next three pages of his motion, however, taking issue with the Court's ruling without articulating any ground for excluding the evidence other than the ground raised by trial counsel. Rather, Petitioner seems to assert that trial counsel should have done a better job arguing the merits of the objection. Petitioner's claim that his attorneys were ineffective, therefore, is without merit. While he thinks he could argue the merits of the motion better than they, he cannot demonstrate their arguments were so deficient that their performance fell below an objective standard of reasonableness. Nor can he demonstrate he was prejudiced by his attorney's performance. The evidence was properly admissible, both as intrinsic evidence to the charged conduct and as evidence under Rule 404(b).

Petitioner also faults his attorneys for failing to request an instruction regarding the limited basis for admitting the evidence, which would have been an option had the evidence been admitted solely pursuant to Rule 404(b). The district court, however, found the evidence admissible as intrinsic to the charged conduct. A limiting instruction was, therefore, inappropriate. Therefore, trial counsels' failure to seek such an instruction was neither error nor prejudicial.

It should also be noted that, to the extent Petitioner claims prejudice as to the

25

death sentence, this evidence would have been admissible as part of the penalty phase of trial as evidence of future dangerousness. There is a relaxed standard for admission of evidence during penalty phases of capital cases. Therefore, Petitioner cannot demonstrate he was prejudiced in the penalty phase of trial by admission of this evidence.

16.    Evidence Purportedly Supporting Defendant's Theory of the Case

Petitioner claims his trial attorneys were ineffective for failing to present evidence that would have further supported his defense that Terry DeGeus killed Nicholson and the Duncan family. Petitioner claims DeGeus was the "primary suspect" for the murders and, while his attorneys presented some evidence pointing to DeGeus, it was inadequate.

DeGeus was not the "primary suspect" for the murders, most certainly not after he also went missing and was presumed to have been murdered. While law enforcement officer kept an open mind and considered all possibilities, the primary suspect for the murders was Petitioner.

To the extent Petitioner claims his attorneys could have done more to point the finger at DeGeus, he cannot demonstrate the presentation they did make was so deficient that it fell below an objective standard of reasonableness. Nor can Petitioner demonstrate he was prejudiced. The attempt to blame DeGeus for the murders of Nicholson and the Duncan family was and is completely untenable. Moreover, it does nothing to explain DeGeus's own brutal murder. The evidence overwhelmingly proved beyond any doubt Petitioner murdered all five victims.

26

### 17.   Dismissal of a Juror

Petitioner argues: 1) the district court erred in questioning a dismissed juror; 2) that the court's improper questioning may have impacted its evidentiary findings; and, 3) the Court of Appeals decision affirming the dismissal and replacement of the juror, which did not rely on the improper questioning, was nonetheless erroneous because it relied upon the district court's evidentiary findings which might have been improperly influenced by the district court's improper questioning.  All this was litigated before and would be barred from collateral attack, but to avoid procedural default Petitioner claims his counsel were "ineffective for failing to properly litigate this claim."  (Petitioner's Motion, at 93).

Essentially, Petitioner asserts his attorneys should have 1) challenged the scope of the district court's questions; and, 2) argued that the district court was wrong when it concluded Juror 523 was not the subject of improper comments by her boss.  He further asserts that, to the extent she was not credible about comments her boss allegedly made, his attorneys should have argued that the guilt verdict was therefore defective.  Petitioner does not explain how or why the guilt verdict was invalid simply because the court found Juror 523's testimony about the improper comments were not to be credited.  Petitioner also asserts his appellate counsel should have done a better job arguing this issue on appeal.

The viability of this argument depends on Petitioner's ability to demonstrate his attorneys rendered ineffective assistance of counsel.  He cannot do so.  While his fourth set of attorneys can articulate another way they might have litigated and argued this issue, they have failed to demonstrate the Petitioner's attorneys' conduct was so far

27

below an objective standard of reasonableness as to constitute ineffective assistance of counsel. Nor can Petitioner demonstrate that he suffered prejudice from the alleged ineffective assistance of his attorneys.

### 18. Security Measures

Petitioner claims the security measures used by the Marshals during trial violated his Fifth, Sixth, and Eighth Amendment rights. He claims the security measures "interfered with Petitioner's right to counsel" and "impacted the jury, who [sic] were led to believe that Petitioner was an extraordinary dangerous person." Petitioner's Motion, at page 95). Though this issue was thoroughly litigated before the district court and on appeal, Petitioner here attempts to keep this claim alive in this collateral attack by asserting he has "additional facts" to support the claim. (Petitioner's Motion, at 97 n. 10). Namely, Petitioner asserts the security measures were implemented based on "information from jail house informants that was not subject to adversarial testing and was compromised by due process violations" and "because counsel failed to present evidence of Petitioner's severe heart problems . . .." (Id.).

