# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

No. <u>11-1086</u>

---

IN RE DUSTIN LEE HONKEN,

Petitioner.

United States of America, Chief United States District Court Judge Linda R. Reade, Northern District of Iowa, and United States District Court Judge Mark W. Bennett, Northern District of Iowa,

Respondents.

---

## PETITION FOR WRIT OF MANDAMUS

---

Petition for Writ of Mandamus to the United States District Court for the Northern District of Iowa Concerning the District Court's Orders of December 16, 2010, and January 3, 2011, in Capital Section 2255 Proceedings, District Court No. 10-CV-3074-LRR

Michael Wiseman*
Shawn Nolan*
Timothy Kane*
Federal Community Defender
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Petitioner

Dated:     January 11, 2011

\* Admitted *pro hac vice* to represent Petitioner in the United States District Court for the Northern District of Iowa.

## INTRODUCTION & SUMMARY OF THE CASE

Petitioner, **Dustin Lee Honken**, is a death-sentenced federal prisoner currently seeking relief from his convictions and death sentences in proceedings under 28 U.S.C. § 2255 in the United States District Court for the Northern District of Iowa.

The Honorable Judge Mark W. Bennett presided over Petitioner's pre-trial, trial, and post-trial proceedings in the underlying capital case, and in a related prior drug prosecution. Pursuant to governing law, to a judge's duty to preside over assigned cases, and to the optimal – and nationwide – practice in § 2255 proceedings, Judge Bennett likewise would be expected to preside over these § 2255 proceedings.

However, after appointing prior and current § 2255 counsel; after deciding various preliminary matters; and after conducting an initial review of Petitioner's Motion for Relief Under § 2255 and finding that it did not plainly appear that Petitioner was not entitled to relief, Judge Bennett *sua sponte* reassigned the case to the Honorable Chief Judge Reade on December 16, 2010. The reassignment Order was highly unusual, contrary to governing rules and law, and, if permitted to stand, would undermine the important interests that underlie the proper practice by which the trial judge presides over subsequent post-conviction proceedings.

Petitioner therefore requests 20 minutes of oral argument in this Court, and asks that the Court issue a Writ of Mandamus vacating the reassignment Order and directing that Judge Bennett preside over the capital § 2255 proceedings.

## ISSUE PRESENTED

Whether the District Court committed a clear abuse of discretion that can be remedied only by a Writ of Mandamus where the judge presiding over these capital § 2255 proceedings – who for 14 years presided over all of Petitioner's criminal proceedings including the trial and sentencing in the underlying capital case and in a related prior drug case – *sua sponte* reassigned the case to another judge in direct contravention of applicable law, of nationwide practice, of the judge's duty to preside over assigned cases, and of the interests of accuracy, reliability, judicial economy, and public confidence in the federal courts?

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On April 11, 1996, Petitioner was indicted in the United States District Court for the Northern District of Iowa for conspiracy to manufacture and distribute methamphetamine and related charges. (N.D. Iowa Case No. 96-CR-3004-MWB, Dkt. No. 5.) In June 1996, Judge Bennett was assigned to preside over the case.

Petitioner pled guilty to drug charges before Judge Bennett on June 2, 1997. (*Id.* at Dkt. No. 76.) Judge Bennett then conducted a 5-day sentencing hearing between December 15, 1997, and February 24, 1998. (*Id.* at Dkt. Nos. 137-38, 177-82.) Judge Bennett formally entered judgment and sentenced Petitioner on February 25, 1998. (*Id.* at Dkt. No. 183.) After an appeal and remand from this Court, Judge Bennett entered an amended judgment and sentence on February 1, 2000. (*Id.* at Dkt. No. 219.)

Case 3:10-cv-03074-LTS-KEM    Document 10    Filed 01/13/11    Page 3 of 38
Appellate Case: 11-1086    Page: 3    Date Filed: 01/12/2011 Entry ID: 3744085

On August 30, 2001, Petitioner was again indicted in the Northern District of Iowa, for five murders and a related drug conspiracy. (N.D. Iowa Case No. 01-CR-3047-MWB, Dkt. No. 1.) Judge Bennett was again assigned. The Government sought the death penalty. Judge Bennett presided over the pretrial and trial proceedings, both for Petitioner and for his co-defendant, Angela Johnson. (*See United States v. Johnson*, N.D. Iowa Case No. 01-CR-3046-MWB.) Even for a federal death penalty case, the record in this matter was voluminous and the issues complex. Indeed, Judge Bennett published eleven opinions in Petitioner's case,[1] and another twenty opinions in Johnson's case.[2] The trial transcript in Petitioner's case

---

[1] *United States v. Honken*, 271 F. Supp. 2d 1097 (N.D. Iowa 2003); *United States v. Honken*, 380 F. Supp. 2d 996 (N.D. Iowa 2003); *United States v. Honken*, 438 F. Supp. 2d 983 (N.D. Iowa 2004); *United States v. Honken*, 378 F. Supp. 2d 880 (N.D. Iowa 2004); *United States v. Honken*, 378 F. Supp. 2d 925 (N.D. Iowa 2004); *United States v. Honken*, 378 F. Supp. 2d 928 (N.D. Iowa 2004); *United States v. Honken*, 378 F. Supp. 2d 970 (N.D. Iowa 2004); *United States v. Honken*, 378 F. Supp. 2d 1010 (N.D. Iowa 2004); *United States v. Honken*, 378 F. Supp. 2d 1040 (N.D. Iowa 2004); *United States v. Honken*, 381 F. Supp. 2d 936 (N.D. Iowa 2005); *United States v. Honken*, 477 F. Supp. 2d 1004 (N.D. Iowa 2007).

