**5**

B002430

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

  vs.                         No. CR96-3004

DUSTIN LEE HONKEN,          TRANSCRIPT OF
                             PLEA TAKING

     Defendant.
_____/

**ORIGINAL**

    The Plea Taking held before the Honorable Mark W. Bennett, Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, June 2, 1997, commencing at 12:26 p.m.

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | STEVEN COLLOTON, ESQ.<br>PATRICK REINERT, ESQ.<br>Assistant United States Attorneys<br>Suite 400<br>401 First Street Southeast<br>Cedar Rapids, IA 52407-4950 |
| For the Defendant: | ALFREDO PARRISH, ESQ.<br>Parrish, Kruidenier, Moss,<br>  Dunn, Montgomery & Thomas<br>2910 Grand Avenue<br>Des Moines, IA 50312-4297 |
| Also present: | Jay Jackson, U.S. Probation |
| Reported by: | Shelly Semmler, RMR, CRR<br>320 Sixth Street<br>Sioux City, IA 51101<br>(712) 233-3846 |

GOVERNMENT
EXHIBIT
302
CR01-3047

THE COURT: Good afternoon. Please be seated.

MR. PARRISH: Afternoon, Your Honor.

THE COURT: This is United States of America versus Dustin Lee Honken, Criminal Number 96-3004. The defendant is personally present in court with his attorney Alfredo Parrish from Des Moines. Mr. Parrish, nice to see you.

MR. PARRISH: Good to see you, Judge.

THE COURT: How have you been?

MR. PARRISH: Pretty busy but -- not the results I want, you know, but everything is --

THE COURT: How long did that trial last in Cedar Rapids?

MR. PARRISH: Three weeks. It went pretty rapidly.

THE COURT: Well, it's always nice to have you in court.

United States of America is represented by Assistant U.S. Attorneys Pat Reinert and Steve Colloton. Nice to see you two.

MR. COLLOTON: Morning.

MR. REINERT: Morning, Judge.

THE COURT: Hope you had a safe trip over here.

We're here for a change of plea as I understand it. Mr. Colloton, I don't want to slight you, but I have to address one of you. Is Mr. Reinert the lead guy in this case at least for purposes of the plea this morning?

MR. COLLOTON: Yes, Your Honor.

THE COURT: Mr. Reinert, is my understanding correct that Mr. Honken wants to plead guilty to Counts 1, 2, 3 and 4 of the superseding indictment?

MR. REINERT: Your Honor, actually this morning Mr. Parrish and I had a discussion, and we have agreed that the defendant will plead guilty to Counts 1 and 4 which are the two 10-to-life penalties, and Counts 2 and 3 will be dismissed after sentencing.

THE COURT: Okay. Is that correct, Mr. Parrish?

MR. PARRISH: That is correct, Your Honor.

THE COURT: Okay. Mr. Honken, I know Mr. Parrish has gone over this matter with you in some detail, but I want to make sure I explain it to you. And what we're going to do this morning or I guess this afternoon, whatever it is, is a change of plea. You have a right to plead not guilty and continue with your desire to have a trial in this case. My understanding is you want to plead guilty. Is that correct?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: And before I can accept a guilty plea from you, I have to be satisfied of a number of things. I'm just going to try and list them for you.

I have to be satisfied that you're physically and mentally capable of making the decision to plead guilty; that I've advised you of what the maximum possible punishments are

so that you understand the maximum sentence that you could receive; that you understand what the elements of the offenses are, in other words, that you understand what the government would have to prove at trial in order to prove you guilty of the charges.

I have to explain to you your rights to trial by jury and make sure you understand that by pleading guilty this afternoon you give up forever the right to have a jury determine your innocence or guilt on Counts 1 and 4, the two counts you're pleading guilty to.

I have to be satisfied that there is a factual basis for your plea, in other words, you did what the government alleges you did in Counts 1 and 4 of the indictment.

And finally I have to be satisfied that your decision to plead guilty is a voluntary decision, that nobody's coerced you or threatened you in any way in attempting to get you to plead guilty. Do you understand in general the nature of the proceedings?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that before I can accept a plea of guilty to Counts 1 and 4 I have to ask you a series of questions in order to establish the matters we've just discussed? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by pleading

guilty and agreeing to answer my questions you give up your Fifth Amendment right to refuse to answer my questions? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, I want to make sure that you understand all of my questions. And so here are a couple of rules we're going to go by. You always have the right to confer with Mr. Parrish before you answer any of my questions. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if you want me to rephrase a question or ask it in a better way, you let me know, and I'll try and do that. Is that understood?

THE DEFENDANT: Yes.

THE COURT: Because I want to make sure you understand everything that we go over; okay?

THE DEFENDANT: Yes.

THE COURT: Okay. I'm going to put you under oath now, so if you'd please stand and raise your right hand, I'll swear you in.

DUSTIN LEE HONKEN, DEFENDANT, SWORN

THE COURT: Please be seated. Mr. Honken, do you understand that you're now under oath and that if you were to make any knowingly false answers to any of my questions the government could prosecute you for perjury or making a false

statement to the Court? Do you understand that?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Do you have any problem understanding the English language?

