# 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                          No. CR96-3004

DUSTIN HONKEN,                               TRANSCRIPT OF
                                             RESENTENCING
     Defendant.

_____/

01571

COPY

The Resentencing held before the Honorable Mark W. Bennett, Chief Judge of the United States District Court for the Northern District of Iowa, at the Federal Courthouse, 320 Sixth Street, Sioux City, Iowa, January 25, 2000, commencing at 3:30 p.m.

APPEARANCES

| | |
|---|---|
| For the Plaintiff: (via speakerphone) | PATRICK J. REINERT, ESQ. Assistant United States Attorney Suite 400 - Hach Building 401 First Street Southeast Cedar Rapids, IA  52407-4950 |
| For the Defendant: (via speakerphone) | ALFREDO PARRISH, ESQ. Parrish, Kruidenier, Moss, Dunn & Montgomery 2910 Grand Avenue Des Moines, IA  50312-4297 |
| Also present: | Rick Niles, U.S. Probation Dustin Honken (via speakerphone) |
| Reported by: | Shelly Semmler, RMR, CRR 320 Sixth Street Sioux City, IA  51101 (712) 233-3846 |

Case 3:10-cv-03074-LTS-KEM    Document 19-11    Filed 06/06/11    Page 2 of 19

THE COURT: Okay. This is United States of America versus Dustin Honken, Criminal Number 96-3004. We're doing this sentencing by telephonic conference. I have a court reporter with me here in Sioux City along with a United States probation officer, Rick Niles. And my understanding is Pat Reinert is representing the United States; is that correct, Mr. Reinert?

MR. REINERT: That's correct, Your Honor.

THE COURT: And that, Mr. Parrish, you're representing the defendant Dustin Honken; is that correct?

MR. PARRISH: That's correct, Judge.

THE COURT: And, Mr. Honken, you're appearing by telephone; is that correct?

THE DEFENDANT: Yes, that is, Your Honor.

THE COURT: Okay. Can you hear me okay, Mr. Honken?

THE DEFENDANT: Yes, I can.

THE COURT: Okay. I'd ask that when anybody speaks they identify themselves so our court reporter can make sure she gets everything down correctly.

Let me start by making sure everybody voluntarily waived and agreed to do this by telephone. Mr. Reinert, is the government voluntarily agreeing to do the resentencing by telephone?

MR. REINERT: That's correct, Your Honor.

THE COURT: And, Mr. Parrish, are you voluntarily

agreeing to do the resentencing by telephone?

MR. PARRISH: I am, Your Honor. Additionally, I received a letter from Mr. Honken where he had specifically made that request, that once the ruling was made by the Supreme Court that we do the matter either by telephone or ICN.

THE COURT: Okay.

MR. PARRISH: He's on where he can verify that information.

THE COURT: Mr. Honken, is that correct? Are you voluntarily agreeing to do the resentencing by telephone?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you realize that if you wanted to we would have done an in-person sentencing? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Now, here's my understanding: In light of the Eighth Circuit decision filed on July 9, 1999, remanding this case for resentencing, the United States Court of Appeals for the Eighth Circuit determined that I incorrectly awarded the defendant three points for acceptance of responsibility in this case concluding that this was a case where because of the obstruction of justice it would be inappropriate to give the defendant three points for acceptance of responsibility. Based on my calculations, the

new total offense level would be 41, the criminal history category remains a 1, and the new United States Sentencing Guideline range would be 324 to 405 months. Mr. Reinert, is that your understanding?

MR. REINERT: This is Mr. Reinert, Your Honor. That's correct.

THE COURT: And, Mr. Parrish, is that your understanding?

MR. PARRISH: Yes, Your Honor, based upon the ruling of the Eighth Circuit which obviously we indicated we disagree with, but we think you're absolutely right on your calculations.

THE COURT: Okay. And do you understand what the new calculations are, Mr. Honken?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Okay. Now, Mr. Parrish, do you have -- are you raising any other argument or objection that the guideline range is anything other than 324 to 405?

MR. PARRISH: We're not, Your Honor. The only thing I would raise, not to answer your specific question but to direct something to the Eighth Circuit's opinion, is the fact that the Eighth Circuit, which is well apparent from review of their decision, they focused on all the other matters which we believe are not directly related to the issue of the hydrogen tank. But as to the specific guideline

calculations, we are not raising any objection to that because we think the Court's interpretation of that is exactly right. This Court's interpretation of it is exactly right on the numbers.

