# 45

## DECLARATION OF JOHN F. WARREN, III, PH.D.
## PURSUANT TO 28 U.S.C. § 1746

I, John F. Warren, III, Ph.D., do hereby declare, affirm, and verify under penalty of perjury the following:

1. I am a licensed psychologist specializing in clinical, medical and forensic psychology. I received my Ph.D. from Duke University in 1980, and have additional training in medicine and forensics from Broughton Hospital (Morganton, NC), the University of Virginia Institute of Law, Psychiatry, and Public Policy (Charlottesville, VA), Winston-Salem State University (Winston-Salem, NC) and East Carolina University (Greenville, NC). I am licensed by the North Carolina State Psychology Board as a Practicing Psychologist and Health Services Provider. I am listed in The National Register of Health Service Providers in Psychology. I am one of fewer than two hundred and fifty board-certified forensic psychologists (American Board of Professional Psychology – Forensic) in the nation.

2. I am also a nationally certified physician assistant (PA-C) with over six (6) years experience in family medicine and psychiatry. I completed thirty six (36) months of medical training through East Carolina University in Greenville, NC. I am licensed by the North Carolina Medical Board to provide medical diagnostic and treatment services within the scope of my training. I am a fellow of the American Academy of Physician Assistants and the North Carolina Academy of Physician Assistants.

3. In my practice of clinical, medical, and forensic psychology, I have evaluated hundreds of individuals, families, police officers, criminal defendants, and civil litigants. My curriculum vita, detailing my education and training, is attached.

Page 1 of 6

4.     I was retained as a mental health expert by Dustin Honken's current lawyers to conduct a clinical interview, administer psychological testing and to review a great deal of materials. I reviewed substantial collateral information about Mr. Honken including the following: Trial Transcripts, Appellate Opinion Decided September 12, 2008; Forensic Psychology Report of Daniel S. Greenstein, Psy.D. dated October 21, 1997; Neuropsychological Evaluation of Michael M. Gelbort, Ph.D. dated July 19, 2004; Michael M. Gelbort, PhD. Neuropsychological raw data, notes and report; Dustin Honken Hospital Birth Records; Dustin Honken Britt Medical Center Records; Dustin Honken Kraft Foods Employment Records; Dustin Honken Bureau of Prison Medical Records; Dustin Honken West Hancock High School Transcript; Dustin Honken North Iowa Area Community College Transcript; Dustin Honken Pima Community College Unofficial Transcript; Dustin Honken Woodbury County Jail Records. I also reviewed declarations by the following individuals: Courtney Snater, Alan Johnson, Anthony Johnson, Mark Johnson, Ronald Nelson, Lisa Rickert, Kathy Scheuss, Missy Friesenborg, Laurel Christianson, Tim Cutkomp, Sandra Fiems, Carol Hilgenberg, Jeff Honken, Carol Honken, David Honken, Marvea Smidt, Alyssa Nelson, Dr. Richard Dudley and Dr. Melissa Piasecki. Additionally, I spoke with Jessica Johnson, who is the mitigation specialist with the Community Federal Defender Office, who is working currently on Mr. Honken's case.

5.     I met with Mr. Honken on October 29, 2010 and again on December 7, 2010 at the federal penitentiary at Terre Haute. I conducted clinical interviews and administered a Minnesota Multiphasic Personality Inventory (MMPI). Based on my review of the extensive collateral information, the results of the MMPI testing and my clinical interview, I have formed the following opinions to a reasonable degree of psychological certainty.

6. Mr. Honken's childhood is notable as he was subject to profound family dysfunction and abuse. His father was a severe alcoholic, who subjected the entire family to constant abuse. The witnessing of his father's behavior and abuse of his mother and siblings, and being himself subject to the abuse, caused great trauma in Mr. Honken's development. This trauma was further exacerbated by Mr. Honken's mother's failure to protect him from the father and her own neglect and abandonment of her children.

7. The history also reveals that both sides of Mr. Honken's family have histories of severe mental illness. Records and witness accounts show that Mr. Honken's mother, Marvea, has long suffered with depression and anxiety. Her mother, Opal, was also treated for severe anxiety and depression, and was apparently hospitalized several times for these disorders. Marvea's brother, Tim, has also suffered from severe depression and alcoholism. Their sister, Laurel, has been treated repeatedly for manic depressive disorder and depression and has been hospitalized several times after attempting suicide. All five of Marvea's nieces and nephews suffer from depression and substance abuse problems. One nephew has an eating disorder. Mr. Honken's father was a severe alcoholic, who drank almost constantly. Such an extensive history of mental illness in the family creates a greater risk for the development of disorders, such as those diagnosed in Mr. Honken.

