**46**

## Declaration of Michael M. Gelbort, Ph.D.
### Pursuant to 18 U.S.C. § 1746

I, Michael M. Gelbort, Ph.D., hereby declare under the penalty of perjury that the following is true and correct.

1. I am a licensed psychologist and I maintain a clinical and forensic practice in Chicago, Illinois. I have a specialty in the area of neuropsychology. I was retained by trial counsel for Dustin Honken in his federal capital murder proceedings in the Northern District of Iowa. I was asked to conduct a neuropsychological evaluation which I did on July 19, 2004. Although I took a history from Mr. Honken, the bulk of my time with him was spent administering a battery of neuropsychological testing. I would note that I was not asked to conduct a more general psychological evaluation or a mitigation evaluation. I would also note that I was working under some time constraints as I recall the lawyers had to alert the court as to whether I would be a witness for the defense.

2. I provided my opinions regarding the testing in a report that I faxed to counsel on July 22, 2004. While Mr. Honken has some notable variations in his abilities and some other soft signs of possible organic brain dysfunction (e.g. minor issues with attention), on the whole his test results showed him to be without significant neuropsychological deficits.

3. I was aware at the time of my evaluation that Mr. Honken has been convicted of manufacturing methylamphetamine (meth). I was also aware of limited drug use, including the use of meth, and other controlled substances. I was not asked to consider whether his use of meth and other drugs could have impacted his behavior at the time of the offenses. Rather, the referral question was limited to his then-current neuropsychological functioning.

1

4. I have been contacted by Mr. Honken's current counsel. They have provided me with a report from Melissa Piasecki, M.D. The report addresses the potential impacts on behavior of meth use and manufacturing. I agree with Dr. Piasecki's general observations. I also agree with her opinion that the neuropsychological and behavioral effects of meth use and manufacture will abate over time. Applying that recognition to this case, the fact that my testing showed Mr. Honken to be largely neurologically intact at the time of my testing is not to suggest that he was similarly intact at the time of the offenses, which occurred years before my testing, and at a time when he still may have been suffering the effects of his meth manufacturing and use, and other drug use.

5. Had trial counsel raised these questions with me then, I would have provided the same opinions and would have testified to the same.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief, subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

Dated: June 6 , 2011
Chicago, Illinois

_____
Michael M. Gelbort, Ph.D.

2