# 72

## Declaration of Charles M. Rogers, Esq.
## Pursuant to 18 U.S.C. § 1746

1. My name is Charles M. Rogers. I am an attorney with an office in Kansas City, Missouri. In 2004, I was one of three lawyers who represented Dustin Honken in his federal capital murder trial. I was appointed as learned capital counsel.

2. Alfredo Parrish, of Des Moines, Iowa, was lead counsel. He had previously represented Mr. Honken in a federal drug conspiracy case involving the manufacture and distribution of methamphetamine. Leon Spies of Iowa City was also appointed to represent Mr. Honken. With the exception of a federal capital murder case that Mr. Parrish and I worked on together, and which was resolved before the Attorney General formally authorized the government to seek the death penalty, neither Mr. Parrish nor Mr. Spies had experience defending capital cases. They often deferred to me on issues that were unique to capital litigation.

3. Mr. Parrish, as lead counsel, was responsible for the guilt phase. I consulted on all matters. Originally, it was agreed that I would present the penalty phase case, if we got to that point. Nonetheless, Mr. Spies was primarily responsible for the pre-trial investigation and development of the penalty phase. During jury selection, Mr. Honken expressed his desire that Mr. Spies present the penalty case, if needed, and so I deferred to Mr. Spies. I continued to consult on that phase and on all aspects of the litigation. We often talked by phone and in person and made most of the major decisions in the case collectively.

4. We submitted a pre-trial motion asserting Mr. Honken's double jeopardy right against successive prosecution on the drug conspiracy charges. I was responsible for

researching and drafting that motion. The motion did not assert, and we did not otherwise object, based on the legal arguments presented in grounds one and two of Mr. Honken's current Section 2255 Motion. This was an oversight. I do not recall that we discussed those issues as a basis for keeping out bad findings, or incorporating goods findings, from the earlier proceedings. As things turned out, the government was able to present all of the bad findings and the defense did not present the good findings. There was not any strategic or tactical reason for not raising these legal arguments. The oversight may well have occurred because, although I was responsible for drafting the double jeopardy motion, Mr. Parrish was obviously most familiar with the record and findings from the prior drug prosecution.

5. We also did not have a tactical or strategic reason for not objecting on double jeopardy grounds to the multiplicitous charges for drug conspiracy murder and continuing criminal enterprise murder. I now know that Mr. Honken's codefendant, Angela Johnson, successfully litigated this issue and had her drug conspiracy convictions vacated on direct appeal. Had we not overlooked the issue, Mr. Honken would have been entitled to the same relief.

6. Jeffrey Honken is Dustin Honken's brother. He was called as a witness at the trial by the government. I recall that we did not conduct any specific investigation to try to prove that he was not an underling of Mr. Honken in the conspiracy. There was no tactical reason for not doing specific investigation into Jeff's role in the conspiracy. Based on my review of the Section 2255 Motion, it appears that such an investigation would have been helpful in contesting the continuing criminal enterprise charges, and in thereby precluding death sentences

2

on those charges. We should have done a more thorough investigation on that question.

7. In preparation for the penalty phase, we retained Lisa Rickert, who is a mitigation specialist. I had worked with her previously and recommended her to the team She is a highly qualified and skilled mitigation specialist.

8. Ms. Rickert recommended that we have Mr. Honken evaluated by a psychologist or psychiatrist to assess the psychological impact of his difficult upbringing. Mr. Parrish, Mr. Spies and I consulted with Ms. Rickert about this, and discussed this among ourselves and decided not to have the evaluation conducted. I was concerned that if we were to have Mr. Honken evaluated, then the government would also have him evaluated. I was quite sure that the government would likely use Daniel Martell or Park Deitz. That turned out to be the case, when the government placed Dr. Dietz on their witness list. These doctors routinely worked with the government at that time and they always found capital defendants to have an anti-social personality disorder. I was convinced they would do the same here. This is one reason I suggested that we not have Mr. Honken evaluated by a psychiatrist or psychologist as Lisa Rickert had suggested. We did not have any discussions about the fact that we could have done a confidential evaluation that the government did not have to know about unless we decided to use that information at trial. There was no discussion of any rule requiring a fire wall be set up in the prosecutor's office with respect to any penalty phase mental health mitigation that we wished to use.

9. I have reviewed the reports of three experts who were retained by current counsel, and additional evidence that has been developed. I can see no reasonable strategic or tactical

3

reason for not at least exploring the mental health impact of Mr. Honken's family history and digging further into the extent of his abuse of methamphetamine and other drugs. We also should have looked further into the effect of the exposure to toxins that Mr. Honken was subject to during the manufacture of methamphetamine, particularly when he and Tim Cutcomp were making it in the desert over an extended period of time, even though Dr. Gelbort had found no neuropsychological impairment. We talked about consulting a toxicoligist but never did. There was no tactical or strategic reason that we did not do so.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information, and belief, subject to the penalty of perjury, pursuant to 28 U.S.C. § 1746.

Charles M. Rogers, Esq.

Date: June 6, 2011

4