IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DUSTIN LEE HONKEN,                        )
                                          )          No. 10-CV-03074-LRR
            Petitioner/Defendant,         )          No. 01-CR-3047-MWB
                                          )
     vs.                                  )
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
            Respondent/Plaintiff.         )


**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S MOTION
FOR DISCOVERY AND ACCESS TO WITNESSES AND JURORS**

I.     **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **PETITIONER'S DISCOVERY REQUESTS**. . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    Discovery in § 2255 Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.    Petitioner's Request for Information from the Marshals Service
             Regarding Transportation of Inmates and Security Measures
             is Untimely. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       C.    Petitioner's Request for Information Regarding Transportation
             of Inmates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       D.    Petitioner's Request for Information from the Marshals Service
             Regarding Security Measures Taken During His Trial. . . . . . . . . . . . . . 8

       E.    Petitioner's Request for Access to WitSec Inmates. . . . . . . . . . . . . . . 10

III.   **PETITIONER'S REQUEST TO INTERVIEW JURORS**. . . . . . . . . . . . . . . . . . . 13

       A.    Petitioner Has Failed to Show Good Cause for Discovery. . . . . . . . . . . 14

             (i)    The Trial Judge's Alleged Emotional Display. . . . . . . . . . . . . . 14

             (ii)   Juror 523. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

        (iii)     Security Measures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

   B.     Petitioner Has Failed to Show the Evidence is Admissible and
          That There Are No Other Sources for the Evidence. . . . . . . . . . . . . . . 17

IV.   **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.   **INTRODUCTION**

Petitioner seeks an order for discovery involving:

1) a list of all Marshals Service and any other law enforcement personnel who engaged in witness transportation, and the opportunity to interview each of the personnel;

2) access to information related to the security measures taken at Petitioner's trial;

3) access to and interviews of each of the witnesses in the witness protection program; and,

4) access to and interviews of trial jurors.

The government resists Petitioner's discovery requests. Petitioner's request is untimely with respect to the first two topics. With regard to all of his requests, Petitioner has failed to establish a prima facie case of a violation of his constitutional rights sufficient to compel the court to exercise its discretion to grant Petitioner authority to conduct discovery. Further, Petitioner's request for discovery of security measures adopted during his trial is overly broad and compelling interests in protecting security procedures outweighs Petitioner's interests in conducting discovery. Finally, Petitioner's request to interview jurors is intended to seek testimony from them

Case 3:10-cv-03074-LTS-KEM    Document 34    Filed 08/24/11    Page 2 of 19

regarding the impact certain events had on them is inadmissible under Federal Rule of Evidence 606(b).

## II.   PETITIONER'S DISCOVERY REQUESTS

### A.   Discovery in § 2255 Proceedings

Rule 6 of the Rules Governing Section 2255 Proceedings provides, in pertinent part:

> (a) Leave of Court Required.  A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.

"Good cause" for discovery exists only when a petitioner can establish a prima facie case for relief on the underlying claim – that is, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . .  entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997).  See also *Harris v. Nelson*, 394 U.S. 286, 299-300 (setting forth standard for permissible discovery); *United States v. Roane*, 378 F.3d 382, 402-403 (4th Cir. 2004) (affirming district court's denial of discovery where district court required petitioner make out a prima facie case for relief).

A discovery request based on speculation or conjecture does not constitute good faith.  See, e.g., *Jones v. United States*, 2007 WL 1046459, * 3 (7th Cir., April 6, 2007) (unpublished) (affirming district court's denial of petitioner's discovery request under Rule 6 because "[h]is speculation does not constitute good faith."); *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1106 (9th Cir. 1996) (habeas petitioners may not "use federal discovery for fishing expeditions to investigate mere speculation."); *Franco v. United*

3

*States*, 1999 WL 623354, * 2 (6th Cir., Aug. 9, 1999) (unpublished) (affirming denial of discovery requests where petitioner made "only vague and conclusory assertions"); *Dziurgot v. United States*, 1990 WL 254082, *5 (1st Cir., Nov. 16, 1990) (unpublished) (affirming district court's denial of petitioner's discovery request where it was "purely speculative and hypothetical" and amounted to a "fishing expedition in the name of discovery.").

