**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

DUSTIN LEE HONKEN,

        Movant,

vs.

UNITED STATES OF AMERICA.

No. CV10-3074-LRR
No. CR01-3047-LRR

**ORDER ON MOTION FOR**
**DISCOVERY**

================

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **APPLICABLE STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **DISCOVERY REQUESTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

     *A.*    *Request for Discovery Pertaining to the Transportation of Jailhouse*
          *Informants by Law Enforcement Personnel* . . . . . . . . . . . . . . . . . **4**

     *B.*    *Request for Discovery Pertaining to the Security Measures that*
          *Law Enforcement Personnel Put in Place* . . . . . . . . . . . . . . . . . **7**

     *C.*    *Request for Discovery Pertaining to Jailhouse Informants* . . . . . . . **10**

     *D.*    *Request for Discovery Pertaining to Jurors* . . . . . . . . . . . . . . . . . **12**

          *1.*    *Prima facie case for relief and Federal Rule of*
               *Evidence 606(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

          *2.*    *Allegations pertaining to the jurors* . . . . . . . . . . . . . . . . . . **15**

               *a.*    *Claim 11—emotional display* . . . . . . . . . . . . . . . . . . **15**

               *b.*    *Claim 17—Juror 523* . . . . . . . . . . . . . . . . . . . . . . . **22**

               *c.*    *Claim 18—security measures* . . . . . . . . . . . . . . . . . **23**

       *d.  Summary of Claim 11, 17 and 18*  . . . . . . . . . . . . . . . .  **24**

**IV.**    ***CONCLUSION***  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **25**

# I.  INTRODUCTION

This matter appears before the court on Dustin Lee Honken's motion for discovery (civil docket no. 32).  Dustin Lee Honken ("the movant") filed such motion on August 15, 2011.  The government filed a resistance (civil docket no. 34) on August 24, 2011.  The movant filed a reply (civil docket no. 36) on August 30, 2011.

# II.  APPLICABLE STANDARD

There is no right to automatic discovery where a movant seeks relief under 28 U.S.C. § 2255.  *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("[U]nlike the usual civil litigant in federal court, [a movant] is not entitled to discovery as a matter of ordinary course.").  The Rules Governing Section 2255 Proceedings afford the court discretion when deciding whether to permit discovery.  Specifically, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Rule 6(a) of the Rules Governing Section 2255 Proceedings.  In addition, the Rules Governing Section 2255 Proceedings make clear that a party requesting discovery must provide reasons for the request.  *See* Rule 6(b) of the Rules Governing Section 2255 Proceedings.  When determining whether "good cause" exists, the court must identify the "essential elements" of the claim that is asserted, *Bracy*, 520 U.S. at 904, and then evaluate whether the "'specific allegations before the court show reason to believe that [the movant] may, if the facts are fully developed, be able to demonstrate that [relief is warranted],'" *id.* at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  *See also United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004) (discussing applicable standard).  The burden to establish "good cause" rests with the moving party, and such party's factual allegations

must be specific to justify discovery. *See generally Williams v. Beard*, 637 F.3d 195, 209-11 (3d Cir. 2011); *Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000); *Rich v. Calderon*, 187 F.3d 1064, 1067-68 (9th Cir. 1999). Stated differently, Rule 6 of the Rules Governing Section 2255 Proceedings does not authorize a "fishing expedition." *Rich*, 187 F.3d at 1067.

### III. DISCOVERY REQUESTS

In the instant motion, the movant asks the court to allow him to conduct discovery with respect to several claims. Specifically, the movant desires discovery that pertains to law enforcement personnel who transported witnesses and the security measures that were in place during the movant's trial. He also asks the court to grant him permission to interview certain jailhouse informants that he does not have access to and each of the jurors who took part in his trial. In addition, the movant makes clear that, consistent with their joint stipulation, the parties made discovery requests on March 1, 2011, the parties have engaged in discovery in good faith and the parties have been unable to resolve only a small number of issues pertaining to discovery. In response, the government asserts that a number of the movant's discovery requests are untimely and overly broad, none of the movant's discovery requests are based on a valid violation of his constitutional rights and juror testimony is inadmissible under Federal Rule of Evidence 606(b). In his reply, the movant acknowledges that some of his requests may not comply with the previously established deadlines, argues that permitting him to conduct discovery with respect to the requested transportation and security information will not prejudice the government and contends that the government is asserting a discovery standard that is more onerous than the law requires. The court now turns to consider each of the movant's discovery requests.

### A. Request for Discovery Pertaining to the Transportation of Jailhouse Informants by Law Enforcement Personnel

With respect to his first discovery request, the movant seeks a list of all personnel from the United States Marshals Service and other law enforcement agencies who were involved in the transportation of jailhouse informants to or from the courthouse during the movant's trial, and the movant asks that he be afforded the opportunity to interview such personnel because he believes their interviews will support his assertion in Claim 3 that jailhouse informants colluded to conform their testimony. The government resists such request on the basis that it is untimely. Alternatively, the government argues that the movant did not establish a prima facie case for relief and failed to assert allegations that are sufficiently specific to permit discovery that relates to the transportation of jailhouse informants by law enforcement personnel. In response, the movant maintains that he is entitled to discovery because the potentially discoverable evidence could support his theory that a constitutional violation occurred.