Petitioner's claim is without merit. This claim is barred because it was raised and thoroughly litigated in the criminal case. Petitioner's attempts to shoehorn an ineffective assistance of counsel argument in here so he can relitigate this issue should be rejected. To pursue this claim in this collateral proceeding, Petitioner would have to demonstrate his attorneys were unaware of the security measures or, even though aware of them, they were ineffective in litigating this issue. Petitioner cannot demonstrate his prior counsels' litigation efforts regarding this issue was so inadequate that it fell below an objective standard of reasonableness. Nor can Petitioner

28

demonstrate prejudice.  He claims he had some sort of heart condition, but he fails to allege, let alone show, why it follows that his heart condition in combination with the security measures impacted his right to counsel.  Further, while Petitioner alleges jurors were aware of tightened security around the courthouse during the trial, the truth is they had no knowledge he was shackled or wore a stun belt.  Petitioner fails to demonstrate what security measures the jury did know of, whether they believe it was because Petitioner posed a security risk, or that any security measures they did know of had any impact on the outcome of the case.  Indeed, Petitioner engages in pure speculation in this regard, asserting that the measures "surely" had an impact.

To the extent Petitioner seeks an evidentiary hearing and an opportunity to question jurors about this issue (Petitioner's Motion, at page 98 n.11), the government objects.  Petitioner has failed to demonstrate ineffective assistance of counsel in litigating this issue – until and unless he does so, he should not be allowed to question jurors about an issue that is procedurally barred.

### 19.    Government's Use of Scientific Evidence

Petitioner is critical of the government's expert testimony, claiming it all "suffered from serious flaws in methodology and accuracy, and generally lacked a sound scientific basis." (Petitioner's Motion, at 100).  To evade procedural default, Petitioner couches this claim in terms of ineffective assistance of counsel, asserting his attorneys "were ineffective for failing either to attempt to exclude this evidence pre-trial via a *Daubert* hearing, present contrary scientific evidence of their own, or, at a minimum, effectively challenge the Government's evidence through cross-examination." (Id.).  Petitioner cites a 2009 report by the National Academy of Sciences which he asserts

29

calls into question the forensic evidence presented by the government.

Petitioner's claim is wholly lacking in specificity. He claims all the government's scientific evidence was defective, but fails to explain how or in what regard and upon what basis he makes this claim. Without that showing, he cannot, of course, demonstrate that his attorneys were ineffective when he cannot even state the basis for why he believes the evidence was deficient. Nor can the government effectively respond to such a vague assertion of error.

Regardless, Petitioner's claim is without merit. The evidence was all admissible and was based on sound science and methodology. Petitioner cannot demonstrate ineffective assistance of counsel because the evidence was not defective and his attorneys' cross examination of the expert witnesses was not so deficient that it fell below an objective standard of reasonableness. Petitioner's reliance on the 2009 report by the National Academy of Sciences is, of course, completely misplaced as he cannot fault his attorneys' performance in 2004 for findings made in 2009.

20.    Cumulative Error

Petitioner argues that, "should this Court find error, but believe that individually they [the individual claims] do not merit relief, the Court should consider the cumulative impact of the constitutional violations." (Petitioner's Motion, at 101). Petitioner fails to acknowledge the Eighth Circuit Court of Appeals has repeatedly rejected "cumulative error" arguments as a basis for relief in relation to § 2255 petitions. See, e.g., *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative-error theory of post-conviction relief."); *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) ("We have repeatedly recognized 'a habeas petitioner cannot

30

build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.'") (quoting *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002)).  This ground is, therefore, frivolous.

        21.     <u>Manner of Execution</u>

Petitioner claims the manner of his execution would violate his Eighth Amendment rights.  This Court does not have jurisdiction to address this claim.  A prisoner may challenge the manner, location, or conditions of a sentence's execution under 28 U.S.C. § 2241.  Petitions filed under § 2241 are heard in the district where the prisoner is in custody, while § 2255 petitioners are heard in the district that sentenced the prisoner.

Moreover, this claim is not ripe, as Petitioner acknowledges.

Regardless, Petitioner's claim is without merit.  Petitioner fails to state what it is about the drugs, protocol, personnel or physical space for the execution which violates the Eighth Amendment.  As such, Petitioner has not stated a claim, so he has not preserved it.

        B.     <u>Statement Regarding Use of Other Federal Remedies and Evidentiary Hearings</u>

Pursuant to Rule 5(b) of the Rules Governing § 2255 Proceedings, the government makes the following statement based on information currently in its possession.  Petitioner has not used any other federal remedies, including prior post-conviction motions under the Rules Governing § 2255 Proceedings or any previous rules.  Petitioner has not received an evidentiary hearing on the claims made in the § 2255 Petition.

31

## IV.    CONCLUSION

WHEREFORE, for the reasons set forth above, the United States respectfully requests that the Court deny Petitioner's motion.

Respectfully submitted,

STEPHANIE M. ROSE
United States Attorney

By: s/ C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
401 First Street SE, Suite 400
Cedar Rapids, Iowa 52401
319-363-6333
(Fax 319-363-1990)
cj.williams@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on January 5, 2011.

UNITED STATES ATTORNEY

BY:  s/ S. Van Weelden

COPIES TO: Counsel of Record