[2] *United States v. Johnson*, 131 F. Supp. 2d 1088 (N.D. Iowa 2001); *United States v. Johnson*, 196 F. Supp. 2d 795 (N.D. Iowa 2002); *United States v. Johnson*, 225 F. Supp. 2d 982 (N.D. Iowa 2002); *United States v. Johnson*, 225 F. Supp. 2d 1009 (N.D. Iowa 2002); *United States v. Johnson*, 225 F. Supp. 2d 1022 (N.D. Iowa 2002); *United States v. Johnson*, 236 F. Supp.2d 943 (N.D. Iowa 2002); *United States v. Johnson*, 239 F. Supp. 2d 897 (N.D. Iowa 2002); *United States v. Johnson*, 239 F. Supp. 2d 924 (N.D. Iowa 2003); *United States v. Johnson*, 270 F. Supp. 2d 1060 (N.D. Iowa 2003); *United States v. Johnson*, 354 F. Supp. 2d 939 (N.D. Iowa 2005); *United States v. Johnson*, 362 F. Supp. 2d 1043 (N.D. Iowa 2005); *United States v.*

Case 3:10-cv-03074-LTS-KEM   Document 10   Filed 01/13/11   Page 4 of 38
Appellate Case: 11-1086   Page: 4   Date Filed: 01/12/2011 Entry ID: 3744085

fills forty volumes spanning from August 17, 2004 to October 27, 2004, not counting extensive pre-trial and post-trial proceedings. Many of the witnesses presented and issues litigated at trial were the same as in the 1997 to 1998 drug sentencing proceedings over which Judge Bennett presided.

This Court affirmed Petitioner's convictions and sentences on September 12, 2008. *United States v. Honken*, 541 F.3d 1146 (8th Cir. 2008). Petitioner's convictions and sentences became final on December 14, 2009, when the Supreme Court denied certiorari. *Honken v. United States*, 130 S.Ct. 1011.

On October 5, 2009, Petitioner's co-defendant Johnson, who was also convicted and sentenced to death, filed a motion for relief under § 2255 before Judge Bennett. (Case No. 09-CV-3064-MWB, Dkt. No. 1.)

On September 16, 2009, Judge Bennett appointed the Capital Habeas Corpus Unit of the Federal Public Defender for the District of Arizona (Arizona CHU) as § 2255 counsel for Petitioner. (Case No. 01-CR-3047-MWB, Dkt. No. 784.) On May 20, 2010, Judge Bennett granted the Arizona CHU's motion to withdraw due to a

---

*Johnson*, 378 F. Supp. 2d 1041 (N.D. Iowa 2005); *United States v. Johnson*, 379 F. Supp. 2d 1005 (N.D. Iowa 2005); *United States v. Johnson*, 383 F. Supp. 2d 1145 (N.D. Iowa 2005); *United States v. Johnson*, 366 F. Supp. 2d 822 (N.D. Iowa 2005); *United States v. Johnson*, 377 F. Supp. 2d 686 (N.D. Iowa 2005); *United States v. Johnson*, 378 F. Supp. 2d 1049 (N.D. Iowa 2005); *United States v. Johnson*, 377 F. Supp. 2d 689 (N.D. Iowa 2005); *United States v. Johnson*, 378 F. Supp. 2d 1051 (N.D. Iowa 2005); *United States v. Johnson*, 403 F. Supp. 2d 721 (N.D. Iowa 2005).

4

conflict of interest. (*Id.* at Dkt. Nos. 788-89.) The Court appointed undersigned counsel to replace the Arizona CHU on May 25, 2010. (*Id.* at Dkt. Nos. 790-91.)

On December 13, 2010, Petitioner filed his *Motion for Relief Pursuant to 28 U.S.C. § 2255 or 28 U.S.C. § 2241.*[3] On December 14, 2010, a civil docket was opened for Petitioner's § 2255 Motion, and Judge Bennett issued an "Initial Review Order," finding that it did not plainly appear from the § 2255 Motion and the underlying record that Petitioner was not entitled to relief. (Case No. 10-CV-3074, Dkt. No. 2.)

On December 16, 2010, Judge Bennett entered an Order, which read, in its entirety: "After consultation with Chief Judge Linda R. Reade, this case is **reassigned** to her. **IT IS SO ORDERED**." (*Id.* at Dkt. No. 3, attached hereto as Ex. 1.) No such order was entered in the § 2255 proceedings of Petitioner's co-defendant Johnson, and Judge Bennett continues to preside over that case.

On December 27, 2010, Petitioner moved for reconsideration of Judge Bennett's reassignment Order and for a statement of reasons, including disclosure of any concerns warranting recusal that may have led to the reassignment. (*Id.* at Dkt. No. 6, attached hereto as Ex. 2.) The reconsideration motion set forth the applicable

---

[3] The grounds for Relief in the § 2255 Motion include claims related to Judge Bennett's findings in Petitioner's 1997-98 drug case sentencing proceedings. (*See* Case No. 10-CV-3074, Dkt. No. 1 at 5-14.)