THE DEFENDANT: No, sir.

THE COURT: Have you ever been treated for any type of mental illness of any kind?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you ever had an addiction to any type of narcotic drug?

THE DEFENDANT: No, Your Honor.

THE COURT: How long have you been in custody now, Mr. Honken?

THE DEFENDANT: Approximately one year.

THE COURT: Have you consumed any illegal drugs in the last year?

THE DEFENDANT: No, Your Honor.

THE COURT: In the last 48 hours have you consumed any alcoholic beverages of any kind?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you taken any prescription medications of any kind in the last 48 hours?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you currently under prescription for any type of medication?

THE DEFENDANT: No, Your Honor.

THE COURT: In the last 48 hours have you taken any over-the-counter medications like Advil, cough syrup, anything like that?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you currently being treated for any type of mental disorder?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Honken, are you currently being treated for any type of physical condition or disorder?

THE DEFENDANT: No.

THE COURT: Are you currently under treatment by any type of mental or physical healthcare provider like a doctor, physician, osteopath, chiropractor, psychologist, psychiatrist, counselor of any type?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Parrish, is there a -- let me ask it a different way. Is my understanding correct that there is no written plea agreement in this case?

MR. PARRISH: There is none, Your Honor, that's correct.

THE COURT: Is there any oral agreement or understandings that would form the basis for some type of oral plea agreement that I need to be advised of?

MR. PARRISH: None, Your Honor, except what

Mr. Reinert has already addressed, the two counts, 1 and 4, and the other two are to be dismissed. Otherwise there are no other agreements on the matter. There are a couple of matters we need to address I think after the completion of the plea. But other than that, I can't think of anything that would have any effect on the plea whatsoever.

THE COURT: Okay. Thank you. Mr. Parrish, have you gone over the nature of the charges in Counts 1 and 4 of the superseding indictment with Mr. Honken?

MR. PARRISH: I have, Your Honor, on several occasions.

THE COURT: And do you believe that Mr. Honken fully understands the nature of the charges in Counts 1 and 4?

MR. PARRISH: I do, Your Honor.

THE COURT: Mr. Honken, it's my obligation to go over the nature of the charges with you in the two counts you're pleading guilty to, and I want to do that at this time and make sure you understand what the government would have to prove in order to prove you guilty. And if you have any questions about that, I'll try and answer those questions for you.

In Count 1 -- Count 1 is the -- I don't have the indictment in front of me.

MR. REINERT: That's the conspiracy count, Your Honor.

THE COURT: And it's conspiracy to distribute methamphetamine?

MR. REINERT: To distribute and manufacture methamphetamine.

THE COURT: Distribute and manufacture methamphetamine. Mr. Honken, the government would have to prove the following in order to prove you guilty of count 1: That -- first they'd have to prove that on or about between 1992 and February 7, 1996, two or more persons reached an agreement or came to an understanding to distribute and manufacture 1,000 kilograms or more of methamphetamine and 100 grams or more of pure methamphetamine. Do you understand that's the first thing the government would have to prove?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: And secondly that you voluntarily joined in the agreement or understanding either at the time it was first reached or at some later time while this agreement or understanding was still in effect. Do you understand that's the second element?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And thirdly that at the time you joined in the agreement or understanding you knew the purpose or purposes of the agreement or understanding. Do you understand that's the third element the government would have to prove?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And what is Count 4, Mr. Reinert?

MR. REINERT: Count 4 is an attempt to manufacture methamphetamine, and the quantity alleged is 100 grams or more of pure methamphetamine or a kilogram or more of a mixture or substance.

THE COURT: And under Count 4, in order to prove you guilty of Count 4, the government would have to prove that on February 7, 1996, you attempted to manufacture 100 grams or more of pure methamphetamine or a kilogram or more of a mixture or substance containing methamphetamine. Do you understand that's the first element the government would have to prove?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And secondly, Mr. Honken, that you did so knowingly. Do you understand that's the second thing the government would have to prove to prove you guilty of Count 4 in the superseding indictment?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Is there a stipulation, Mr. Reinert, regarding the factual basis for the plea?

MR. REINERT: Your Honor, I've prepared a Rule 11 letter which sets forth various facts and marked it as Government Exhibit 1. We'd offer that into evidence.

                    *   *   *   *

(Government Exhibit 1 was offered.)

\* \* \* \*

THE COURT: Is there any objection, Mr. Parrish, to Government's Exhibit 1?

MR. PARRISH: There are no objections, Your Honor, but there are some basic differences we have. We're not saying the government cannot present this in the form of evidence, but we wish to point out when it gets to the issue of the Court making a factual determination for the sentencing guidelines that we do have some specific objections, and we'll point those out, but we have no objections to the letter coming into evidence as part of the plea agreement.

THE COURT: Well, Mr. Parrish, do I take your comments to mean that -- here's the part of the letter that I want to talk about. On page 4, the subsection entitled factual basis for the plea which runs -- I'm not sure where it ends.

MR. REINERT: Page 20, Your Honor.