THE COURT: Okay. So why don't we now -- here's what I'm going to do. I'm going to hear argument first from the government, then from Mr. Parrish, and then I'm going to give Mr. Honken his right of allocution if he wants to exercise it as to what the appropriate sentence should be within the new United States Sentencing Guideline range of a level 41, criminal history category 1, 324 to 405 months. Mr. Reinert?

MR. REINERT: Well, Your Honor, as we noted in the sentencing -- I pulled out the transcript to look at it -- we had asked initially for an upward departure which the Court denied all departures, of course. And we sought a sentence at the upper end of the range and the top of the range to reflect this defendant's serious conduct. His conduct involved a large quantity of drugs which the Court found at last sentencing suggested a sentence at the high end of the range, and also the level of obstructive conduct committed by this defendant going back as far as 1993 and all the evidence the Court has heard about the disappearance and we believe the murder of these witnesses suggests that this is a defendant who needs to have a lengthy term of incarceration

and a sentence at the top of the range is appropriate.

THE COURT: Is there anything else you'd like to add, Mr. Reinert?

MR. REINERT: No, Your Honor.

THE COURT: Mr. Parrish?

MR. PARRISH: Thank you, Your Honor. I, first of all, would like to directly address the government's argument that seems to encompass the Eighth Circuit's opinion. Again, Your Honor, we believe that this Court found the obstructive conduct to be limited to the hydrogen tank. The Court outlined for a couple reasons why it did not want to go further based, number one, on the fact that an additional investigation was going on by the government and it didn't want its decision to be interpreted as any finding that would be binding on any additional court which we think was a well-reasoned statement by the Court in the sense that it appears that the Eighth Circuit adopts somehow the government's position that this investigative position of the government should somehow impact on the obstruction or the acceptance of responsibility. We think this Court's decision is a much better decision on the issue of how those conflicting matters between the investigation by the government into other matters or related matters than the hydrogen tank ought to be resolved.

We think if the Court does, in fact, limit the

obstructive conduct solely to the hydrogen tank that this Court should make a very limited ruling and not consider all of the other factors to raise it to a level of an upward departure as recommended by the government.

We think, Your Honor, that this Court should stay at the bottom level. And the reason I ask that, if you go through the analysis that the Court placed the last time, we were at approximately 292 or 293 months. I don't recall offhand, but it was somewhere around there with the Court raising the level up from 235 up to the high end. This new resentencing, Your Honor, would put him several months above that range. We think that the high end overrepresents -- the 324 months overrepresents the obstructive conduct and the investigation; if anything, that the Court should consider departing downward because of this overrepresentation of the investigative conduct which there's no proven basis for at least at this point. We do know and do concede that an investigation's going on, but there has been no findings on that.

So we would ask the Court to consider a departure downward, if anything, to reflect his earlier sentence of approximately 292 months.

I think finally with regard to the amount of drugs involved in here, there was clearly drugs being brought back. But comparatively speaking to other cases, all the amount

that was actually distributed, that amount was not extremely high. As the Court may recall, it went to the purity of the drug. That was the government's big argument all along, that Mr. Honken was able to manufacture drugs of an enormous or great purity. And that's why the guideline range was so high, not having to do with the actual distribution or the number of people he may have supervised or other factors that normally come into methamphetamine cases. So we would ask the Court to consider maybe a downward departure to the 292 months where Mr. Honken was already situated.

THE COURT: Well, I'm very confused now. What's your basis for a downward departure?

MR. PARRISH: Well, two reasons, Your Honor. The first is that the conduct that puts him into the range, the acceptance, okay, the acceptance is the fact that he did enter a plea in this case. He's absolutely getting no credit for that, and I understand the Eighth Circuit's argument on that, not that I agree with it. But this Court also found obstructive behavior. So if you go back to this -- obstructive conduct. If you go back to the Court's earlier reasoning on the case where you moved him up in the high range, you didn't upward depart, but you put him in the high range before, and that put him in 292 months because you thought that accurately reflected his conduct.

I ask the Court now that we're now in the range of

324 months that that really overrepresents his conduct because if you look at the purity levels, that's what the government really argued about, not about his distribution range.

THE COURT: I don't understand what you mean when you say something overrepresents his conduct. This is his guideline range.

MR. PARRISH: I understand that's his guideline range.

THE COURT: So what is the -- state succinctly for me the basis of your downward -- request for a downward departure.

MR. PARRISH: Well --

THE COURT: And it seems to me you had an obligation to put both me and the government on notice that you were moving for a downward departure. But setting aside the timeliness of the issue, I'm still trying to find -- trying to understand what you allege to be your basis for the downward departure.