8. Mr. Honken suffers severe anxiety disorder. He has traits of Generalized Anxiety Disorder, and Anxiety Disorder, NOS, including features of Obsessive-Compulsive Disorder. These disorders are entirely consistent with his family history of mental illness and the circumstances of his upbringing. Many of Mr. Honken's relatives suffer various forms of depression. Depression is a genetic risk factor for Anxiety Disorder, as is the family history for

Page 3 of 6

anxiety in his mother and maternal grandmother. The course of Anxiety Disorder is chronic, but is often much worse during times of stress. Additionally, such a condition can be substantially worsened by a general medical condition. Mr. Honken has a physical heart disorder, tachycardia, that likely exacerbates his anxiety disorder.

9. I also agree with Dr. Dudley's diagnosis of Mr. Honken with a Personality Disorder, with narcissistic and borderline features.

10. At a young age, Mr. Honken swore off alcohol and drug use. This resulted from his witnessing the severe effects of his father's alcoholism, and the traumatic psychological effects witnessing this behavior had on him. However, at the time he was living in Arizona, Mr. Honken began to use heavy quantities of extremely pure methamphetamine. At first, his methamphetamine use would have had a therapeutic effect, making it possible for him to cope with his severe anxiety and the stressors of his life at the time. However, as the quantities and frequency increased in relation to his increase in tolerance, the drug use became less and less therapeutic and much more problematic. According to those around him at that time, his behavior changed dramatically. By the time of the crimes in question, Mr. Honken was suffering severe effects of the drug use in combination with his other mental health problems. Such severe drug use would make him feel grandiose, omnipotent and basically untouchable. In addition to the methamphetamine, Mr. Honken was used LSD, cocaine, marijuana and grain alcohol. Mr. Honken was also exposed to significant neurotoxins in a closed environment for substantial periods of time during the manufacture of methamphetamine.

11. As described by Dr. Piasecki, such drug abuse and exposure to chemicals used in making methamphetamine causes neurotoxicity, which results in structural changes in the brain

Page 4 of 6

and adversely impacts brain functioning. Such effects can diminish over several years, but would have been present in Mr. Honken at the time of the offenses. It is also well-documented that, more than any other drugs typical of abuse, methamphetamine increases the likelihood of violent behavior. The risks of such behavior is heightened for an individual subject to the type of upbringing that Mr. Honken endured, particularly in light of his anxiety disorder. There is no question that the methamphetamine abuse caused changes in Mr. Honken's brain functioning and in his behavior that were present at the time of the homicides.

12. Combined effects of all of these factors would have been significantly mitigating. His condition would result in serious lack of judgement and little or no impulse control. He also was subject to significant emotional disturbance and had an impaired ability to conform his conduct to requirements of the law

13. My interview, testing and review of background materials also lead me to conclude that Mr. Honken does not suffer from Anti-Social Personality Disorder (ASPD). The MMPI showed no significant elevations on the scales associated with antisocial personality, sociopathy, or psychopathy. Further, while Mr. Honken engaged in antisocial behaviors as an adult, a diagnosis of ASPD requires evidence of Conduct Disorder with onset prior to the age of fifteen. There is simply no evidence of that. Mr. Honken does not meet the diagnostic criteria for ASPD.

14. As indicated above, my review of all of the materials lead to the conclusion that there was a great deal of mitigating evidence that could have been presented to the jury. At the time of the offenses, Mr. Honken was a severely debilitated individual. Despite these significant mental health impairments, the trial record of the penalty phase reveals that no mental health

Page 5 of 6

mitigation was presented at all. The psychological difficulties and the resultant dysfunction described herein and in Dr. Dudley's declaration were not part of the penalty phase presentation. In my experience, the combined mental health effects of the family history of mental illness, Mr. Honken's upbringing, which was marked by abuse, neglect and abandonment, and his severe drug use, would have been substantially mitigating.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief, subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

_____
John F. Warren, III, Ph.D.

Dated: June 3, 2011

Page 6 of 6