A court of appeals will review a district court's denial of a discovery request in a § 2255 proceeding for abuse of discretion. See, e.g., *Chapman v. United States*, 55 F.3d 390, 391 (8th Cir. 1995) (finding district court did not abuse its discretion in denying a § 2255 petitioner's requests for discovery); *Dyer v. United States*, 23 F.3d 1421, 1424 (8th Cir. 1994) (same); *Halloway v. United States*, 960 F.2d 1348, 1359 n. 16 (8th Cir. 1992) (affirming district court's denial of a § 2255 petitioner's discovery request, holding "We review for abuse of discretion the denial of a discovery motion as well as a motion for appointment of counsel.").

B.      Petitioner's Request for Information from the Marshals Service Regarding Transportation of Inmates and Security Measures is Untimely

Petitioner filed his § 2255 Motion on December 14, 2010. On January 5, 2011, this Court entered an order adopting a joint scheduling order proposed by the parties. (Doc. 9). Included among the deadlines was one for requesting discovery, which was set as March 1, 2011. (Id., at p. 2). On March 1, 2011, Petitioner served on the United States a letter constituting his discovery requests. (Exhibit 1). Among the discovery requested was "the present location of, and access to, each of the individuals who are currently in witness protection. (Exhibit 1, page 3-4). Petitioner did not, however, ask

4

for discovery regarding the transportation of inmate witnesses by the United States Marshals Service and other law enforcement agencies. Nor did Petitioner ask for discovery of the security measures adopted at his trial. Based on the undersigned attorney's review of his emails, it appears the first time Petitioner requested discovery regarding this information was in an email dated August 8, 2011.

Accordingly, to the extent Petitioner seeks discovery regarding the transportation of inmate witnesses and security measures adopted during his trial, his discovery request is untimely.

C.      Petitioner's Request for Information Regarding Transportation of Inmates

Petitioner alleged a *Brady* violation in Claim 3, broadly asserting that "many [of the government inmate] witnesses were transported to the trial together or were otherwise in the presence of one another and discussed their testimony and their expectations of favorable treatment among themselves." (Petitioner's Memorandum, Doc. 19, at 28-29). It appears Petitioner bases this claim upon the statement of two cooperators, asserting Dennis Putzier and Terry Bregar "have confirmed" that many of the jailhouse informant witnesses were transported to Sioux City together or were held together. (Petitioner's Memorandum at 37). Petitioner claims these witnesses stated that, while being transported, they "would discuss the case and their testimony" and "make up stories" based on the conversations. (Id., at 38). Petitioner claims they also talked about the benefits they all hoped to get from testifying, and "this information was never turned over to the defense or was denied by the witnesses during their testimony." (Id.).

The government presumes that, given the limited number of Deputy Marshals

5

and local jails contracting with the Marshals Service, that some of the inmate witnesses were transported and held together at times.[1]  It does not follow, however, that Petitioner has alleged sufficient facts to establish that, while transported, those inmates colluded to conform their testimony to match each other.  Petitioner failed to identify where and when these conversations allegedly occurred.  Petitioner failed to allege what was said between the inmates.  Petitioner has not pointed to trial testimony by inmate witnesses to show that their stories matched each other.[2]  Petitioner failed to state what "stories" were made up, or that any inmate testified to a false story as a result of this alleged contact.  To the extent they talked about hoped-for benefits from testifying, Petitioner failed to state facts establishing any one of the witnesses testified falsely regarding their hope for a benefit for testifying.  Petitioner's assertions are hopelessly vague, failing to provide any specifics as to which inmates allegedly colluded with each other, when this occurred, where it occurred, and what testimony was allegedly falsified.