Given the movant's admission, the court finds that the first discovery request is untimely. August 8, 2011 is well after March 1, 2011, and the movant offers no explanation for why he was unable to submit an earlier discovery request. In addition, the court finds that discovery should not be permitted with respect to the transportation of jailhouse informants by law enforcement personnel. The government declares that special security personnel transported each of the witnesses in the WitSec program separately and kept those witnesses separate from other witnesses in the WitSec program and other inmates. Further, the government acknowledges that Dennis Putzier and Terry Bregar now state that jailhouse informants discussed the movant's case and their testimony, and it assumes that some of the jailhouse informants who testified against the movant were transported together. Nevertheless, the government correctly points out that, in light of

the record, it does not necessarily follow that the jailhouse informants colluded to conform their testimony or that a *Brady*[1] violation occurred.

The recent statements offered by Dennis Putzier and Terry Bregar are contradicted or significantly called into question by their earlier testimony and/or the testimony of other witnesses. Although he believes discovery is warranted in light of the recent statements made by Dennis Putzier and Terry Bregar, the movant offers no details in support of their conclusory or speculative statements. The movant offers nothing concerning: (1) how many of the jailhouse informants or which particular jailhouse informants colluded with each other; (2) where and when Dennis Putzier and Terry Bregar allegedly overheard conversations between jailhouse informants; (3) what Dennis Putzier and Terry Bregar heard the jailhouse informants say; (4) what stories were made up by jailhouse informants or what testimony by a specific jailhouse informant is false; (5) what the jailhouse informants said they would receive or hoped to receive in exchange for their testimony; and/or (6) what testimony of a particular jailhouse informant is consistent with what either Dennis Putzier or Terry Bregar overheard. The movant's reliance on the vague and unsupported statements made by Dennis Putzier and Terry Bregar does not establish good cause, especially considering that neither Dennis Putzier nor Terry Bregar make specific allegations concerning whether the jailhouse informants colluded just on their testimony regarding the movant's escape plans, just on their testimony regarding the movant's role in the murders or all of their testimony.

Moreover, "[m]ere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review." *Strickler v. Greene*, 527 U.S. 263, 286 (1999). Here, discovery is not appropriate because the movant is clearly speculating that the government knew about the collusion among jailhouse informants. It is not alleged that Dennis Putzier, Terry Bregar or anyone else

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

ever stated that law enforcement personnel who transported jailhouse informants overheard them discussing the movant's case or their testimony, and nothing in the record supports the movant's conjecture about what the government knew. Because the movant's constitutional claim is not specific and is unsupported by viable evidence that is part of the existing record, discovery is not warranted with respect to the transportation of jailhouse informants.

Similarly, to the extent that the movant desires to conduct discovery with respect to the transportation of jailhouse informants by law enforcement personnel because it could establish that counsel failed to conduct a proper investigation or failed to properly impeach the jailhouse informants, the court finds that granting such request is not warranted. It is clear that Dennis Putzier and Terry Bregar changed their testimony after the court entered judgment against the movant, and, prior to the date that they changed their testimony, the movant fails to point to anything that suggests witnesses were attempting to coordinate their testimony regarding the movant's escape, their testimony regarding the murders or their testimony about any other subject. And, the testimony that the jury heard during the movant's trial clearly reveals that some jailhouse informants knew only about the movant's escape plans, some jailhouse informants knew only about the murders and some jailhouse informants did not offer testimony that corroborated the testimony of other jailhouse informants. Assuming the recent statements made by Dennis Putzier and Terry Bregar are in fact true, one could reasonably expect the record to reveal more consistent testimony and more witnesses who could offer details concerning the movant's escape plans and the murders, especially if the main goal was to provide the government substantial assistance in exchange for a sentence reduction or some other favorable treatment. Finally, the court notes that nothing prevents the movant from asking counsel questions about what steps, if any, they took because they were concerned that jailhouse informants colluded to conform their testimony.

Based on the foregoing, the movant's request for discovery pertaining to the transportation of jailhouse informants by law enforcement personnel shall be denied.

## B. Request for Discovery Pertaining to the Security Measures that Law Enforcement Personnel Put in Place

Regarding his second discovery request, the movant asks that the court grant him access to information, which includes but is not limited to internal memoranda and documents, and the ability to interview personnel from the United States Marshals Service about the security measures that they put in place during his trial because he believes the information and interviews will support his assertion in Claim 18 that extremely strict security measures prejudiced the jury. In its response, the government claims that this discovery request is also untimely. Additionally, the government claims that the movant did not establish a prima facie case for relief, the movant's discovery request is overly broad and the movant's discovery request is unduly burdensome because it undermines the government's compelling interests in preserving the confidential security measures that are implemented in high-risk trials. To support its claims, the government, in part, relies on the affidavit of United States Deputy Marshal Duane Walhof. The movant counters that: (1) a factual dispute clearly exists, and, consequently, there is a need to further develop the facts through discovery; (2) his request is not overly broad because he is only seeking information that pertains to the security measures that the United States Marshals Service undertook concerning operations at the courthouse; and (3) any burden that is implicated by disclosing the security measures that the United States Marshals Service undertook must be balanced against the movant's right to not be executed in violation of the Constitution.