Case 3:10-cv-03074-LTS-KEM   Document 10   Filed 01/13/11   Page 6 of 38
Appellate Case: 11-1086   Page: 6   Date Filed: 01/12/2011 Entry ID: 3744085

law and the significant interests underlying the practice of having the trial judge (when still in active service and not disqualified) also preside over § 2255 proceedings. Petitioner filed the reconsideration motion under the dockets for both the underlying criminal case (No. 01-CR-3046) and the civil § 2255 proceedings (No. 10-CV-3074).

On January 3, 2011, Judge Bennett entered an Order denying the motion for reconsideration. (*Id.* at Dkt. No. 7, attached hereto as Ex. 3.) The Order did not cite or discuss applicable law, but did provide a statement of reasons for the reassignment. Judge Bennett explained that during an informal discussion with Chief Judge Reade regarding their respective caseloads:

> I mentioned to her that Honken's § 2255 Motion had just been filed, and she volunteered to handle it, knowing that Angela Johnson's § 2255 Motion was also pending before me. Chief Judge Reade had volunteered on at least two other occasions to take one of these death penalty § 2255 Motions, and this time I took her up on her offer.... There were no other reasons, other than her offer and my volunteering to go to Tucson on five separate occasions during 2011 to help out the District of Arizona.

(*Id.* at 2.) Judge Bennett further stated that, "I have absolutely no concerns warranting my recusal." (*Id.*) Judge Bennett filed his Order under the dockets for both the underlying criminal case and the civil § 2255 proceedings. Chief Judge Reade did not rule on, or otherwise comment upon, the reconsideration motion.

6

## STANDARD OF REVIEW

"A writ of mandamus serves as a 'useful safety valve for promptly correcting serious errors.'" *In re Apple, Inc.*, 602 F.3d 909, 911 (8th Cir. 2010) (quoting *Mohawk Indus., Inc. v. Carpenter*, 130 S.Ct. 599, 608 (2009)). Mandamus is available to correct a clear abuse of discretion. *Id.* (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004), and *Wilkins v. Erickson*, 484 F.2d 969, 971 (8th Cir.1973)). "[A] clear error of law or clear error of judgment leading to a patently erroneous result may constitute a clear abuse of discretion." *Id.* (internal citations omitted). This Court "will issue a writ only where the aggrieved party has no other adequate means to attain the desired relief." *Id.* at 912 (internal citations omitted).

As explained below, the District Court's reassignment Order was a serious and clear error of law, and Petitioner has no other means to challenge it. The writ should issue.

7

# DISCUSSION

The United States Code provides:

> The business of a court having more than one judge *shall be divided* among the judges *as provided by the rules and orders of the court.*
>
> The chief judge of the district court shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe.

28 U.S.C. § 137 (emphasis added). To effectuate this statutory command, the United States District Court for the Northern District of Iowa has enacted various public administrative orders. *See* "Public Administrative Orders Index," *available at* www.iand.uscourts.gov.

Public Administrative Order No. 10-AO-01-P governs here. That order provides:

> 28 U.S.C. Section 2255 cases will be assigned to the sentencing judge who handled the criminal case.

(No. 10-AO-01-P, attached hereto as Ex. 4.) Such administrative orders have the force of law and are binding upon the court which promulgated them. *See* Fed R. Civ. Pro. 83(a); *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426 (8th Cir. 1997) ("A local rule of a district court has the force of law"); *see also* 28 U.S.C. § 137, *supra.*

Here, Judge Bennett was the sentencing judge who handled the criminal case,

8

and thus should preside over the § 2255 proceedings pursuant to the Public Administrative Order. Because Judge Bennett's reassignment Order directly contradicts the Public Administrative Order, a writ of mandamus is necessary and appropriate to effectuate 28 U.S.C. § 137 and the local rules adopted pursuant thereto. *See Utah-Idaho Sugar Company v. Ritter*, 461 F.2d 1100 (10th Cir. 1972) (discussed *infra*); *In re McBryde*, 117 F.3d 208, 223 (5th Cir. 1997) ("The Tenth Circuit has by mandamus voided assignment of a case to an improper district judge, as we would do here.") (citing *Ritter*); *see also Jenkins v. Bellsouth Corp.*, No. CV-02-1057-S, 2002 WL 32818728 at *6 (N.D. Ala. 2002) ("Departure from neutral assignment [and reassignment] procedures calls into question the hallmarks of our judicial system, fairness and impartiality, and invites public skepticism of the ability to receive justice in our court system.... Regardless of the particular circumstances surrounding the direct assignment of this action to Chief Judge Clemon, the fact remains that the deputy clerk was *not authorized to deviate from established procedures*.") (internal citations omitted) (emphasis added); *United States v. Phillips*, 59 F. Supp. 2d 1178, 1183 (D. Utah 1999) ("[even] the chief judge has no power to withdraw an assignment and reassign a case if the rules and orders of the court provide otherwise.").

*Ritter* is the seminal case applying 28 U.S.C. § 137 to judicial reassignments. That case was initially assigned to a district court judge consistent with the local

9

orders governing case assignment. *Ritter*, 461 F.2d at 1102. When the assigned judge took senior status, the chief judge reassigned the case to himself, "insist[ing] that he [was] empowered to make assignments as he [chose]." *Id.* The chief judge's reassignment order was contrary to the local rules and orders. *Id.* at 1103. The Tenth Circuit issued a writ of mandamus reversing the reassignment order. *Id.* at 1104. The court explained that, under 28 U.S.C. § 137, "the rules [governing case assignment] are applicable and effective until modified or rescinded." *Id.* at 1103. Although 28 U.S.C. § 137 permits a chief judge discretion to assign cases that fall *outside* of the purview of the local rules, "no such discretion existed here because there were rules in effect." *Id.* at 1104. Instead, the chief judge's "duty [was] to insure that the agreed upon rules [were] enforced and [were] administered so as to carry out their purposes." *Id.* at 1103. Where the chief judge did not fulfill that duty, a writ of mandamus was "essential" to effectuate 28 U.S.C. § 137 and the related local rules. *Id.* at 1104.