MR. PARRISH: Page 20. And I do think, Your Honor, they state at the end that all issues will be resolved at sentencing, and those are the issues that we would address at sentencing. But really as to the letter itself coming into evidence, we have no objections to that. But I think the issues, there are certain issues such as role in the offense,

the amount, obstruction issues, those issues are matters that I think would have to be resolved at sentencing.

THE COURT: Well, how can I consider this letter as a factual basis for the plea if I understand Mr. Parrish to be saying many of the allegations contained in the Rule 11 letter are contested?

MR. REINERT: Your Honor, these are the facts -- the vast bulk of what's in the factual basis section is the affidavit submitted by Agent Graham when we got the search warrant affidavit. So these would be matters that would be presented at trial as evidence. This would be basically the Court could consider it as a stipulated -- stipulation of expected testimony of what kind of evidence the government would have, what they would present at trial which would be an independent basis for whatever the defendant provided you in the Rule 11 hearing today as well. So the Court could consider this as the government version of what the evidence would be. Even if the defendant may disagree on quantities or amounts, he still agrees that he was intending -- he had conspired with another to manufacture methamphetamine regardless of the amount. He certainly will agree that he has intended to manufacture methamphetamine and attempted to manufacture methamphetamine, and I think the only arguments that defense has is the quantity of methamphetamine to be produced, role in the offense which isn't even really

addressed in the factual basis, obstruction issues which are partially addressed. I think that's the defendant's position at least as I see it.

THE COURT: Well, let's put the question this way. It's the government's obligation to establish a factual basis. How do you want to do it today?

MR. REINERT: I think the -- we can certainly question Mr. Honken about -- get him to make some oral admissions as well as determine -- basically reiterate what I've just said, that the only concern they have about the factual basis isn't the facts itself but the quantities and those other limited issues because I think they would agree that other than quantity the rest of the basis is I believe correct and they would stipulate to that.

THE COURT: Well, let's see if we can do it this way. Mr. Parrish, for purposes of the guilty plea proceeding only and not for purposes of any disputed evidentiary matters at the time of sentencing, would you agree that I could use the contents of the Rule 11 letter to establish the factual basis for Mr. Honken's plea with the understanding that at time of sentencing you're free to contest any of the matters contained in the Rule 11 letter?

MR. PARRISH: We would do so, Your Honor. That would be what our intentions would be also.

THE COURT: Does the government have any objection

proceeding along these lines?

MR. REINERT: No, Your Honor, so long as it's clear that even if the defendant intends to contest certain matters which may be in the factual basis in the Rule 11 letter that, however, those are resolved at sentencing as a sentencing issue and would not give him any grounds to withdraw his plea should he be successful in convincing the Court that an adjustment does or does not apply.

THE COURT: Mr. Honken, let me try and explain it to you in English what we're trying to do here if I can. I want to be able to consider everything in this Rule 11 letter just to make the determination that there's a factual basis for your plea today. And then when it comes time for sentencing, we're going to start with a clean slate, and you'll be able to contest I think primarily the quantities, your role in the offense but basically anything else that you and Mr. Parrish want to contest at the time of sentencing. Do you understand that?

THE DEFENDANT: Yes, Your Honor, I understand that.

THE COURT: Do you have any problem with me proceeding in that manner?

THE DEFENDANT: No, Your Honor.

THE COURT: In other words, I'm not going to hold you to any of the amounts that the government alleges in this letter at the time of sentencing. It's not going to bind you

in any way. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm just going to consider it now for purposes of whether the government has established all of the elements of the offense that we just talked about for Counts 1 and 4. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So you wouldn't be prejudiced in any way at the time of sentencing by anything in this letter other than you've admitted that you -- to the elements of the charge for Counts 1 and 4. You understand that.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that if at the time of sentencing I find facts different than what's in this letter that won't allow you to come back and set aside your guilty plea? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.

MR. REINERT: Your Honor, Mr. Colloton pointed out that additionally there are some facts that I've not included in this letter. I tried to pare it down as much as I could which we will be presenting and will present that during the course of the preparation of the presentence report and have that disclosed to the defense, but not everything that we're going to talk about at sentencing is necessarily in this

letter either.

THE COURT: I understand that.

MR. PARRISH: And they've explained that to me, and I've explained that to Mr. Honken, Your Honor. There are some serious issues I think on obstruction that we will have to take a look at at some point.

THE COURT: Okay. Do you understand that, Mr. Honken, that what I understand the government to be saying is that they have other things that they want to include in your offense conduct? In other words, the government's not really limited by what they put in this letter, that there may be other things, but then you're going to have a full right to contest whatever those other matters are at the time of sentencing.

THE DEFENDANT: Yes, Your Honor.

THE COURT: In other words, I'm not trying to get you to agree to anything for sentencing purposes in the hearing today. I'm just trying to establish that there's a factual basis for your plea. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Now, Mr. Honken, I need to advise you what the maximum possible penalties are in your case. And have you had some discussions with Mr. Parrish about what the difference is between the maximum possible sentence under the statute and what the likely United States Sentencing

Guideline range would be? Do you understand that sometimes there are differences?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And my obligation at this part of the proceeding is to advise you of what the maximum possible statutory penalties are. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: On Count 1, the conspiracy count, the maximum possible sentence is up to life imprisonment, and there's a mandatory minimum sentence of ten years' imprisonment, and you could receive a fine of up to four million dollars. So you could receive the maximum fine which is four million dollars and the maximum term of imprisonment of life imprisonment and a mandatory minimum sentence of at least ten years' imprisonment. Do you understand those portions of the penalty?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: In addition, you could receive a term of supervised release, a minimum term of five years. Is there a maximum term of life supervised release?