MR. PARRISH: Well, the basis of it is that the government's argument has already been -- always been directed to the purity. There's no dispute that that would be the guideline range of 324 months, but that's based upon the quantity level being 38, his obstructive conduct and his lack of acceptance of responsibility according to the Eighth

Circuit's opinion. Assuming that's the case, if you look at what his actual conduct was, does it truly put him within the heartland, or is his case outside of the heartland? I think his case is outside of the heartland because if you look at his actual amount, the amounts are not that high, Judge, but he gets in the higher amount solely based upon the purity levels, not on his distribution network. So that's my argument as succinctly as I can put it.

THE COURT: Mr. Reinert?

MR. REINERT: Well, Your Honor, I'm with the Court on the issue of notice. Having notice of this to be able to look at it, digest it, and be able to respond to it is certainly necessary before the Court entertains it, but there's no basis for it anyway. The guidelines are written to consider both purity of methamphetamine as well as the quantity involved, and this defendant's guideline range is established by the combination of quantity involved, the purity of the drug, the number of participants involved where you got a role enhancement, the obstructive conduct, the lack of acceptance. There were other issues the Court also had to resolve including firearms and other matters. And today my reading of the Eighth Circuit opinion is we're here looking at the issue of should the defendant -- where should the defendant be sentenced within the range.

Mr. Parrish made a downward departure motion at the

initial sentencing which was denied by the district court. And that was never appealed on the Eighth Circuit. I don't think the law of the case allows him to raise a new departure motion at this point.

THE COURT: Well, here's what I'm going to do: I'm going to assume for the -- arguendo that I have the authority to depart downward, although I doubt that I do on resentencing. But even if I had the authority to depart downward, I would not depart downward based on the argument and rationale asserted by Mr. Parrish. So I'm going to deny the defendant's motion for downward departure.

Now, Mr. Reinert, I'm uncertain as to whether you're pursuing your motion for upward departure or simply asking me to sentence at the higher end of the guideline range that I've established, the 324 to 405 months.

MR. REINERT: Allow me to -- this is Mr. Reinert again, Your Honor. Let me clarify. When I mentioned the upward departure, that was what we had requested, and the Court had denied that at the earlier sentencing.

THE COURT: Yes.

MR. REINERT: At this point -- and I only made that as a point that we thought he deserved a higher sentence even at that time, and we are asking for a sentence at the top of the range. We are not seeking an upward departure at this time.

THE COURT: That's what I understood your argument to be, but I just wanted to make sure that that was the case. And okay. You've clarified that.

Now, Mr. Honken, you have the right of allocution. That's just a fancy legal term for the right to say anything you want me to consider before I impose sentence. Is there anything that you'd like to say on behalf of yourself? You don't have to say anything, and I certainly won't hold it against you if you decide not to say anything, but you have the right, and I'd be happy to hear from you at this time if you'd like to exercise that right.

THE DEFENDANT: Yes, Your Honor. To begin with, I had requested my attorney, Mr. Parrish, a couple weeks ago or longer about post-rehabilitative efforts I believe it is for downward departure because I've been here two years, I've taken the drug treatment, I've taken the Pony Hill, I've tooken all kinds of programs trying to better myself in education. And I understand in a resentencing that that's a possibility for downward departure, but somewhere it got lost in the tracks.

THE COURT: Well, Mr. Honken, I wouldn't grant it even if he made it. I'm not sure he can make it at this point, but I'm very familiar with that departure. And, you know, even if you won the Nobel prize in the last two years, I wouldn't be inclined to grant a downward departure for

post-rehabilitative efforts in this case based on everything that I heard at the sentencing, and I recognize I would have discretion to make such a departure, but I'm assuming you've made all the progress you could make. You've successfully completed the drug rehabilitation program. You've done everything you could in the most positive light imaginable. I can't imagine there's anything you could say that would convince me to give a downward departure on this basis.

THE DEFENDANT: Okay.

THE COURT: I'd be happy to hear you out if there's anything more you want to add than what you've otherwise told me that you've done in the last two years while you've been in custody. But, you know, I'm pretty serious when I say, you know, even if you got the Nobel peace prize I doubt if I would make a downward departure given the facts in your case.

THE DEFENDANT: Yes, Your Honor. I have one other thing to say is for years now the government's been accusing me of all these terrible crimes, and I haven't hurt anybody, I haven't killed anybody, I haven't paid anybody off, and it's being consistently used against me. I feel that my sentence is -- my last sentence and this sentence reflects on -- I mean, I'm around all kinds of people that have similar -- you know, that have drug cases and larger quantities than me that got less time, so I can't help but feel even though it wasn't ruled on it's being used against

me.