Nor has Petitioner shown, even if the collusion did occur, that the government was aware of it and suppressed it in violation of *Brady*.  Petitioner did not allege facts demonstrating that the communication took place before United States Marshals such

---

[1]  On the other hand, each of the witnesses in the WitSec program were transported separately by special security personnel and kept separate at all times from other inmates (including other inmates in the program).

[2]  Indeed, several inmates knew only about Petitioner's escape attempt from the Woodbury County Jail, while other inmates knew only what Petitioner told them about the murders.  Moreover, even when inmates testified on the same topic, their testimony was not always consistent.

6

that the Marshals would have been in a position to hear the alleged conversations.[3] In his discovery request, Petitioner makes the conclusory assertion that, if allowed to interview the law enforcement officers who transported the inmate witnesses, "it will support his allegation that jailhouse informant witnesses were transported together and colluded to conform their testimony to one another." (Petitioner's Motion for Discovery and Access to Witnesses and Jurors, Doc. 32, at 4). It is pure speculation, however, that any of the law enforcement officers who transported inmate witnesses would have overheard such alleged collusion. Indeed, one would imagine that inmates intent on colluding to provide false testimony would hardly have the conversations within earshot of law enforcement personnel.

Petitioner's request for lists of law enforcement personnel involved in the transportation of inmate witnesses, and to interview those law enforcement personnel, is nothing but a fishing expedition disguised as discovery. Petitioner has failed to allege facts showing that the law enforcement personnel would likely have information that would further his claim. He has failed to establish a prima facie case that the collusion occurred, let alone that the government was aware of the collusion and suppressed the information in violation of *Brady*. Therefore, Petitioner has not shown good cause to permit discovery and the Court should deny his request.

---

[3] Nor did he allege facts showing the government somehow learned of the collusion through some other means. Indeed, the very fact he seeks to talk with the Marshals Service suggest his only theory of how the government would have known of the collusion, and then suppressed it, is that the transporting officers knew of it.

7

Petitioner's Request for Information from the Marshals Service Regarding Security Measures Taken During His Trial

In part of his Claim 18, Petitioner alleges that he was prejudiced by "[a]dditional onerous and unnecessary security measures" "also put in place with respect to the jury that could have only had an objective and profound impact on the individual jurors." (Petitioner's Memorandum, 170). Petitioner claims that when jurors arrived at the courthouse, "they were ushered inside also under very tight security and were able to see snipers and other uniformed and armed law enforcement personnel in many areas in and around the courthouse," speculating that "[s]uch drastic security measures were surely to have effects on the jurors' view of Petitioner and their analysis of the evidence . . .." (Id.).

Petitioner's attorneys claimed these facts "by information and belief." (Petitioner's Memorandum, 170 n. 27). They failed to give attribution upon what they base this belief. They provided no affidavit or declaration in support of this assertion.

In fact, the security measures adopted by the Marshals for Petitioner were not in place when jurors were transported into and out of the courthouse and were not visible to them.[4] Petitioner was transported to and from the courthouse before and after the jurors were transported to the courthouse. (Affidavit of Duane Walhof, Exhibit J). Security measures in place while Petitioner was in transport into and out of the

---

[4] The undersigned Assistant United States Attorney is not privy to the security measures adopted by the United States Marshals Service during Petitioner's trial. The Marshals Service did not share with the prosecutors an outline of its security plans or operations, and the undersigned knows no more about it than what he observed. The government has relied upon the Affidavit by Duane Walhof regarding its factual assertions about security at the trial.

8

courthouse were not in place when jurors arrived and left the courthouse. (Id.). While Deputy Marshals were armed while transporting the jurors from remote locations, they wore only sidearms concealed by their plain clothes. (Id.). While transporting the jurors, the Deputy Marshals did not display any long guns. (Id.). Counter snipers were not in place when jurors were ushered into and out of the courthouse. (Id.).