Given the movant's admission, the court finds that the second discovery request is untimely. August 8, 2011 is well after March 1, 2011, and the movant offers no explanation for why he was unable to submit an earlier discovery request. In addition, the court finds that discovery should not be permitted with respect to the security measures that law enforcement personnel put in place at the courthouse. It is uncontested that the

factual assertions that are advanced by the movant are premised on "information and belief." The movant, however, does not offer any support for his factual allegations. The movant's allegation that onerous and unnecessary security measures could have had a profound impact on the jury is unfounded. Apart from the movant's speculation, there is no support for the proposition that the United States Marshals Service ushered jurors into the courthouse under very tight security, which included snipers and other armed law enforcement personnel. In addition, there is nothing in the record that indicates any security measures had any impact on the jury. The movant's empty or hollow affirmations do not establish good cause. Because the movant elected to rely on bald allegations, there is no need to permit discovery with respect to the security measures that law enforcement personnel put in place.

Moreover, the movant's beliefs about the security measures that law enforcement personnel put in place are significantly undermined by: (1) the court's prior findings that relate to the security measures that law enforcement personnel put in place with respect to the movant and (2) the affidavit of Duane Walhof. The parties previously litigated the security measures that law enforcement personnel put in place at the courthouse. Before trial, counsel had a full and fair opportunity to raise numerous concerns about those security measures. And, in its August 9, 2005 memorandum opinion and order regarding the motion for judgment of acquittal or new trial, the court (1) relied on its prior order dated July 21, 2004, (2) reaffirmed its previous conclusions and rulings that addressed the need for security measures and the possibility of prejudice from the use of such security measures, (3) made additional findings with respect to whether the movant suffered any prejudice as a result of the security measures that law enforcement personnel implemented at the courthouse and (4) concluded that the security measures did not generate any unfair

prejudice. Those findings are still valid and there is no basis to conclude that altering them is appropriate.[2]

With regard to the sworn statements of Duane Walhof, they are consistent with the court's previous findings. Duane Walhof, in pertinent part, averred as follows: (1) the movant was transported to and from the courthouse before and after the jurors were transported to and from the courthouse; (2) the security measures that were in place while the movant was transported into and out of the courthouse were not visible to the jurors when they arrived and departed from the courthouse; (3) United States Deputy Marshals were armed while transporting the jurors from remote locations to the courthouse, but they only wore sidearms that were concealed by their plain clothes; (4) United States Deputy Marshals never displayed any long guns when they transported the jurors; and (5) neither snipers nor counter-snipers were used or deployed during the movant's trial in 2004. Duane Walhof's averments clearly bolster the conclusion that there is no evidence that lends support to the movant's allegation that the jurors were exposed to tight security or that the security measures had a profound influence on them. The record indicates that the jury was not exposed to the security measures that law enforcement personnel put in place

---

[2] The court notes that the Eighth Circuit Court of Appeals conclusively resolved on direct appeal claims that relate to the security measures the movant faced, *see United States v. Honken*, 541 F.3d 1146, 1162-64 (8th Cir. 2008), and the court is unable to disturb the appellate court's findings, *see United States v. Wiley*, 245 F.3d 750, 751 (8th Cir. 2001) ("Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." (citing *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000) (per curiam))); *Dall v. United States*, 957 F.2d 571, 572-73 (8th Cir. 1992) (concluding that claims already addressed on direct appeal could not be raised); *United States v. Kraemer*, 810 F.2d 173, 177 (8th Cir. 1987) (concluding that movant "cannot raise the same issues . . . that have been decided on direct appeal or in a new trial motion"); *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated . . . ."); *Butler v. United States*, 340 F.2d 63, 64 (8th Cir. 1965) (concluding movant is not entitled to another review of his question).

with respect to the movant and the United States Marshals Service did not subject the jury to excessive security measures when it transported jurors to and from the courthouse.

In sum, the movant points to nothing that suggests there is even a slight chance that he will be entitled to relief. He fails to rely on any person from the court, from law enforcement agencies, from the defense team, from the general public or from the press that can substantiate or lend support to his allegations. The movant's supposition is not enough. Because this discovery request is essentially a request to engage in a fishing expedition, it shall be denied.