The situation here is the same as in *Ritter*.[4] The case was initially assigned to

---

[4] *Ritter*'s continuing vitality is beyond question. *See United States v. Figueroa-Arenas*, 292 F.3d 276, 280 (1st Cir. 2002) (citing and discussing *Ritter*); *McBryde*, 117 F.3d 208 (Fifth Circuit relying on *Ritter* to issue a writ of mandamus vacating a district court judge's case reassignment order); *Phillips*, 59 F. Supp. 2d at 1183-84 (citing *Ritter* for the principle that "[t]here is simply no extant authority in this district's local rules for any judge of this court to unilaterally make a decision concerning case assignments. Even if he so wished, the chief judge himself cannot contravene these rules."); *see also United States v. Pearson*, 203 F.3d 1243, 1262 (10th Cir. 2000).

Appellate Case: 11-1086   Page: 11   Date Filed: 01/12/2011   Entry ID: 3744085

Judge Bennett pursuant to the local rules governing § 2255 proceedings. Judge Bennett subsequently reassigned the case contrary to the local rules. On Petitioner's motion for reconsideration, Judge Bennett made clear that the reassignment was not related to any concerns warranting recusal; instead, the reassignment derives from Judge Bennett's caseload concerns and his apparent belief that he is empowered to make individual case reassignments regardless of the local rules. Despite her statutory duty to be "responsible for the observance of such rules and orders," 28 U.S.C. § 137, Chief Judge Reade agreed to the reassignment.[5] As in *Ritter*, a writ of mandamus is essential to ensure that the local rules are followed.

The District Court's failure to follow its own assignment rules constitutes a "serious error" that is remediable through mandamus. Important interests underlie the local – and nationwide – practice of having the trial judge preside over § 2255 proceedings. *See Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("a motion under s 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner."). The trial judge has an "advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were

---

[5] It is of no moment that the Order was in the nature of reassignment, as opposed to an initial assignment. *McBryde*, 117 F.3d at 224 ("the initial assignment rule prohibited, by implication, the chief judge from reassigning cases already assigned to a particular judge"); *accord Ritter*, 461 F.2d at 1103.

prejudicial." *Massaro v. United States*, 538 U.S. 500, 506 (2003).[6] Thus, in the absence of reasons justifying disqualification, "[c]ollateral attacks on convictions... should be heard, if possible, by the judge who imposed the sentence." *Morrison v. United States*, 432 F.2d 1227 (5th Cir. 1970).

The interests in having a trial judge's firsthand recollections, perspective, and insights at hand during § 2255 proceedings are only heightened in capital cases, because a court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." *Kyles v. Whitley*, 514 U.S. 419, 422 (1995); *see also Sumner v. Shuman*, 483 U.S. 66, 72 (1987) (the Eighth Amendment requires "heightened reliability... in the determination whether the death penalty is appropriate"). The trial court's "advantageous perspective" is particularly notable here, where the record is so voluminous and where Judge Bennett has presided over Petitioner's prosecutions for more than fourteen years. In these circumstances, Petitioner has significant interests in Judge Bennett continuing to preside over these § 2255 proceedings.[7] The reassignment Order frustrates those interests.

---

[6] *See also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir.1996) ("[W]hen the trial judge also hears the collateral proceedings ..., that judge may rely on his recollections of the trial in ruling on the collateral attack.").

[7] *See United States v. Snyder*, 235 F.3d 42, 46 (1st Cir. 2000) ("the unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice"); *cf. United States v. Arache*, 946 F.2d 129, 140 (1st Cir.1991) (acknowledging "some force" to the argument that recusal can prejudice

12

Important interests likewise underlie the neutral system of *district-wide* case assignment rules established by 28 U.S.C. § 137. *See Phillips*, 59 F. Supp. 2d at 1180. As one court has explained:

> The random assignment of cases, and the random reassignment in the event of disqualification, has the obvious, commonsensical and beneficial purpose of maintaining the public's confidence in the integrity of the judiciary. This purpose is defeated when cases or motions are assigned, or reassigned, to judges who are handpicked to decide the particular case or motion in question. A system of random assignment is purely objective and is not open to the criticism that business is being assigned to particular judges in accordance with any particular agenda. The subjective method employed in the present case was anything but random, and at a minimum the appearance of impropriety is manifest.

*Grutter v. Bollinger*, 16 F. Supp. 2d 797, 802 (E.D. Mich. 1998). Another court expressed the same concerns:

> In the end, the system can do no more than ensure that, whatever biases judges bring to the decisionmaking process, they play no role in the assignment process. Judges and cases are to be paired randomly, *not deliberately.*

*Jenkins v. Bellsouth Corp.*, No. CV-02-1057-S, 2002 WL 32818728 at *6 (N.D. Ala. 2002) (emphasis by the court) (internal quotations omitted). Given these concerns, a judge may not reassign cases as a matter of personal preference:

> The purpose of the rules relating to assignment is to ensure that cases are assigned at random to avoid the evils, real or perceived, of forum shopping. One must distinguish between recusal and re-assignment. In

defendant where the recusing judge has become familiar with facts of the case).