MR. REINERT: Yes, Your Honor.

THE COURT: So you could receive supervised release which we're going to talk about in a minute but a minimum of five years and a maximum of lifetime on supervised release. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And also, Mr. Honken, there's a mandatory 50-dollar special assessment.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And on Count 4, the maximum penalty for attempted manufacture of one kilogram of methamphetamine is a mandatory minimum sentence of at least ten years, again a maximum sentence of imprisonment of life imprisonment, a maximum fine of up to four million dollars, and you could receive both the maximum fine of four million dollars and the maximum term of life imprisonment with a statutory mandatory minimum of ten years' imprisonment and again a minimum term of five years of supervised release, up to life on supervised release, and the same mandatory 50-dollar special assessment. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I guess the shorthand way of saying that is that Count 4 the penalties are the same as they were on Count 1, and you could receive them both on Count 1 and on Count 4.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, I want to talk to you a little bit about supervised release.  It's kind of a new term in the federal system.  Most people are familiar with the term

parole, not necessarily familiar with the term of supervised release. But it goes something like this. After you serve a term of imprisonment, you would be placed on supervised release in this case for a minimum of five years up to the rest of your life. While on supervised release, you would report to a United States probation officer. You would be required to seek employment. You would agree not to violate any state, local, federal law. And you'd have other conditions of supervised release. Do you understand in general, Mr. Honken, what supervised release is?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, if you were to be out on supervised release and violate any terms or conditions of supervised release, the government could seek to have your supervised release revoked. If they proved a violation of supervised release, I or another federal district court judge could revoke your supervised release, send you back to prison, and you wouldn't get any credit for time served on supervised release. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Honken, I'd like to give you an example. Let's just suppose that I would give you a 10-year term of supervised release and you did quite well for 9 years and 11 months but in your last month of supervised release you violated one of the terms and conditions of your

supervised release, the government filed a motion, we held a hearing, I or another judge found you violated your supervised release. Do you understand your supervised release could be revoked, you could be sent back to prison in your case for up to 5 years, and you wouldn't get any credit for the 9 years and 11 months you served on supervised release? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that there are three situations where it's mandatory that your supervised release be revoked and that you be sent back to prison in your case for up to five years and you don't get any credit for time served on supervised release? That would be if while on supervised release you're found to be in possession of illegal drugs; you're found to be in possession of an illegal firearm, ammunition, or other destructive device; or you violate certain drug testing requirements of supervised release. Do you understand in those three situations it's mandatory that your supervised release be revoked? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had some discussions with Mr. Parrish about what your likely United States Sentencing Guideline range would be in this case?

THE DEFENDANT: Yes, sir. Yes, sir, I have.

THE COURT: But I understand there are probably a lot of contested issues at the time of sentencing. But I'm sure Mr. Parrish has done his always-conscientious job of giving you his best judgment about what might happen at sentencing; is that correct?

THE DEFENDANT: Yes, Your Honor.

MR. PARRISH: I just wanted to point out, Your Honor, one of the big issues here is the issue of attempt, and it is such a nebulous area because we have not obtained an expert, and we'll be looking at that later. But the government's position and our position is such -- is at such variance that it's going to be difficult to assess what he might be facing. There is a range that I've discussed with him, but because there's an attempt charge on the charge that took place in '95, that is very difficult to assess where the range may be.

THE COURT: Thank you, Mr. Parrish. So as I understand it, Mr. Honken, it's not like some cases where the lawyers can pretty much say your United States Sentencing Guideline range is going to be X to X and they're real confident it's going to fall within that narrow range. There is, as I understand it, enough contested sentencing issues that Mr. Parrish hasn't been able to advise you with probably the specificity he'd like to; is that correct?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: Do you understand that whatever Mr. Parrish has told you about the sentencing guidelines I'm not bound by his view of the sentencing guidelines? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In other words, it sounds like we're going to have a quite contested sentencing hearing in this case. I'll make my rulings to the best of my ability. I'll then compute the sentencing guideline range and then in all likelihood sentence you either within that range or make an upward departure from the range in which case I have to state my reasons or make a downward departure in which case I also have to state my reasons. Do you also understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The point I really wanted to get across is I'm not bound by what Mr. Parrish has told you your likely sentence in this case would be. I have to make my own independent judgment of that. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's not to say I won't listen very carefully to both Mr. Parrish and the government lawyers as to what they say at the time of sentencing, but I have to make that judgment not on my own because I have the help of competent counsel on both sides of the case. But I'm the one that makes that call at the time of sentencing. Do you

understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I know this matter has gone on for quite a while, Mr. Parrish, but I want to make sure you believe you've had an adequate opportunity to advise Mr. Honken about his decision to plead guilty to Counts 1 and 4 of the superseding indictment. Have you had an adequate opportunity?