And I'm in a maximum security prison even though I'm designated a low because the government has made sure I'm put in here, and they've called in this facility before directly asking about my phones and my legal calls, if they can be monitored and all kinds of stuff. And you can check the records if you don't believe me. And it's just been one thing after another. I'm put away from my family. I'm 16 hours away, you know, and my kids are what's important to me, and I realize I should have thought of that before, and I think of that every day, and I'm sorry for what I've done and anybody that I would have hurt in the meanwhile, but I have not done the heinous crimes that the government says. And, you know, I -- in this place, you know, there's people stabbed. I've seen -- you know, people have been killed, people being disemboweled, everything imaginable in here. And the sentence I have now is almost a death sentence in these places. It's such a length of time. And I just -- I hope that, you know, you'll give me a chance and give me the low end of the scale. That's all I have to say, Your Honor.

THE COURT: Thank you, Mr. Honken.

Mr. Parrish, is there anything else you'd like to add?

MR. PARRISH: No, Your Honor. I didn't specifically address that to the Court, but I would also urge the Court to

consider placing Mr. Honken at the low end of the guideline range that he has been subjected to by the resentencing.

THE COURT: Mr. Reinert, is there anything else that you'd like to add?

MR. REINERT: No final comments, Your Honor.

THE COURT: Well, I'm going to go ahead and sentence Mr. Honken at the low end of the guideline range. 324 months is an extremely lengthy sentence, and I realize the government put on substantial evidence of obstructive conduct, and I realize the Eighth Circuit might be willing to find that the defendant engaged in very serious crimes up to and including murder and make that finding by a preponderance of the evidence and enhance the defendant's sentence, but I'm not willing to do that, and the allegations are very serious. And if the government has enough proof to prove it, then my view is that they ought to file charges and prove it beyond a reasonable doubt in a criminal case and that he's already been given two points for obstruction of justice. If the United States Congress and the sentencing commission wanted a defendant to receive harsher sentences for greater obstruction of justice conduct, they easily could have passed a guideline that would have incremental approach to obstruction of justice and award more points. And for whatever reason, the sentencing commission and Congress did not do it. And when all is said and done, the defendant is

in a criminal history category 1, and a sentence of 324 months is an exceptionally long sentence for a drug conviction.

So it's my judgment that you are hereby committed to the custody of the Bureau of Prisons to be imprisoned for 324 months on Count 1 and 324 months on Count 4 to be served concurrently with each other. All other sentencing factors previously imposed on my February 24, 1998, judgment and committal shall remain in effect.

Is there anything further on behalf of the United States, Mr. Reinert?

MR. REINERT: No, Your Honor.

THE COURT: Is there anything further on behalf of the defendant, Mr. Parrish?

MR. PARRISH: No, Your Honor. We just appreciate the Court allowing us to do this by phone.

THE COURT: Okay. Oh. And I also have to make the finding because this sentence has a greater than 24-month range to it, I find that the sentence that I've imposed reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment for the offense and affords adequate deterrence to criminal conduct. Thank you very much, and the sentencing hearing will be concluded at this time.

MR. PARRISH: Judge, does he need to be advised of

his right of appeal on this?

01587

THE COURT: That's right.

MR. PARRISH: This is Al talking.

THE COURT: Thank you for reminding me of that, Mr. Parrish.

Mr. Honken, you have the right to appeal the sentence that I've imposed. If you decide to appeal, you need to file a notice of appeal with the clerk of our court within ten days from today's date. If you can't afford counsel or can't afford the costs of an appeal, you can fill out a financial affidavit. And if you qualify, a lawyer will be appointed to represent you on appeal. If you're thinking about appealing, there probably isn't time for you to fill out the financial affidavit if you're claiming that you're indigent. So Mr. Parrish as part of his representation of you should file a protective notice of appeal in that regard.

MR. PARRISH: I will do that, Judge.

THE COURT: I don't know what there is to appeal from. He got the low end of the guideline range.

MR. PARRISH: I would agree.

THE COURT: That's for you to decide, Mr. Parrish and Mr. Honken. But in any event, is there anything further on behalf of the United States?

MR. REINERT: No, Your Honor.

THE COURT: Thank you, Mr. Reinert.

Anything further, Mr. Parrish?

MR. PARRISH:  No, Judge.  Thanks for letting us do it by phone, and appreciate your time on this.

THE COURT:  Mr. Honken, anything further?

THE DEFENDANT:  No, Your Honor.  Thank you.

THE COURT:  Good luck to you, Mr. Honken.

(The foregoing resentencing was concluded at 3:54 p.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____                    2.16.07
Shelly Semmler, RMR, CRR                             Date