Petitioner has provided nothing to overcome the Affidavit by Duane Walhof that the security measures adopted for Petitioner's transportation were not in place when jurors were brought to and from the courthouse. Therefore, his claim is purely speculative, he has not shown good cause to conduct discovery on this issue, and the Court should therefore deny his discovery motion. See *Griffin v. United States*, 2002 WL 1726910, * 1 (8th Cir. 2002) (unpublished) (affirming district court's denial of a petitioner's discovery request where the government produced an affidavit showing that a letter was not in the U.S.D.A. files, and therefore could not have been withheld in violation of *Brady*); *United States v. Pungitore*, 15 F. Supp.2d 705, 713 (E.D.Pa. 1998) (denying habeas petitioner's request for discovery of security measures taken by the marshals service, finding petitioner was "grasping at straws").

Further, the Court should deny Petitioner's discovery request because it is overly broad. Petitioner's claim is limited to allegations there were security measures visible to jurors. Petitioner, however, requests "access to information . . . related to the security measures present at Petitioner's trial." (Petitioner's Motion for Discovery and Access to Witnesses and Jurors, Doc. 32, at 4). That request encompasses security measures taken not only by the United States Marshals, but other law enforcement officers involved in the case, United States Attorney's Office personnel, and others. It is also

9

overly broad because it would encompass security measures that had nothing to do with operations at the courthouse.

Finally, the Court should deny Petitioner's discovery request because it is unduly burdensome to the extent that it seeks law enforcement sensitive information.  Release of information regarding security measures taken in high-risk cases could jeopardize the safety of law enforcement personnel and the people whom they protect.  The Court may properly balance Petitioner's interests in obtaining information to support his conjectural claim against the government's compelling interests in preserving the confidentiality of security measures adopted by the Marshals Service in high-risk trials. See *United States v. Williams*, 791 F.2d 1383, 1387 (9th Cir.1986) (affirming district court's denial of a civil rights litigant's discovery request regarding prison security measures, finding the court "correctly balanced the competing interests in reaching its discovery ruling").[5]

    E.    Petitioner's Request for Access to WitSec Inmates

During Petitioner's trial, the government disclosed as potential *Giglio* information that certain witnesses were in the WitSec program.  Petitioner seeks access to and the ability to interview seven witnesses who Petitioner claims were or are in the WitSec

---

[5] The government understands Petitioner is willing to receive the information subject to a protective order, but once such information is disclosed it is out of the government's control and the availability of sanctions for violating protective orders does nothing to prevent the harm that would be caused by disclosure.  Should the Court have any doubt as to the merit of Petitioner's claim, the government would far rather have the Court conduct an *in camera* review of the information. See *Brown v. Doe*, 2 F.3d 1236, 1248 (2nd Cri.1993) (rejecting § 2255 petitioner's claim the district court erred when it denied his request to review a report regarding security measures taken at trial, but noting the court had reviewed the report in camera and found no merit to petitioner's claims).

program.  Petitioner claims he has shown the government committed a *Brady* violation with regard to other inmate witnesses he has interviewed.  Petitioner argues he is therefore entitled to interview these additional witnesses in the WitSec program on the hope they will support his claim.

The Department of Justice and the Bureau of Prisons oversees the federal witness security program (WitSec) for witnesses incarcerated in the Bureau of Prisons.  The relocation and protection of witnesses in the WitSec program is governed by 18 U.S.C. § 3521.  Subsection (b)(1) provides, among other things, that the "Attorney General may, by regulation . . . (G) disclose or refuse to disclose the identity or location of the person relocated or protected . . .."  18 U.S.C. § 3521(b)(1)(G).  The regulation addressing disclosure states: "The identity or location or any other information concerning a person receiving protection under 18 U.S.C. § 3521 et. seq., or any other matter concerning the person or the Program, shall not be disclosed except at the direction of the Attorney General, the Assistant Attorney General in charge of the Criminal Division, or the Director of the Witness Security Program."  28 C.F.R. § 0.111b(b).