### C. *Request for Discovery Pertaining to Jailhouse Informants*

Concerning his third discovery request, the movant makes clear that he wants the court to afford him the opportunity to interview Joseph McGee, Robert McNeese, Ronald McIntosh, Fred Tokars, Steve Vest, Anthony Altimus and Dean Donaldson because he believes their interviews will support his assertion in Claim 3 that they colluded to conform their testimony. The movant contends that he has established a significant pattern of unconstitutional nondisclosure by the government and, therefore, he should be allowed to interview additional witnesses to advance his claims. The government resists on several grounds. It contends that the court should be reluctant to allow the disclosure of witnesses who are in the WitSec program because it would significantly undermine the goals of such program. In addition, it contends that the court should only allow access to witnesses who are in the WitSec program after the movant establishes a prima facie case for relief and demonstrates that the discovery he seeks will support his claim. The government maintains that the witnesses who have already been interviewed by the movant fail to show that a *Brady* violation occurred, and, even if they did show such a violation, the movant's vague allegations do not require the court to grant discovery requests that are indefinite and encompass all seven witnesses who are in the WitSec program. In his reply, the movant reiterates that discovery should be permitted with respect to all seven witnesses who are

in the WitSec program because the evidence available to him at this point shows a pattern of overreaching on the part of the government.

The court disagrees with the movant. The court finds that the movant's reasons for requesting the opportunity to interview all seven witnesses who are in the WitSec program are nebulous. The movant does not identify any particular witness who is in the WitSec program that is able to help him advance his claims. The movant's request is solely based on the hope that one or more of the seven witnesses will provide him with something useful. It is clear that the movant is asking to interview all of the witnesses who are in the WitSec program because the allegations that he is relying upon lack specificity and are conclusory. Given the statements that Dennis Putzier and Terry Bregar made, it is impossible to determine whether the other witnesses that have already been interviewed by the movant or the witnesses in the WitSec Program are the jailhouse informants that Dennis Putzier and Terry Bregar claim colluded with each other. Because the movant is really asking the court to allow him to conduct a fishing expedition, the court declines to allow him to interview the witnesses who are in the WitSec program. Accordingly, the court shall deny this request.

Although it will not permit the movant to interview all of the witnesses who is in the WitSec program merely to determine if they could provide information that might support his claims, the court finds that it should permit the movant an additional opportunity to request appropriate discovery that pertains to the witnesses who are in the WitSec program because requesting appropriate discovery is especially important in cases that involve the penalty of death. If information about a particular witness who is in the WitSec program exists and it is relevant to the movant's allegation that jailhouse informants colluded, the movant may move the court to allow him to conduct discovery. In accordance with Rule 6 of the Rules Governing Section 2255 Proceedings, the movant is encouraged to make specific requests and to provide reasons for his requests. In the event that an appropriate discovery request is received, the court will conduct proceedings

in camera.  As part of those proceedings, the court may elect to interview or examine the witness by phone, opt to have the movant propose questions and then have the government obtain answers that are in writing and under oath or pick an alternative that is suggested by the parties.  *See Harris*, 394 U.S. at 290 (concluding that, where "a prima facie case for relief [is present, a court] may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require'"); Rule 7 of the Rules Governing Section 2255 Proceedings (addressing expansion of the record).

### D.  Request for Discovery Pertaining to Jurors

With regard to his fourth discovery request, the movant seeks the opportunity to interview jurors because he believes their interviews will support his assertion in: (1) Claim 11 that the presiding judge's emotional display in front of the jury during the presentation of the victim impact evidence had a prejudicial extraneous influence on the jury; (2) Claim 17 that the inclusion of Juror 523 who had been exposed to outside influences had a prejudicial extraneous influence on the jury; and (3) Claim 18 that the extremely strict security measures had a prejudicial extraneous influence on the jury.  In its resistance, the government contends that discovery should not be granted until a prima facie case for relief is established, juror testimony is inadmissible under Federal Rule of Evidence 606(b) and, before the jurors' privacy is invaded, the movant should demonstrate that the information he is seeking is not available from other sources, such as defense counsel or court personnel.  In his reply, the movant does not explicitly contest the government's characterization of his claims as ineffective assistance of counsel claims, contends that the discovery standard that is advanced by the government is not correct and states that the government's other objections do not require the court to deny his discovery request.

### 1. Prima facie case for relief and Federal Rule of Evidence 606(b)

The movant argues that the discovery standard used by the government is too restrictive and argues that a more liberal approach should be applied. The movant is mistaken. Discovery under Rule 6 of the Rules Governing Section 2255 Proceedings is more limited than the movant suggests.

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence, and death penalty cases are no exception. When the process of direct review—which, if a federal question is involved, includes the right to petition [the Supreme] Court for a writ of certiorari—comes to an end, a presumption of finality and legality attaches to the conviction and sentence. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.

*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983); *see also Harris*, 394 U.S. at 297 (stating that a right to inquire into any matter which is relevant to the subject matter involved in the pending action is neither necessary nor appropriate in the context of a habeas corpus proceeding). The government correctly asserts that the movant must establish a prima facie case for relief. The applicable standard, as set forth in greater detail above, requires the movant to set forth "specific allegations" that give the court "reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that [relief is warranted]." *Harris*, 394 U.S. at 300.

Apart from having to establish a prima facie case for relief to obtain discovery under Rule 6 of the Rules Governing Section 2255 Proceedings, the movant must comply with significant restrictions that prevent him from obtaining the testimony of jurors. Federal Rule of Evidence 606(b) limits what a juror may be asked by protecting the components of deliberation, which includes arguments, statements, discussions, mental operations and emotional reactions, votes and any other feature of the process. It provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.