Case 3:10-cv-03074-LTS-KEM   Document 10   Filed 01/13/11   Page 14 of 38
Appellate Case: 11-1086   Page: 14   Date Filed: 01/12/2011   Entry ID: 3744085

the event a judge recuses him or herself, the case is returned to a common pool and another random assignment is made. There is no express power on the part of the assigned judge to reassign a case. He or she may accept it. He or she may recuse. But he or she may not override the random assignment system as mandated by the court's rules or the court's standing orders. They govern. He or she has no power unilaterally to modify the rule. The rules are court rules, not an individual judge's rules.

*Phillips*, 59 F. Supp. 2d at 1185. Here, the deliberate, case-specific reassignment Order undermines the "public's confidence in the integrity of the judiciary" and creates "the appearance of impropriety." This Court can cure this serious error only by enforcing the district-wide assignment procedures adopted pursuant to 28 U.S.C. § 137.

Finally, as the judge who presided over all of the previous proceedings in this case, Judge Bennett has "an obligation to [the] litigants and their colleagues not to remove [himself] needlessly." *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988) (quoted with approval in *Southwestern Bell Telephone Co. v. F.C.C.*, 153 F.3d 520, 523 (8th Cir. 1998)).[8] Indeed, both Judge Bennett and Chief Judge Reade have elsewhere recognized repeatedly their strong duty to preside over assigned cases, including this case. *See United States v. Honken*, 381 F.Supp.2d 936, 970 (N.D. Iowa 2005) (Bennett, J.) ("a judge has as strong a duty to sit when there is

---

[8] *Accord United States v. Snyder*, 235 F.3d 42, 46 & n.1 (1st Cir. 2000) (absent grounds for recusal, the "duty to sit" requires a judge to preside over an assigned case).

no legitimate reason to recuse as he does to recuse when the law and facts require.")
(quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir.1995)); *see also, e.g., United States v. Ibarra-Castaneda*, 396 F. Supp. 2d 1004, 1008 (N.D. Iowa 2005) (Reade, C.J.) ("A judge is as much obliged not to recuse herself when it is not called for as she is obliged to when it is.") (citations omitted); *United States v. Rubashkin*, No. 08-CR-1324-LRR, 2010 WL 4362455 at *9 (N.D. Iowa 2010) (Reade, C.J.) ("A judge's duty not to recuse herself when unwarranted is just as important as a judge's duty to recuse when required."). In other words, given Judge Bennett's statement that there are no concerns warranting his recusal (Ex. 3 at 2), Judge Bennett has a "strong duty" to preside over this case.

## CONCLUSION

Judge Bennett's reassignment Order runs afoul of governing law; frustrates the concerns for accuracy, reliability, and efficiency in these capital proceedings; undermines public confidence in the federal judiciary; and violates his strong duty to preside over the case. In accepting this reassignment, Chief Judge Reade failed to fulfill her statutory obligation to enforce the local rules. This Court can and should cure this error by issuing a writ of mandamus vacating the reassignment Order and directing that Judge Bennett preside over this case consistent with the local rules.

Undersigned counsel certifies that this petition is not being filed in order to cause any delay in these proceedings. Indeed, Petitioner submitted a motion to

15

reconsider within 10 days of the reassignment Order, and is submitting this Petition within 10 days after Judge Bennett denied that motion. Since the motion for reconsideration of the reassignment Order was denied, Petitioner filed a proposed scheduling order (earlier directed by Judge Bennett and subsequently required by Chief Judge Reade). Further, under Judge Bennett's earlier order, Petitioner's Amended § 2255 Motion is due in June, 2011. Petitioner continues to prepare for that filing, and for the evidentiary hearing that Judge Bennett ordered for October, 2011. Counsel's purpose in submitting this petition is simply to ensure that all of the proceedings in this case are conducted fairly and properly.

Case 3:10-cv-03074-LTS-KEM    Document 10    Filed 01/13/11    Page 17 of 38
Appellate Case: 11-1086    Page: 17    Date Filed: 01/12/2011 Entry ID: 3744085

WHEREFORE, Petitioner respectfully requests 20 minutes of oral argument and respectfully requests that the Court issue a Writ of Mandamus vacating the reassignment Order.

Respectfully Submitted,

Michael Wiseman
Shawn Nolan
Timothy Kane
Capital Habeas Corpus Unit
Federal Community Defender
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, Pennsylvania 19106
215-928-0520

Dated:      January 11, 2011
            Philadelphia, PA

Case 3:10-cv-03074-LTS-KEM   Document 10   Filed 01/13/11   Page 18 of 38
Appellate Case: 11-1086   Page: 18   Date Filed: 01/12/2011 Entry ID: 3744085

# Certificate of Service

I, Timothy P. Kane, hereby certify that on this 11th day of January, 2011, I filed the foregoing Petition for Writ of Mandamus with service via first class mail to:

C.J. Williams
Assistant United States Attorney
United States Attorney's Office
Northern District of Iowa
401 First Street, S.E.
Hach Building, Suite 400
Cedar Rapids, IA 52401-1825


The Honorable Chief Judge Linda R. Reade
United States District Court for the Northern District of Iowa
4200 C Street SW
Cedar Rapids, IA 52404


The Honorable Mark W. Bennett
United States District Court for the Northern District of Iowa
P.O. Box 838
Sioux City, IA 51102-0838



_____
Timothy P. Kane

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

DUSTIN LEE HONKEN,

      Petitioner,

vs.