MR. PARRISH: Yes, Your Honor, on the counts, we do. On the sentencing issues which I think are somewhat complex, we need some additional time.

THE COURT: Okay. And I'm not going to have any problem scheduling sentencing for whatever time you think is appropriate in this case.

MR. PARRISH: But on the counts, we have had more than adequate time to review.

THE COURT: Mr. Honken, have you had an adequate opportunity to consult with Mr. Parrish about your decision to plead guilty to Counts 1 and 4?

THE DEFENDANT: Yes, Your Honor, I have.

THE COURT: I want to make sure no defendant feels rushed in their decision to plead guilty. Have you had all the time you need to make this very important decision?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied, Mr. Honken, with the

advice and counsel you've received from Mr. Parrish about your decision to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Honken, do you understand that you have an absolute right under the United States Constitution not to plead guilty, to continue with the plea of not guilty, and to have a trial by jury? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand at any time up to the end of this proceeding when I either accept or reject your pleas of guilty you have the right to change your mind and say, No, I don't want to plead guilty; I want to have a trial in this case? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand, Mr. Honken, that by pleading guilty this afternoon you give up, you give up forever, the right to have a jury of 12 people determine your innocence or guilt? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if I accept your plea at the end of this proceeding today in all likelihood you will never, ever, ever have an opportunity to have the jury determine your guilt or innocence? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand if you wake up tomorrow morning and decide this decision to plead guilty was a bad idea or you decide next month or next year or 10 years from now or 20 years from now that it's going to be too late to set aside this guilty plea in all likelihood? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In other words, your decision to plead guilty today is about as irrevocable as any decision one could make. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you want to have a jury trial in this case we'll have a jury trial for you? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand it would be a public trial? You'd have the right to have friends or acquaintances come in and sit in the back of the courtroom and watch the entire trial to make sure you get a fair trial because in this country we don't try anybody in secret. Do you understand you'd have that right to a public trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand you'd have a right to participate in the selection of jurors in the case and that your lawyer, Mr. Parrish, would have a right to challenge any

prospective jurors who Mr. Parrish believed could not be fair and impartial? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would be entitled to the presumption of innocence and I would tell the prospective jurors as I'm doing today in a jury trial -- I must have told them 30 times that the defendant is entitled to the presumption of innocence, that the presumption of innocence is like a steel curtain that surrounds the defendant, that that presumption of innocence stays with the defendant throughout the trial, that presumption of innocence goes back with the defendant in the jury room, and the only way the government would be able to convict you and overcome your presumption of innocence would be if they could offer proof beyond a reasonable doubt and convince the jury beyond a reasonable doubt that you were guilty. Do you understand I'd tell the prospective jurors that?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: And then once the trial started I'd remind them again about your presumption of innocence. I would tell them that because of your presumption of innocence you have no obligation to do anything. You don't have to participate in jury selection. You don't have to have your lawyer give an opening statement. You don't have to cross-examine any of the government witnesses. You don't

have to object to anything. You don't have to testify. You don't have to put on any evidence. You don't have to give a closing argument. You don't have to do anything, and the presumption of innocence alone would be sufficient to find you not guilty if the government failed to prove you guilty beyond a reasonable doubt. Do you understand I'd tell the jurors that, and do you understand those are your rights in a criminal trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that in order to try and overcome the presumption of innocence the government would call witnesses to testify against you and try and introduce evidence against you? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that Mr. Parrish would have the right but not the duty or obligation because of the presumption of innocence, in other words, he could cross-examine those witnesses and object to the evidence if you wanted him to, but he wouldn't be under any duty to object or cross-examine witnesses. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that after the government put on their evidence you would have a right but no obligation to put on evidence? In other words, if you wanted to put on evidence, you could, but because of the

presumption of innocence, you wouldn't be required to do anything. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you could call witnesses and offer exhibits into evidence if you wanted to do so? Do you understand that, Mr. Honken?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you couldn't afford to subpoena witnesses or pay their travel costs the government would be required to pay those costs in your behalf so that every witness who could be subpoenaed who had relevant knowledge would be required to come into this courtroom and testify in your behalf? Do you understand that?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Do you understand that you would have an absolute right under the United States Constitution either to testify if you wanted to or to not testify if you did not want to? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Honken, do you understand that those rights about testifying or not testifying are personal, they belong to you and only you? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And what I mean by that is if