The undersigned Assistant United States Attorney does not know the location of the witnesses Petitioner seeks to interview, nor their current identities if they have been changed.  As set forth in C.F.R. Section 3521, that information can only be disclosed by higher authorities.  Before the Court should order such disclosure, Petitioner must show a prima facie case establishing his claim and demonstrate that discovery of the information he seeks will support that claim.  This he cannot do.

For the reasons set forth in the government's resistance to Petitioner's claim, the

11

government did not fail to disclose information in violation of its *Brady* obligations. Terry Bregar's medical records fail to support Petitioner's claim that Bregar suffered a stroke that affected his memory, and Petitioner has produced nothing to support the allegation that the government was aware of an alleged stroke that affected Bregar's memory. The government disclosed in discovery that Dennis Putzier was told by law enforcement officers that he might be charged with more serious crimes, and that Anthony Johnson provided information pursuant to a proffer agreement. Petitioner's other allegations of alleged undisclosed information are so vague and conclusory that they fail to adequately state a claim.

Regardless of the merits of Petitioner's *Brady* violation claims with respect to Bregar, Putzier and Johnson, it does not follow that *Brady* violations occurred with regard to these other witnesses who were in the WitSec program. Indeed, Petitioner has not alleged any facts suggesting the government failed to disclose any *Brady* material with respect to any of the seven witnesses he seeks to interview. Although Bregar and Putzier claim inmates were transported together and colluded regarding their testimony, neither Bregar nor Putzier named any of the seven witnesses as among those transported. Petitioner's desire to have access to and interview the former WitSec witnesses is truly a fishing expedition.

Moreover, providing Petitioner's attorneys with access to these witnesses would be no simple matter. Authorization would be required from the Director of the Witness Protection Program to provide access. Steps would then have to be taken by the United States Marshals Service to make contact with the witnesses, who may or may not be 1) incarcerated in the WitSec program; 2) released from prison and in the

Witness Protection Program under a new identity; or 3) released from prison with a new identity but no longer in the Witness Protection Program. Assuming the witnesses could be reached, it does not follow that they would agree to be interviewed by defense counsel. Even if they agreed to be interviewed, arrangements would have to be made that would allow the interviews to take place in a manner that would not jeopardize the safety of the witness. This may require moving the witness to a safe location away from his current residence, which would require the taking of security precautions, the dedication of personnel resources, and the expenditure of travel and other costs.

In balancing Petitioner's interest in conducting discovery, on the speculation that the witnesses might have information in support of his claims, it should be balanced against the burden of providing Petitioner with access to these witnesses in a manner necessary to protect them. When, as here, Petitioner has alleged no facts to establish that the government failed to disclose any *Brady* material with respect to these witnesses, and has alleged no facts establishing any reason to believe these witnesses possess information that would support his claims, the Court should deny Petitioner's request to require the government to expend resources necessary to provide Petitioner's counsel with access to these witnesses under conditions necessary to protect them.

## III.     PETITIONER'S REQUEST TO INTERVIEW JURORS

Petitioner seeks the Court's permission to interview jurors to support his claims that: 1) the court had an emotional display in front of the jury (Claim 11); 2) Petitioner was prejudiced by the inclusion of a juror (Juror 523) who was exposed to outside influences (Claim 17); and, 3) jurors were exposed to allegedly prejudicial security

measures during the trial. (Petitioner's Motion for Discovery and Access to Witnesses and Jurors, Doc. 32, at 6). The Court should not permit this discovery absent Petitioner making a prima facie case supporting the underlying claims. Moreover, before the Court should permit Petitioner's counsel to invade the privacy of the jurors who rendered a public service, Petitioner should demonstrate that the information he seeks from the interviews is admissible, and that there are no other sources for the evidence he seeks.