Fed. R. Evid. 606(b). The parties agree that Federal Rule of Evidence 606(b) does not permit an inquiry into the mental operations and the emotional reactions of jurors in arriving at a given result. *See Honken*, 541 F.3d at 1168 ("Rule 606(b) prohibits a juror from testifying at a post-verdict hearing as to whether extraneous information or an outside influence affected that juror's ability to be impartial."); *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir. 1981) (concluding that, because Rule 606(b) insulates from inquiry the manner in which the jury reached its verdict, "any examination into the effect . . . extrinsic material had on the mental processes of the jurors" is prohibited); *United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976) (limiting inquiry to "overt acts which are susceptible to the knowledge of other jurors" (quoting *Gafford v. Warden*, 434 F.2d 318, 320 (10th Cir. 1970))). They also agree that Federal Rule of Evidence 606(b) does not foreclose testimony by jurors as to prejudicial extraneous information or outside influences that are injected into or brought to bear upon the deliberative process. *See Honken*, 541 F.3d at 1168-69 (making clear that Rule 606(b) permits testimony about prejudicial extraneous information and outside influences but prohibits a juror from testifying as to the effect of anything upon the jury's deliberations); *United States v. Roach*, 164 F.3d 403, 413 (8th Cir. 1998) (explaining limits of Rule 606(b)); *United States v. Caldwell*, 83 F.3d 954, 956 (8th Cir. 1996) (stating that Rule 606(b)'s exceptions allow testimony regarding extraneous prejudicial information and outside influences brought to bear on the jury).

"'Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outsider persons.'" *United States v. Vig*, 167 F.3d 443, 450 (8th Cir. 1999) (quoting *Bassler*, 651 F.2d at 602).

So, under Federal Rule of Evidence 606(b), any testimony of the jurors in this case would be limited to whether extraneous information or outside influences existed. Given the constraints of Federal Rule of Evidence 606(b), the movant's claims for relief and the existing record, it is difficult to discern why the movant desires to ask jurors: (1) whether they witnessed during the victim impact portion of the penalty phase the emotional response of the presiding judge, namely, emotion in the presiding judge's voice; (2) whether they perceived heightened security measures in and around the courthouse or when being transported to and from the courthouse; and (3) whether they experienced the ordeal concerning Juror 523. The movant acknowledges that he is only able to ask jurors whether extraneous information or outside influences existed, but he does not account for the extensive record that already exists regarding his claims. Nevertheless, the court will address, in turn, each of the movant's three allegations.

### 2. *Allegations pertaining to the jurors*

#### a. *Claim 11—emotional display*

In Claim 11, the movant contends that counsel provided ineffective assistance because they failed to object on the ground that the emotionally charged victim impact evidence rendered the penalty phase fundamentally unfair. He contends that the government presented victim impact evidence that falls outside constitutional parameters. *See Payne v. Tennessee*, 501 U.S. 808, 817-25 (1991) (deciding that, although it is proper for a jury to consider victim impact evidence when it is assessing the penalty, a capital defendant is constitutionally entitled to a reliable sentencing determination that is based on the jurors' reasoned response to evidence that is not "so unduly prejudicial that it renders the trial fundamentally unfair"). In support of his contention that he is entitled to relief

as a result of counsels' ineffective assistance, the movant relies on the presiding judge's emotional response to the victim impact evidence. He argues that such display of emotion clearly qualifies as extraneous information because it is neither admissible evidence nor a proper subject that could be considered by the jury.

With respect to the presiding judge's emotional display in front of the jury during the presentation of the victim impact evidence, it appears that the movant wants to interview the jurors for two reasons. First, he believes that, if any juror admits that the victim impact evidence greatly affected the presiding judge, such admission will establish that a violation of his constitutional right to due process occurred. Stated differently, he believes that the testimony of the jurors will confirm that the government presented victim impact evidence that was too emotional and highly charged because even the presiding judge displayed emotion. Second, the movant thinks that, if a juror acknowledges that the presiding judge became emotional during the presentation of the victim impact evidence, there is a good chance that the jury's sentencing decision came under undue or improper influence. He contends that, because a judge has considerable influence over a jury, it is likely that the presiding judge's emotional reaction intimated to the jury what sentencing decision to make. *See United States v. Dellinger*, 472 F.2d 340, 386 (7th Cir. 1972) (explaining that a trial judge cannot say or do anything that is likely to remain firmly lodged in the memory of the jury and to excite a prejudice that would preclude a fair and dispassionate consideration of the evidence); *see also United States v. Wisecarver*, 598 F.3d 982, 989 (8th Cir. 2010) (explaining that the influence of the trial judge on the jury is necessarily and properly of great weight).