UNITED STATES OF AMERICA,

      Respondent.

No. C 10-3074-MWB
(No. CR 01-3047-MWB)

**ORDER REASSIGNING CASE**

After consultation with Chief Judge Linda R. Reade, this case is **reassigned** to her.

**IT IS SO ORDERED.**

**DATED** this 15th day of December, 2010.

Mark W. Bennett

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

# Exhibit 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA,

Respondent,

-v-

DUSTIN LEE HONKEN,

Petitioner.

: No. 01-CR-3047– MWB
: &
: No. 10-CV-03074– LRR
:
: **CAPITAL 2255 PROCEEDINGS**

## PETITIONER'S MOTION FOR RECONSIDERATION OF THE COURT'S REASSIGNMENT ORDER AND FOR A STATEMENT OF REASONS

Petitioner, Dustin Lee Honken, through undersigned counsel, respectfully submits this motion regarding the Honorable Judge Mark W. Bennett's Order of December 16, 2010, reassigning this matter to the Honorable Chief Judge Linda R. Reade. The reassignment Order was highly unusual, contrary to the optimal and proper practice of the trial judge presiding over subsequent post-conviction proceedings, and raised – but left unanswered – significant questions about the rationale and necessity of the case reassignment. Petitioner accordingly requests that the Court reconsider the Order and provide a statement of reasons for the reassignment, including disclosure of any concerns warranting Judge Bennett's

1

recusal. Petitioner respectfully submits this motion under both of the case dockets referenced above, the former being Petitioner's underlying criminal case and the latter being the new civil docket created subsequent to the filing of Petitioner's § 2255 motion. In support of this motion, Petitioner states:

## BACKGROUND AND PROCEDURAL HISTORY

1. Petitioner was indicted on April 11, 1996, with conspiracy to manufacture and distribute methamphetamine and related charges. On June 10, 1996, Judge Bennett was assigned to preside over the case.

2. Petitioner pled guilty to drug charges in front of Judge Bennett on June 2, 1997. Judge Bennett then presided over a 5-day sentencing hearing between December 15, 1997, and February 24, 1998. Judge Bennett formally entered judgment and sentenced Petitioner on February 25, 1998. After an appeal and remand from the Eighth Circuit, Judge Bennett entered an amended judgment and sentence on February 1, 2000.

3. On August 30, 2001, Petitioner was indicted in the instant case for five murders and related charges. Judge Bennett presided over the pretrial and trial proceedings, both for Petitioner and for his co-defendant, Angela Johnson. Even for a federal death penalty case, the record in this matter was voluminous and the issues complex. Indeed, Judge Bennett published a dozen opinions in Petitioner's case, and

2

another twenty opinions in Johnson's case. The trial transcript in Petitioner's case fills forty volumes spanning from August 17, 2004 to October 27, 2004, not counting extensive pre-trial and post-trial proceedings. Many of the witnesses presented and issues litigated at trial were the same as in the 1997 to 1998 sentencing proceedings over which Judge Bennett presided.

4. The Eighth Circuit Court of Appeals affirmed Petitioner's convictions and sentences on September 12, 2008. *United States v. Honken*, 541 F.3d 1146. Petitioner's convictions and sentences became final on December 14, 2009, when the Supreme Court denied certiorari. *Honken v. United States*, 130 S.Ct. 1011.

5. On September 16, 2009, Judge Bennett appointed the Capital Habeas Corpus Unit of the Federal Public Defender for the District of Arizona (Arizona CHU) as § 2255 counsel. (Case No. 01-CR-3047-MWB, Dkt. No. 784.) On May 20, 2010, Judge Bennett granted the Arizona CHU's motion to withdraw due to a conflict of interest. (*Id.* at Dkt. Nos. 788, 789.) The Court granted undersigned counsel's motion to be appointed as replacement counsel on May 25, 2010. (*Id.* at Dkt. Nos. 790, 791.)

6. On December 13, 2010, Petitioner filed his Motion for Relief Pursuant to 28 U.S.C. § 2255 or 28 U.S.C. § 2241. On December 14, 2010, a civil docket was opened for Petitioner's § 2255 Motion, and Judge Bennett issued an "Initial Review

3

Order," finding that it did not plainly appear from the § 2255 Motion and the underlying record that Petitioner was not entitled to relief.

7. On December 16, 2010, Judge Bennett entered an Order, which read, in its entirety: "After consultation with Chief Judge Linda R. Reade, this case is **reassigned** to her. **IT IS SO ORDERED**." (No. 10-CV-03074– LRR, Dkt. No. 3.) Judge Bennett continues to preside over the § 2255 proceedings of Petitioner's co-defendant, Angela Johnson.

## DISCUSSION

8. Under the governing Public Administrative Order in the Northern District of Iowa, "28 U.S.C. Section 2255 cases will be assigned to the sentencing judge who handled the criminal case." (No. 10-AO-01-P.) Judge Bennett was the sentencing judge here, and would normally be expected to preside over the § 2255 proceedings.