B002458

Mr. Parrish wants you to testify but you don't want to testify or vice versa, that's your decision to make obviously in consultation with your lawyer, but it's your call and your call alone to make. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you did not want to testify, neither Mr. Colloton, Mr. Reinert, nor I would have the power to call you as a witness and make you testify against yourself? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And in the final analysis, whether you want to testify or don't want to testify, that's your right either way, and it's your call either way. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if you did not testify and chose not to testify in this case, if you wanted me to advise the jury further that they could not infer anything adverse from your decision not to testify that I would tell them that if you asked me to. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that before the government could convict you of Counts 1 and 4 or the other counts in the indictment they would have to overcome your presumption of innocence with proof beyond a reasonable doubt

and they would have to convince all 12 jurors unanimously that you were guilty beyond a reasonable doubt? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand, Mr. Honken, that if the jury went back to deliberate and 11 of the jurors voted you guilty and the 12th juror thought to himself or herself, you know, I think Mr. Honken probably is guilty; as a matter of fact, I'm pretty sure Mr. Honken's guilty, but I just don't think the government proved it to my satisfaction beyond a reasonable doubt, even though the vote was 11 to 1, do you realize that the government would have failed to convict you of these charges? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if the government could overcome your presumption of innocence by proving you guilty beyond a reasonable doubt to the unanimous satisfaction of all 12 jurors you'd then have a right to appeal that decision of guilt by the jury to the next highest court, the United States Court of Appeals for the Eighth Circuit? Do you understand you'd have that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you couldn't afford an appeal and you filled out a financial affidavit and I agreed then the United States would have to pay the costs

of your attorney on appeal and pay the costs of the appeal for your behalf? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by pleading guilty this afternoon you give up forever all of the rights to trial by jury that we've just talked about? Do you understand that?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Do you understand that in all likelihood if you change your mind down the road you will never, ever, ever have a chance to have a jury determine your innocence or guilt on these charges? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Honken, do you understand that in addition to the maximum punishments we've talked about you lose the right to vote; you lose the right to serve on a jury; you lose the right to hold public office; and you lose the right to possess firearms, ammunition, and other destructive devices? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Honken, is your decision to plead guilty a voluntary decision that you've come to?

THE DEFENDANT: Yes, Your Honor, it is.

THE COURT: Has anybody promised you anything other -- in exchange for your plea of guilty other than the

promises by the government to dismiss Counts 2 and 3 of the superseding indictment?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anybody promised you, Mr. Honken, what your sentence will be?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anybody pressured you, threatened you, forced you, coerced you in any way to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading guilty, Mr. Honken, because after looking at all the information before you you believe it's in your best interest to plead guilty to Counts 1 and 4?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions for Mr. Parrish about your decision to plead guilty?

THE DEFENDANT: No. No, sir, Your Honor.

THE COURT: Do you have any questions for me, Mr. Honken, about your decision to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Is there anything I've asked you that you want me to go back over, rephrase it, explain it better, ask it in another way?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Parrish, do you know of any reason

why I should not accept the guilty pleas on Counts 1 and 4 for Mr. Honken?

MR. PARRISH: No, Your Honor, I know of no reason.

THE COURT: Do you know of anything I've failed or neglected to ask to make this a valid Federal Rule of Criminal Procedure Rule 11 guilty plea proceeding?

MR. PARRISH: No, Your Honor.

THE COURT: Mr. Reinert, do you know of any reason why I should not accept Mr. Honken's pleas of guilty?

MR. REINERT: No, Your Honor. The only additional matter the Court may want to cover -- I know the Court already covered the elements of the offense. Just since the defendant did have some concerns about the Rule 11 letter as the factual basis to simply have the defendant admit that he committed those elements of the offense. At a bare minimum that admission would ensure Rule 11 compliance.

THE COURT: Mr. Honken, do you remember at kind of the start of the plea I went through the elements for Count 1 and the elements for Count 4 of the indictment and talked to you about what the government would have to prove in order to prove you guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you do -- well, let me ask you this: Are you guilty of Counts 1 and 4?

THE DEFENDANT: Yes, Your Honor, I am.

THE COURT: And did you do what the government alleged you did in Counts 1 and 4, not talking about the amounts now?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Reinert, do you want to ask some follow-up questions? Mr. Colloton, do you want to jump in?

MR. REINERT: I think that's adequate, Your Honor.

THE COURT: Wasn't very well done, but I'm kind of tired, and so I'll take all the help I can get if you want to jump in and ask it in a better way.

MR. REINERT: Certainly I can go through and just ask each element.

THE COURT: Okay. I think that'd be a better record. I'd appreciate that. Thank you.

MR. REINERT: Mr. Honken, between 1992 and February 7 of 1996, did you have an agreement with another person to manufacture methamphetamine?

THE DEFENDANT: Yes.

MR. REINERT: And who was that?

THE DEFENDANT: Mr. Cutkomp.

MR. REINERT: And when you entered into that agreement with Mr. Cutkomp, did you know at the time that you were going to be manufacturing methamphetamine?

THE DEFENDANT: Yes, sir.

MR. REINERT: And did you enter into this agreement

at the beginning in early 1992 or some time later than that, between 1992 and 1996?

THE DEFENDANT: Yes, I did.

MR. REINERT: And your house was searched on February 7 of 1996; is that correct?

THE DEFENDANT: Yes, it was.

MR. REINERT: And on that day you were in the process of attempting to manufacture methamphetamine; is that correct?

THE DEFENDANT: Yes, I was.

MR. REINERT: And you knew that you were attempting to manufacture methamphetamine at your house?

THE DEFENDANT: Yes, sir.

MR. REINERT: That's all, Your Honor.

THE COURT: Thank you, Mr. Reinert.

Mr. Honken, do you have any questions about your decision to plead guilty?