A.    Petitioner Has Failed to Show Good Cause for Discovery

(i)    The Trial Judge's Alleged Emotional Display

Petitioner's request to interview jurors regarding the trial judge's alleged emotional display must be evaluated in the context of the legal claim into which he has inserted this allegation. Petitioner's Claim 11 alleges that his trial attorneys were ineffective for failing to object to the victim impact evidence on the ground that it was so emotional that it violated Petitioner's constitutional rights.[6] (Petitioner's Memorandum, Doc. 19, at 112-119). To make a prima facie showing that his rights were violated, therefore, Petitioner must show: 1) the victim impact evidence was so emotionally charged as to render it fundamentally unfair; 2) that his trial attorney's failure to object to the victim impact evidence fell below an objective standard of reasonableness; and 3) that had his attorneys objected and the district court sustained their objection, at least one juror would have voted not to impose the death penalty. Petitioner claims, as

---

[6] Petitioner can only attack the victim impact evidence through the gate of an ineffective assistance of counsel claim because it would otherwise be procedurally barred.

14

one part of his allegations, that the trial judge's emotional response to the evidence supports his contention that the victim impact evidence was too emotionally charged and that it affected the jury.

Petitioner has not established a prima facie case sufficient to permit him to conduct discovery on this issue. As argued in the Government's Memorandum in Opposition to Petitioner's Motion (Doc. 22, pages 115-124), the victim impact evidence fell within the parameters of permissible victim-impact evidence. That it was not so emotional that it violated Petitioner's constitutional rights is not to deny that it was emotional – indeed, it is hard to imagine any victim-impact evidence in a case involving the slaughter of five people, including two innocent little girls, not having an emotional component. The district court denied crying in response to the victim impact evidence, but admitted that "there was some emotion in my voice." (Tr. 3674). As the government pointed out in its Memorandum: "Judges, while expected to possess more than the average amount of self-restraint, are still only human." *United States v. Weiss*, 491 F.2d 460, 468 (2nd Cir. 1974). Thus, "[j]udges are not required to sit stone-faced and erect at all times and to refrain from reacting to an event at which they are presiding." *Lamborn v. Dittmer*, 726 F. Supp. 510, 517 (S.D.N.Y. 1989). That the trial judge exhibited some emotion in his voice does not demonstrate the victim impact evidence was so emotional as to render Petitioner's trial fundamentally unfair. Moreover, Petitioner's allegations fail to demonstrate that the victim impact evidence was so clearly impermissible under the Constitution that his trial attorney's failure to object to it reflected performance below an objective standard of reasonableness. Finally, even if jurors noticed the emotion in the trial judge's voice, it does not follow that

15

at least one of them would have voted against the death penalty in the absence of the victim impact evidence.

(ii)     Juror 523

Petitioner apparently seeks to interview jurors to determine the impact the extraneous influence Juror 523's boss had on the jury.  This is ironic, given that Petitioner's habeas claim is that his trial attorneys were ineffective for failing to object to the scope of the trial court's evidentiary hearing on this issue, asserting that his trial attorneys should have objected to testimony about whether the extraneous influence had an impact on the juror's ability to be fair and impartial.  As the government pointed out in its memorandum, Petitioner's trial counsel did object to the scope of the testimony, which was particularly effective assistance of counsel because their objection was sustained on appeal in the first case in the Eighth Circuit Court of Appeals directly addressing this issue.  (Government's Memorandum in Opposition to Petitioner's Motion, Doc. 22, page 162).  Petitioner's claim that his trial attorneys were ineffective, therefore, has no merit and he cannot therefore show good cause to conduct discovery by interviewing jurors on this issue.

(iii)     Security Measures

Petitioner's claim that jurors observed security measures is part of his Claim 18, in which he generally alleges that his trial attorneys were ineffective for failing to properly object to the security measures adopted by the Marshals Service.  (Petitioner's Memorandum, Doc. 19, pages 164-171).  With regard to this sub-issue, Petitioner has failed to make a prima facie case supporting his claim.  As discussed above, Petitioner cites no facts to support his assertion that jurors were exposed to the security measures

16

he described.  The government has provided an affidavit by Deputy Marshal Duane Walhof that shows the jurors were not exposed to those alleged security measures. Petitioner has failed to show that his trial attorneys' performance on this issue fell below an objective standard of reasonableness, or that he was prejudiced as a result of their performance.  The Court should not permit Petitioner to conduct discovery by questioning jurors about this issue when he has failed to establish a prima facie case to support his claim.