Neither of the movant's reasons compel the court to authorize discovery. Concerning the first reason, there is no need to have jurors confirm that the presiding judge displayed some emotion because he already admitted that there was some emotion in his voice. Moreover, it is unnecessary and inappropriate to ask jurors whether the presiding judge became emotional during the presentation of the victim impact evidence

because the answer to that question will have no bearing on the court's analysis. To resolve the movant's claim for relief in his favor, the court must determine that: (1) the victim impact evidence was so unduly prejudicial that it rendered the trial fundamentally unfair; (2) counsels' failure to object to the emotionally charged victim impact evidence fell below an objective standard of reasonableness; and (3) if counsel objected and the court sustained the objection, at least one juror would have voted not to impose the death penalty. Regarding the first prong—whether the victim impact evidence that the government presented violated the movant's right to due process, the existing record is sufficiently developed for the court to make a determination. A thorough review of the record that pertains to the victim impact portion of the movant's penalty phase will allow the court to make relevant findings regarding the scope, the amount and the length of the victim impact evidence. As to the second and third prongs, no admissible testimony from the jurors will assist the court when it resolves whether a Sixth Amendment violation occurred.

With respect to the second reason, the court finds that it is also insufficient. It is undoubtedly true that judges who are performing in their official capacities should exercise great care when saying or doing anything in an effort to avoid the possibility that their words or actions may mislead the jury. The law, however, does not require judges to refrain from expressing any emotion. *See, e.g.*, *Jones v. Luebbers*, 359 F.3d 1005, 1013 (8th Cir. 2004) (explaining that judges are not held to a "superhuman standard that would allow no expressions of emotion"); *United States v. Weiss*, 491 F.2d 460, 468 (2d Cir. 1974) ("[Although] expected to possess more than the average amount of self-restraint, [judges] are still only human."). And, the proceedings as a whole clearly demonstrate that the movant "received a trial in a courtroom where the proper 'atmosphere of austerity' was present." *United States v. Roell*, 487 F.2d 395, 403 (8th Cir. 1973) (quoting *Offutt v. United States*, 348 U.S. 11, 17 (1954)); *see also United States v. Bordeaux*, 570 F.3d 1041, 1046 (8th Cir. 2009) (reviewing record as a whole and concluding that the trial's

overall fairness was not impacted by the court's passing comment). Apart from alleging that the judge displayed emotion during the presentation of the victim impact evidence, the movant does not suggest that the presiding judge said or did anything else that compromised the "atmosphere of austerity" that is "consonant with a fair trial." *Offutt*, 348 U.S. at 17. And, he points to no evidence that any juror saw the presiding judge react to the victim impact evidence or heard the emotion in his voice.

Moreover, the court notes that jurors are presumed to have followed all of the court's instructions. *See United States v. Paul*, 217 F.3d 989, 997 (8th Cir. 2000) (citing *Jones v. United States*, 527 U.S. 373, 394 (1999)). Before, during and at the end of trial, the court gave the jurors written and oral instructions. Those instructions included, among others, the following preliminary and final "merits phase" instructions:

### Preliminary Instruction No. 3—Duty of Jurors

. . . .

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, based solely on the evidence, your common sense, and the law as I give it to you. Do not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be. Similarly, do not conclude from any ruling or other comment I may make that I have any opinions on how you should decide the case.

. . . .

### Final Instruction No. 1—Introduction

Members of the jury, the written instructions I gave you at the beginning of the trial and the oral instructions I gave you during the trial remain in effect. I will now give you some additional instructions.

The instructions I am about to give you, as well as the preliminary instructions given to you at the beginning of the trial, are in writing and will be available to you in the jury room. *All* instructions, whenever given and whether in writing or not, must be followed. This is true even though some of

the instructions I gave you at the beginning of the trial are not repeated here.

**Final Instruction No. 18—Duty During Deliberations**

. . . .

. . . [Y]our verdict must be based solely on the evidence and on the law in these instructions. *The verdict against the defendant on each offense, whether not guilty or guilty, must be unanimous.* Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

. . . .

*See* criminal docket no. 512. They also included, among others, the following preliminary and final "penalty phase" instructions:

**Preliminary "Penalty Phase" Instruction No. 5—Duty of Jurors**

The task of determining what sentence to impose in this case is an extremely important one. Therefore, please keep an open mind until you have heard all of the evidence in this "penalty phase," considered it carefully, and discussed it with your fellow jurors. Remember, whether or not the circumstances in this case call for a death sentence on any of the counts in question is *entirely* yours. You must not take anything I said or did during the "merits phase" of the trial or anything I may say or do during this "penalty phase" as indicating what I think of the evidence or what I think the sentence on any of the counts in question should be.

. . . .

**Final "Penalty Phase" Instruction No. 1—Introduction**

Members of the jury, the written instructions I gave you at the beginning of the "penalty phase" and the oral instructions I gave you during the "penalty phase" remain in effect. I will now give you some additional "penalty phase" instructions.

The instructions I am about to give you, as well as the preliminary instructions given to you at the beginning of the "penalty phase," are in writing and will be available to you in the jury room. *All* instructions, whenever given and whether in writing or not, must be followed. This is true even though some of the instructions I gave you at the beginning of the "penalty phase" are not repeated here.

. . . .