9. Important interests underlie the local – and nationwide – practice in which the trial judge presides over § 2255 proceedings. The trial judge has an "advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." *Massaro v. United States*, 538 U.S. 500, 506 (2003). Accordingly, "a motion under s 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner." *Blackledge*

4

*v. Allison*, 431 U.S. 63, 74 n.4 (1977). In the absence of reasons justifying disqualification, "[c]ollateral attacks on convictions, as by way of motion to vacate judgment of conviction and sentence, should be heard, if possible, by the judge who imposed the sentence." *Morrison v. United States*, 432 F.2d 1227 (5th Cir. 1970).

10. The interests in having a trial judge's firsthand recollections, perspective, and insights at hand during § 2255 proceedings are only heightened in capital cases, because a court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." *Kyles v. Whitley*, 514 U.S. 419, 422 (1995); *see also Sumner v. Shuman*, 483 U.S. 66, 72 (1987) (the Eighth Amendment requires "heightened reliability... in the determination whether the death penalty is appropriate"). The trial court's "advantageous perspective" is particularly notable here, where the record is so voluminous and where Judge Bennett has presided over Petitioner's prosecutions for more than fourteen years.

11. In these circumstances, and assuming that Judge Bennett's reassignment Order was not motivated by concerns justifying recusal, Petitioner has significant interests in Judge Bennett continuing to preside over these § 2255 proceedings. The reassignment Order frustrated those interests and violated the Public Administrative Order, without explanation. Accordingly, Petitioner requests that the Court reconsider the reassignment Order in light of the concerns discussed above.

12.     Petitioner also respectfully requests that the Court explain the reasons for Judge Bennett's Order. Undersigned counsel notes that the circumstances of this case might have required Judge Bennett's recusal at some point, and in those circumstances Judge Bennett could not properly select and engage in "consultation" with the successor judge, as the reassignment Order here indicates. (*See* No. 10-CV-03074– LRR, Dkt. No. 3.)

13.     Indeed, Claim Eleven of the § 2255 Motion raises a ground for relief that Judge Bennett displayed an emotional response to victim impact testimony at trial. Those allegations might require factual development at an evidentiary hearing in which Judge Bennett might become a witness. Further, trial counsel previously moved for a new trial on grounds that Judge Bennett should have recused himself *sua sponte* at trial. *See United States v. Honken*, 381 F.Supp.2d 936, 967-77 (N.D. Iowa 2005). Given that Judge Bennett's recusal, or lack thereof, was an issue in the underlying case and could become an issue in these proceedings, undersigned counsel believes that concerns relating to recusal may have motivated the reassignment Order.

14.     Nonetheless, as Judge Bennett recognized in defending his decision not to recuse himself *sua sponte* at trial, "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *id.* at 970 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir.1995)); *see also id.* ("A judge has as much obligation not to recuse himself where there is no reason to

6

do so as he does to recuse himself when the converse is true.") (quoting *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir.1994)). In other words, in the absence of facts warranting recusal, Judge Bennett has a "strong duty" to preside over these proceedings.

15. Thus, the reassignment Order potentially runs afoul of local and nationwide procedure, of concerns for accuracy and reliability required by the Eighth Amendment in these capital proceedings, and of Judge Bennett's "strong duty" to preside over the case. Whether or not Judge Bennett's Order was motivated by concerns warranting recusal, Petitioner is entitled to an explanation of the Order, in sufficient detail to permit an appellate court to consider the propriety both of the reassignment itself and of the manner in which it was accomplished.

16. In submitting this motion within ten days of the reassignment Order, and more than five months before the Amended § 2255 Motion is due, undersigned counsel do not seek to cause any undue delay in these proceedings. To the contrary, counsel seek to ensure that all of the proceedings in this case are fair and proper and accomplished in an expeditious manner. Counsel have the utmost respect for Chief Judge Reade and Judge Bennett but submit this motion in order to preserve and enforce Petitioner's substantial rights to full and fair procedures in this litigation.

7

WHEREFORE, Petitioner respectfully requests that the Court reconsider Judge

Bennett's reassignment Order, and provide a statement of reasons for the

reassignment.


Respectfully Submitted,

/s/ Michael Wiseman

_____

Michael Wiseman
Shawn Nolan
Timothy Kane
Capital Habeas Corpus Unit
Federal Community Defender
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, Pennsylvania 19106
215-928-0520

Dated:      December 27, 2010
             Philadelphia, PA

Case 3:10-cv-03074-LTS-KEM    Document 10    Filed 01/13/11    Page 30 of 38
Appellate Case: 11-1086    Page: 30    Date Filed: 01/12/2011 Entry ID: 3744085

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 27th day of December, 2010, I filed the foregoing Motion with service via the Court's ECF system to be delivered electronically to:

C.J. Williams
Assistant United States Attorney
United States Attorney's Office
Northern District of Iowa
401 First Street, S.E.
Hach Building, Suite 400
Cedar Rapids, IA 52401-1825

/s/ Michael Wiseman

_____
Michael Wiseman

# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

DUSTIN LEE HONKEN,

      Petitioner,

vs.

UNITED STATES OF AMERICA,

      Respondent.

No. C 10-3074-MWB
(No. CR 01-3047-MWB)

**ORDER REGARDING MOTION TO RECONSIDER REASSIGNMENT OF THE CASE**

On December 15, 2010, I entered an order stating, "After consultation with Chief Judge Linda R. Reade, this case is **reassigned** to her." Order (docket no. 3) (emphasis in the original). This case is before me on petitioner Honken's December 27, 2010, Motion For Reconsideration Of The Court's Reassignment Order And For A Statement Of Reasons (docket no. 6).