THE DEFENDANT: I would like to state one thing. Since I've been sitting in jail for the last year, before I first came to jail I had full intents to fight this because I felt I had good grounds to fight this on. But during this year I've had a lot of time to think about things, and I've seen a lot of the damage firsthand what it does to people coming in, and I realize I've done wrong and my actions are wrong in what I've done, and I'd just like -- came to a

decision to get this over with and plead guilty and serve my time, to get out so I can do something good once again and be with my children who I've seen -- which is very damaging to me to see them grow up through the glass during this last year because they're very small. And I just want to apologize to the Court and anybody that would have been hurt in any of my wrongdoings in the past.

THE COURT: Well, I appreciate that, Mr. Honken.

Mr. Honken, how do you plead to Counts 1 and 4 of the superseding indictment? Not guilty or guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: Mr. Honken, I'm going to go ahead and accept your guilty pleas to Counts 1 and 4 and make the following findings of fact: I find that your decision to plead guilty is a knowing, voluntary, and intelligent decision made after you've had a full and fair opportunity to consult with your lawyer, Alfredo Parrish; that it is not the result of any force, threats, or promises other than the promise by the government to dismiss the remaining counts.

I find that you're fully competent to make this decision to plead guilty both physically and mentally. I find that I've advised you of the maximum punishments for Counts 1 and 4; I've advised you of your right to trial by jury; you understand your basic jury trial rights; and you understand that by pleading guilty today you give up forever

the right to have a jury determine your innocence or guilt.

I further find based on the contents of the Rule 11 letter, Government's Exhibit 1, and the follow-up questions by Assistant U.S. Attorney Pat Reinert that there is a factual basis for the plea. And, therefore, I adjudge you guilty of Counts 1 and 4 of the superseding indictment.

I want to talk to you about sentencing. It's obviously going to be a very critical matter in this case. Between now and sentencing the United States Probation Office will prepare a presentence investigation report. It's important because that's the single-most important document I use at the time of sentencing to determine how the United States Sentencing Guidelines apply to you and what your United States Sentencing Guideline range will be in this case.

You have a right to submit information to the preparation of the presentence report. And then once it's finished, you have a right to file objections to the presentence report. I urge you to file -- I don't need to urge you because Mr. Parrish is not shy about filing objections. But I just want to make sure the defendant understands it. Nor should a defense lawyer ever be shy about filing objections because it is so important and it is the single-most important document. I want to make sure that I have the most accurate information I can when it comes time

to sentence you, so you should file objections to everything in the presentence report that you disagree with.

I assure you neither Mr. Reinert nor Mr. Colloton will be timid at all about filing objections to anything in the presentence report that they disagree with.

So I just want to make sure you take every opportunity to read it carefully, consult with Mr. Parrish, and anything at all that you disagree with, you file an objection to it. It's my job at the time of sentencing to listen to all the evidence as it relates to any of the issues that are contested and make my determination as to how those issues ought to be resolved. Do you understand that, Mr. Honken?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Mr. Jackson, you provided me with a date for sentencing, and I proceeded to leave it on my desk. And so what is that date? Was it September 18?

MR. JACKSON: 16th, Your Honor, at 3:00 p.m.

THE COURT: Mr. Parrish, how do you want to work it? Do you want me to set that date now and then if that's insufficient you can move to continue, or do you want to simply go out farther right now?

MR. PARRISH: Well, Your Honor, I don't have a problem with it being September 16 right now. As I indicated to the Court, there are a couple of matters I think that are

going to come up, first of all, obtaining experts, and we're going to be filing an application sometime in the next couple of days requesting some assistance from the Court on the CJA funds for an expert, for an investigator because I understand from the government they are going to be filing some documents, at least putting in the discovery files some documents on obstruction. We're going to need an investigator which I can take care of also through the ex parte matter.

But I would imagine this date would be fine. But realizing that we will need some additional time, I believe a more reasonable date would be October or November as I explained to Mr. Reinert earlier. But I'm willing to go with this date, file an application and then, if we need to continue, have a hearing on it and let the Court determine if we need that additional time.

MR. REINERT: Your Honor, we would like to go with the date that's already set. We'd like to move this matter forward. There have been some matters that we've investigated in a grand jury investigation that's still ongoing which could result in potential additional charges. Some of that evidence may be presented to the Court here as part of the obstruction or on some other issues including the Court mentioned potential upward departures. But some of that conduct relates to obstructive conduct and contact with

potential witnesses and threats against potential witnesses. So we don't want to let this languish too long presentencing where witnesses can be potentially harassed or tampered with or harmed in some way. So we would like to move this matter forward knowing, of course, that Mr. Parrish does have some other concerns that we need to deal with on getting it prepared and properly presented to the Court.

MR. PARRISH: The only thing I would add, Your Honor -- and I appreciate the government's position -- the government's had access to this information. They've already acknowledged that it's not even on file yet. We don't have an investigator. We need somebody up above board and moving forward, and we need someone who's experienced. And, as you know, from the lack of opportunity for investigators in the state, there are not very many who are competent I think to handle the nature of this type of investigation. So I think those matters are going to require that we get some additional time, but I'm willing to go with that date right now and have the burden of showing to the Court that we need additional time. But I will get those motions to the Court early next week.