      B.      <u>Petitioner Has Failed to Show the Evidence is Admissible and That There Are No Other Sources for the Evidence</u>

Petitioner acknowledges that, while Rule 606(b) may permit jurors to testify about the existence of extraneous information or outside influences, jurors are barred from testifying as to the effect of such information or influence.  (Petitioner's Motion for Discovery and Access to Witnesses and Jurors, Doc. 32, at 7, citing *United States v. Honken*, 541 F.3d 1146, 1168-69 (8th Cir. 2008)).  <u>See also</u> *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir. 1981) (finding "the district court properly followed the dictates of Federal Rule of Evidence 606(b) by preventing any examination into the effect that this extrinsic material had on the mental processes of the jurors.").  Petitioner claims he only intends to seek information permitted by Rule 606(b).  (Petitioner's Motion for Discovery and Access to Witnesses and Jurors, Doc. 32, at 7).  An email from Petitioner's counsel to the government, however, suggests the real reason Petitioner wants to interview the jurors is to elicit precisely the type of information barred by Rule 606(b).

17

Petitioner's counsel stated:

> We would like permission to interview the trial jurors and will move for it pursuant to the local rule. We believe that the jurors may have relevant information related to the <u>impact</u> of security measures, and the judge's alleged emotional display during penalty, and the <u>impact</u> of the Juror 523 incident on the other jurors.

(8/8/11 e-mail, emphasis added, attached as Exhibit 2). If, as stated, the purpose of the interviews is to determine the impact or effect these alleged events had on the jury, it is inadmissible under Rule 606(b), and therefore Petitioner should not be allowed to interview the jurors.

Even if the interviews were limited to questioning the jurors about the existence of the alleged extraneous material, the Court should not grant Petitioner's request. There are other sources of evidence available to Petitioner to establish the existence of extraneous material. To the extent Petitioner alleges the trial judge had an emotional display, he can attempt to prove the existence of that alleged fact through any number of other witnesses, including defense counsel, court personnel and the judge.[7] Regarding Petitioner's claim regarding Juror 523 and her boss, the Court already held an extensive hearing on that issue and further testimony is not appropriate. Finally, the government has already provided an affidavit by Deputy Marshal Duane Walhof establishing that Petitioner's speculative claim that jurors saw security measures taken

---

[7] Petitioner suggests the Court has already determined an evidentiary hearing in relation to a § 2255 proceeding would be appropriate on this issue. (Petitioner's Motion for Discovery and Access to Witnesses and Jurors, Doc. 32, at 8 and 10 n. 3). The Court only stated, however, that an evidentiary hearing "may come and probably will come at a later day." (Tr. 3674). This was not a determination that an evidentiary hearing was warranted, or in any way a ruling that jurors would be appropriate witnesses at any such evidentiary hearing.

18

by the Marshals Service is baseless.  Regardless, if the Court finds an evidentiary hearing appropriate on this issue, Deputy Walhof could testify about what security measures were visible to the jury, or Petitioner could call others, such as court personnel, regarding the issue.

## IV. CONCLUSION

For the reasons set forth above, the United States respectfully requests the Court deny Petitioner's Motion for Discovery and Access to Witnesses and Jurors.

Respectfully submitted,

STEPHANIE M. ROSE
United States Attorney

By: s/ C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
401 First Street SE, Suite 400
Cedar Rapids, Iowa 52401
319-363-6333
(Fax 319-363-1990)
cj.williams@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on August 24, 2011.

UNITED STATES ATTORNEY

BY: s/ S. Van Weelden

COPIES TO: Counsel of Record

19