**Final "Penalty Phase" Instruction No. 10—Concluding Instruction**

You have heard emotional testimony presented by both sides in the "penalty phase." Such testimony may have caused emotional responses from persons present in the courtroom, including spectators, participants in the trial, or other court personnel. However, you must not be swayed by the emotional responses of others to the evidence. Let me remind you again that nothing that I have said in these instructions—and nothing that I have said or done during either the "merits phase" or the "penalty phase" of the trial—has been said or done to suggest to you what I think your decision should be. I have no opinion about what your decision should be. That decision is your exclusive responsibility.

. . . .

*See* criminal docket no. 524. And, after Juror 523 made the court aware of the comments made by her boss, the court gave the jurors supplemental instructions, which included:

**Supplemental Instruction F—Deliberations**

Juror 523 has now been replaced with an alternate juror, Juror 425. You should not speculate on the reasons that Juror 523 has been replaced. You are instructed to begin anew your "penalty phase" deliberations and to provide Juror 425 a full opportunity to participate in your discussions and determinations.

You must now begin anew your deliberations to determine whether imposition of a sentence of death is called for in this case, or whether the defendant should instead be sentenced to life imprisonment without the possibility of

20

release, for commission of the crimes in **Counts 8 through 17**. Beginning your deliberations "anew" means that you cannot consider any opinion previously expressed by any juror, including Juror 523, but must instead begin your discussions and deliberations concerning the "penalty phase" from the very beginning.

The decision of what sentence to impose is left exclusively to you, the jury. I must remind you again that your decisions must be based only on evidence that was presented during the "merits phase" and "penalty phase" in this case, not on any information or opinions that you may have heard from any other source. Therefore, you must disregard the opinions of anyone, except for your fellow jurors, about the appropriate penalty in this case. Also, nothing that I have said in any of my instructions—and nothing that I have said or done during either the "merits phase" or the "penalty phase" of the trial—has been said or done to suggest to you what I think your decision should be. I have no opinion about what your decision should be.

. . . .

*See* criminal docket no. 534-2. In addition, the court repeatedly instructed the jurors as to what they could properly consider to be evidence when deciding whether the movant committed each and every element of a charged offense and when deciding what penalty to impose. Contrary to the movant's claims, nothing in the record gives credence to his allegation that jurors disregarded the court's directives by taking into account the emotional responses of others and, consequently, failed to fairly and dispassionately consider the evidence when deciding what sentence to impose. *Cf. Bordeaux*, 570 F.3d at 1046-47 (finding that district court's directive to the jurors that "they were the sole judges of the evidence and that they should not take anything the court said or did as indicating its beliefs regarding the evidence or what the verdict should be" was sufficient to cure any potential prejudice from its statement).

### b. Claim 17—Juror 523

Concerning the inclusion of Juror 523, the movant argues that the comments made to Juror 523 by her boss clearly constitute an outside influence and he should be permitted to fully and fairly litigate the matter because errors occurred during the previously conducted hearing. In his underlying claim for relief, the movant avers that counsel ineffectively litigated the issues that surround Juror 523. He contends that, although they were on notice and actively litigated related issues, counsel should have argued that Juror 523's willingness to mislead the court suggests that she was a biased juror and calls into question the validity of her guilty verdicts during the "merits phase."

The existing record regarding Juror 523 is already extensive. It includes transcripts, supplemental instructions, the parties' pleadings, the court's findings and conclusions and the Eighth Circuit Court of Appeals' review and determinations on direct appeal. *See, e.g.*, criminal docket nos. 529-1, 530-1, 532-1, 533-1, 534-2, 578, 593-1, 603, 624-9, 624-10, 624-11, 634, 642, 664, 695 and 773. Being mindful of the constraints that are imposed by Federal Rule of Evidence 606(b), the previous findings that are included in the August 9, 2005 memorandum opinion and order regarding the motion for judgment of acquittal or new trial and the opinion issued by the Eighth Circuit Court of Appeals, *see Honken*, 541 F.3d at 1164-69, the court concludes that the movant is not entitled to further interview the jurors.[3] The testimony already elicited from the jurors is sufficient to resolve the movant's ineffective assistance of counsel claim. Each juror performed his or her public duty, and, in light of the record, it is appropriate to protect jurors from any annoyance and/or embarrassment that may arise from again having to answer questions nearly seven years after first being questioned by the court. *See Tanner v. United States*,

---

[3] Again, the court notes that, to the extent that either the court or the Eighth Circuit Court of Appeals conclusively decided issues or claims, the movant is unable to relitigate them. *See, e.g.*, *Kraemer*, 810 F.2d at 177 (concluding that movant "cannot raise the same issues . . . that have been decided on direct appeal or in a new trial motion").

483 U.S. 107, 117-27 (1987) (discussing the "long-recognized and very substantial concerns [that] support the protection of jury deliberations from intrusive inquiry"); *McDonald v. Pless*, 238 U.S. 264, 267-69 (1915) (explaining that there are public values that are promoted by excluding the testimony of jurors). This is especially true because the record establishes that there is no reason to doubt that the jury based its decision solely on the evidence presented at trial and there is no reason to believe the jury ignored the court's instructions. *See Gianakos v. United States*, 560 F.3d 817, 822-23 (8th Cir. 2009).