Honken asserts that the reassignment Order was highly unusual, contrary to the optimal and proper practice of the trial judge presiding over subsequent post-conviction proceedings, and raised, but did not answer, significant questions about the rationale and necessity of the case reassignment. Accordingly, he requests that the court reconsider the Order and provide a statement of reasons for the reassignment, including disclosure of any concerns warranting my recusal.

I have considerable doubt that a judge is required to state any reasons for reassignment of a case to another judge of the district. Nevertheless, I provide the following explanation for the reassignment of this § 2255 Motion.

The reassignment of this case to Chief Judge Reade coincided with her unrelated visit to Sioux City and a general discussion of our respective caseloads. That discussion

Appellate Case: 11-1086   Page: 33   Date Filed: 01/12/2011 Entry ID: 3744085

was not in terms of numbers of cases, but in terms of how busy we each felt we were. It was the type of informal discussion we have several times each year, such discussions never involve any comment on the merits of any of the cases, and neither did this one. I mentioned to her that Honken's § 2255 Motion had just been filed, and she volunteered to handle it, knowing that Angela Johnson's § 2255 Motion was also pending before me. Chief Judge Reade had volunteered on at least two other occasions to take one of these death penalty § 2255 Motions, and this time I took her up on her offer. I do recall Mr. Honken expressing some dissatisfaction with me as his trial judge in his allocution and, while that was in the back of my mind and I thought he might appreciate a new judge having a fresh look at the case, that was not a motivating factor. Had Chief Judge Reade not volunteered, I would not have transferred the case. There were no other reasons, other than her offer and my volunteering to go to Tucson on five separate occasions during 2011 to help out the District of Arizona. More specifically still, there was nothing about the arguments raised in Honken's § 2255 Motion that affected my decision to transfer the case. Again, I would not have transferred the case if Chief Judge Reade had not volunteered to take it. I have absolutely no concerns warranting my recusal.

That said, I find no grounds to withdraw the order reassigning this case to Chief Judge Reade, and, consequently, petitioner Honken's December 27, 2010, Motion For Reconsideration Of The Court's Reassignment Order And For A Statement Of Reasons (docket no. 6) is **denied**. This case remains assigned to Chief Judge Reade.

**IT IS SO ORDERED.**

**DATED** this 3rd day of January, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

2

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA

IN THE MATTER OF

CASE ASSIGNMENTS

**PUBLIC**
**ADMINISTRATIVE ORDER**

No. 10-AO-01-P
(Supercedes 08-AO-14-P;
08-AO-0008-P; and 07-AO-0011-P)

---

Effective February 1, 2010, the following case assignment procedure is approved for the Northern District of Iowa.

1. 28 U.S.C. Section 2255 cases will be assigned to the sentencing judge who handled the criminal case.

2. 42 U.S.C. Section 1983 cases will be assigned in the following manner: In the Cedar Rapids Division and the Eastern Division, Chief Judge Reade 60%, Senior Judge McManus 40%. In the Central Division and the Western Division, Judge Bennett 60%, Senior Judge O'Brien 40%.

3. All other civil cases filed in the Cedar Rapids Division and Eastern Division will be assigned in the following manner: Chief Judge Reade 60%, Senior Judge McManus 40%.

4. All other civil cases (except Social Security) filed in the Central and the Western Divisions will be assigned to Judge Bennett 66.6% and to Senior Judge O'Brien 33.3%.

5. Social Security cases filed in the Central Division and the Western Division will be assigned to Judge Bennett 50% and to Senior Judge O'Brien 50%.

6. Criminal cases filed in the Western Division will be assigned to Judge Bennett 66% and to Senior Judge O'Brien 33.3%. Criminal cases arising in the Central Division counties of Emmet, Palo Alto, Pocahontas, Calhoun, Carroll, Kossuth, Humboldt, Webster, Winnebago, Hancock, Wright or Hamilton will be assigned to Judge Bennett.

7. Criminal cases filed in the Cedar Rapids Division, Eastern Division and criminal cases arising in the Central Division counties of Worth, Cerro Gordo, Franklin and Butler will be assigned to Chief Judge Reade.

8. All foreclosure cases filed in the Cedar Rapids Division and the Eastern Division will be assigned to Senior Judge McManus.

9. All foreclosure cases filed in the Central Division and the Western Division will be assigned to Senior Judge O'Brien.

10. Notwithstanding the above specific assignment procedures, the Clerk of Court will annually review caseloads to ensure that senior judges maintain not less than 25% of the average active judge caseload in the Northern District of Iowa in accordance with Administrative Order 07-AO-0001-P and so that senior judges can be re-certified to the Eighth Circuit Court of Appeals pursuant to 28 U.S.C. Section 371 and the Eighth Circuit Judicial Council Order on standards for senior judges.

2

This Order supercedes Administrative Orders 08-AO-14-P dated December 1, 2008; 08-AO-0008-P dated April 2, 2008; and 07-AO-0011-P dated October 10, 2007.

**IT IS SO ORDERED.**

**DATED** this 28 day of October, 2010.

Linda R. Reade, Chief Judge
United States District Court
Northern District of Iowa

Mark W. Bennett, Judge
United States District Court
Northern District of Iowa

Edward J. McManus, Senior Judge
United States District Court
Northern District of Iowa

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

3