THE COURT: Thank you, Mr. Parrish. I'll leave it on September 16, but I want the government to understand that I don't know who's responsible for the lack of moving this case, but nobody's moved it. And so when a defendant is

B002470

looking at a potential life sentence, I'm not going to rush him into sentencing with the sentencing being as serious as this is, as many contested matters, and so I'm just putting the government on notice now that I'll go with the September 16 date, but the threshold for moving that date is going to be exceedingly low. In other words, Mr. Parrish says to me, Hey, Judge, I need some more time to get ready for the sentencing, it's going to pretty much be an automatic extension.

MR. REINERT: We certainly understand that, Your Honor, and I just wanted to make the Court aware that we do have these concerns. And if it does come to the point where we need to continue it, we'll take that up with the Court at that time. We're not certainly resisting that out of hand, and I think once Mr. Parrish gets a chance to look at it, it may not be as onerous as he thinks it is either. So it certainly is something we need to work through, but I just wanted to put the Court on notice that that may be an issue at a later date.

THE COURT: I appreciate that. So we'll go with the September 16 date. Was it at -- what time was it, Mr. Jackson?

MR. JACKSON: 3:00 p.m., Your Honor.

THE COURT: Yeah. Well, I -- can we all agree on this one matter, that we could not get this sentencing

concluded if we started at three o'clock?

MR. REINERT: I think that's correct, Your Honor.

THE COURT: Are we looking at in all likelihood more than a day?

MR. REINERT: In all candor I think we probably would. If we're going to do -- because some of the analysis for the lab and the yield of the lab is going to require testimony of chemists, and it certainly takes a while for -- I was no chemistry genius in college which is why I became a lawyer -- to get through that, and I'm sure it will take the Court some amount of time to work its way through that evidence and especially if defense has an expert as well.

THE COURT: We're early in the sentencing phase. Let me ask you this. It sounds like maybe two days might not be enough. How much time should I set aside, because I don't want you to feel rushed once we get there, and I don't want to rush you?

MR. REINERT: I would think two to three probably would do it. Three would probably be safe.

THE COURT: I'll set aside three days. Why don't I look at my calendar, find a realistic point and not before September 16. It may be a little bit after. I'll try and be sympathetic to the concerns the government has raised. But my schedule is just nutty.

MR. PARRISH: I would just add this is perhaps a

case where all three days don't have to be together either.

THE COURT: Well, it's a long drive for you.

MR. PARRISH: I enjoy it. At least I'm not driving to Cedar Rapids. That's where I've been going for the last seven months.

THE COURT: I'll try and find three consecutive days if I can. And if not, I'll at least try to schedule two together and have a third day because finding three days may be difficult.

Is there anything else, Mr. Parrish, on behalf of Mr. Honken?

MR. PARRISH: Yes, Your Honor. We are aware -- and as Mr. Reinert has alluded to -- there may be some additional investigation going on, and I believe Mr. Honken would verify this. I was initially retained on this matter, and I've told him that I cannot at this point make a commitment if new charges were to come about that the Court automatically appoint me as his lawyer in that case. He understands that.

And also I wanted to make it clear on the record that he's not pleading because he thinks at some point I will be his lawyer on a new charge. So if the Court has any inquiry on that issue, I have made a commitment, though, that I would remain throughout this case including any obstruction charges that would be filed. I will remain on this case, but it's not a condition of his plea that I would remain on any

new charges that may possibly be filed, not that I won't consider being his attorney on new charges if the Court were to ask me and I -- and it's in my schedule where I can do it, but that's not a condition of his plea at this time.

THE COURT: Do you have any problems, Mr. Honken, with what Mr. Parrish just indicated?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Parrish, would you at least consider representing -- well, let me give you an opportunity to consult with Mr. Honken. I'm sorry.

Mr. Parrish, would you at least consider taking a court appointment if Mr. Honken would qualify on these other charges? I'm not asking to bind you to that promise now. I'm just saying would you consider it?

MR. PARRISH: Yes, Your Honor. I told him I would consider that also.

THE COURT: And, Mr. Honken, do you understand that simply because Mr. Parrish says he would consider it doesn't mean that if there were any other charges he would agree to represent you?

THE DEFENDANT: Yes, Your Honor, I do.

MR. PARRISH: But I just wanted to be clear that that's not a basis of his plea on this charge that a definite commitment was made, but I told him I would give it serious consideration.

THE COURT: And the one has nothing to do with the other, Mr. Honken, in other words, your pleading guilty to these charges regardless of what might happen in the future on other charges or who would represent you; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is there anything further on behalf of the defendant?

MR. PARRISH: No, Your Honor.

THE COURT: Mr. Reinert, Mr. Colloton, anything further on behalf of the government?

MR. REINERT: No, Your Honor.

THE COURT: Okay. I'll issue an order for a date on sentencing either using the September 16 date or some period of time thereafter; okay? Thank you very much.

(The foregoing plea was

concluded at 1:21 p.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Shelly Semmler, RMR, CRR

10-5-03
Date