### c. Claim 18—security measures

Regarding the extremely strict security measures, the movant alleges that the security measures put in place by the court and the United States Marshals Service are plainly extraneous information and had the potential to represent to the jury that the court and/or law enforcement personnel determined the movant to be very dangerous. In his underlying claim for relief, the movant asserts that counsel failed to properly object to the security measures that law enforcement personnel put in place during the movant's trial. The record, however, clearly establishes that counsel did litigate pre-trial and post-trial the security measures that the court implemented during the movant's trial. In addition, appellate counsel also raised whether the security measures that the court adopted in the courtroom prejudiced the movant's defense. *See Honken*, 541 F.3d at 1162-64. Contrary to the movant's assertion, the Eighth Circuit Court of Appeals' finding that "Honken presented no evidence any member of the jury was ever aware Honken was shackled and bolted to the floor during trial," *id*. at 1163, is not an implicit invitation to ask jurors whether they observed anything so prejudicial as to pose an unacceptable threat to his right to a fair trial. Moreover, as the court previously discussed, there is no evidence that jurors ever experienced any extremely prejudicial security measures. The movant's uncorroborated guess or belief as to what security measures may have existed is not enough for the court to authorize discovery.

### d. Summary of Claim 11, 17 and 18

Here, the movant maintains that counsel provided ineffective assistance in light of the presiding judge's display of emotion, the willingness of Juror 523 to mislead the court and the extreme security measures. It, however, is well established that, in order to establish a claim of ineffective assistance of counsel, the movant must show that counsels' performance fell below an objective standard of reasonable competence and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984); *Gianakos*, 560 F.3d at 821. Additionally, assuming jurors were exposed to factual matters not in evidence, an objective test is used to assess whether the extraneous information would likely affect a typical juror when the government must overcome a presumption of prejudice. *See United States v. Eizember*, 485 F.3d 400, 404 (8th Cir. 2007); *United States v. Hall*, 85 F.3d 367, 371-72 (8th Cir. 1996); *United States v. Swinton*, 75 F.3d 374, 382 (8th Cir. 1996); *United States v. Blumeyer*, 62 F.3d 1013, 1016-17 (8th Cir. 1995); *see also Honken*, 541 F.3d at 1167 (assuming prejudice and addressing whether the intrusion affected the jury's deliberations and thereby its verdict); *United States v. Tucker*, 137 F.3d 1016, 1031-33 (8th Cir. 1998) (reviewing objectively "whether 'there is any reasonable chance that the jury would have been deadlocked or would have reached a different verdict but for the fact that *even one reasonable juror* was exposed to prejudicial extraneous matter'" (quoting *United States v. Hall*, 116 F.3d 1253, 1255 (8th Cir. 1997))). Considering such law, the court is unable to conclude that testimony regarding the presiding judge's emotions, the actions of Juror 523 or the security measures present during the trial will assist it. The court is able to presume prejudice and look to whether the record proves beyond a reasonable doubt that the inappropriate activity did not harm the movant. *See Hall*, 85 F.3d at 371 (listing relevant considerations, including "whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether the government's case outweighed any possible prejudice caused by the extrinsic evidence").

Therefore, having reviewed the claims for relief and the existing record, the court concludes that the movant's request to conduct discovery with respect to the jurors in the hopes of establishing a claim is "neither necessary nor appropriate." *Harris*, 394 U.S. at 297. The movant does not offer any support for his allegation that the presiding judge's emotional display in front of the jury during the presentation of the victim impact evidence, the inclusion of Juror 523 who had been exposed to outside influences and the extremely strict security measures had a prejudicial extraneous influence on the jury. And, the movant fails to provide any legitimate reasons as to why the requested discovery is necessary to further his ineffective assistance of counsel claims. The movant's bald assertions with regard to the prejudicial extraneous influences on the jury do not provide a sufficient basis to authorize broad-ranging discovery. The movant's unsupported assumption about what influenced the jurors does not establish the good cause that is necessary to permit discovery in this collateral proceeding. Because good cause is lacking, the court shall deny the movant's request to interview the jurors.

## IV. CONCLUSION

After reviewing the record, the court concludes that discovery is not warranted under Rule 6 of the Rules Governing Section 2255 Proceedings. Several of the movant's discovery requests are untimely, and the court is not persuaded that the movant has met the applicable standard, that is, established the requisite "good cause," with respect to any of his discovery requests. It is appropriate to deny the movant's discovery requests because he failed to provide specific evidence that the requested discovery would support his claims and only offered generalized statements regarding the possibility that discoverable material may exist. Accordingly, the court shall deny the motion for discovery.

**IT IS THEREFORE ORDERED**:

1)      The motion for discovery (civil docket no. 32) is denied.

2)      Consistent with the foregoing, the movant is granted leave to request discovery that relates to the jailhouse informants who are in the WitSec program. Such request must be filed by no later than October 10, 2011.

**DATED** this 28th day of September, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA