IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DUSTIN LEE HONKEN, )
)
       Petitioner/Defendant, )
)
vs. )
)
UNITED STATES OF AMERICA, )
)
       Respondent/Plaintiff. )

No. 10-CV-03074-LRR
No. 01-CR-3047-MWB

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S RENEWED MOTION FOR ACCESS TO WITSEC WITNESSES

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PETITIONER'S HABEAS CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I.     INTRODUCTION

Petitioner renews his request to obtain access to witnesses who were part of the WitSec program who, he speculates, would be able to provide evidence of *Brady* violations. (Doc. 46). Petitioner concedes he has "nothing" to rely on to support a claim these witnesses would have such evidence other than what he describes as a "pattern of information" provided by Terry Bregar, Dennis Putzier, and Anthony Johnson. (Doc. 46, p. 3). Petitioner argues this "pattern" is sufficient to demonstrate the WitSec

1

witnesses were likely: 1) "pressured by government agents into providing testimony against Petitioner"; 2) "told they would face criminal charges if they did not provide information"; 3) "offered lenience from these uncharged acts in exchange for their testimony"; 4) to have provided "testimony, in whole or in part, [that was] incorrect due to this influence"; 5) to have provided "testimony, in whole or in part, [that] "came as a result of information that was initially provided to them by law enforcement agents," and; 6) "in the presence of other government informant witnesses at some point during the long course of proceedings against Petitioner and colluded with them to provide consistent testimony in an attempt to secure benefits from the government." (Doc. 46, at 3).

Petitioner has failed to show good cause entitling him to discovery. Rule 6(a) of the Rules Governing Section 2255 Proceedings. First, Petitioner's discovery request exceeds the scope of the Court's invitation to Petitioner to renew his discovery request, which was limited to his claim inmate witnesses colluded to provide false testimony. Second, Petitioner has proffered no new evidence identifying any WitSec inmate who allegedly colluded with another inmate witness to provide false testimony. Third, WitSec inmates were transported and housed in a manner that made it impossible for them to collude with each other, or with other inmate witnesses. Finally, even assuming the Court would consider Petitioner's request for discovery regarding WitSec witnesses beyond the collusion claim, the so-called "pattern of evidence" Petitioner relies upon to allege a *Brady* violation does not carry forward to the WitSec witnesses.

2

## II. PETITIONER'S HABEAS CLAIMS

### A. Pressure and Promises Claims

Petitioner claims Terry Bregar has recently alleged he was pressured to say Petitioner confessed to the murders (but he did not give in to the alleged pressure) (Doc. 19, at 33). Bregar did not claim he was threatened with prosecution for any crime. Petitioner claims Putzier has recently stated he was "threatened with a life sentence if he did not testify in the manner the Government wished," and was told that if he did not testify that the Petitioner confessed to the murders, the government would charge Putzier with conspiracy to commit murder. Putzier also claims he lied to the grand jury. (Doc. 19, at 33-34). Petitioner claims Anthony Johnson recently stated he was threatened with criminal charges if he did not cooperate, after which Johnson got a lawyer who "negotiated a deal with the government where [Mr. Johnson] would not get new charges if [he] told them what [he] knew about Petitioner." Johnson also claims there was a written agreement to this effect that was never turned over to Petitioner. (Doc. 19, at 34-35).

### B. Collusion Claims

Petitioner claims Bregar and Putzier "have confirmed" that many of the jailhouse informant witnesses were transported to Sioux City together or were held together. (Doc. 19, at 37). Petitioner claims these witnesses assert that, while being transported, they "would discuss the case and their testimony" and "make up stories" based on the conversations. (Id., at 38). He claims they also talked about the benefits they all hoped to get from testifying, and "this information was never turned over to the defense or was denied by the witnesses during their testimony." (Id.). Neither Bregar nor Putzier

3

identify the other informant witnesses they claim were transported together and colluded regarding their testimony.

## III.     THE FACTS

### A.     Pressure and Promises

Bregar testified before the grand jury and at Petitioner's 1998 sentencing hearing, in exchange for which he received a reduction in his sentence. (Tr. 1385, 1418-19). By the time of Petitioner's trial, Bregar had only 13 months and two weeks remaining of his federal sentence for conspiracy to distribute methamphetamine. (Tr. 1384-85). Bregar testified he did not think he was going to get any further benefit for testifying at trial. (Tr. 1387). Bregar testified at trial that he was approached by law enforcement officers in 1997 about Petitioner. (Tr. 1417). He said he heard out the agents, who said he might be able to get a reduction in his sentence for cooperating. (Tr. 1417-18). Bregar said the agents made no promises or guarantees. (Tr. 1418). Bregar said nothing about being pressured or threatened. Bregar testified at trial about his stay in the Woodbury County Jail with Honken, and that Honken told him about his escape plans. (Tr. 1383-1405).

At Petitioner's 1997 sentencing hearing, Putzier testified he entered into a plea agreement with the United States to plead guilty to aiding and abetting an escape attempt by Petitioner from the Woodbury County Jail. (Sent. Tr. 584-85). He further testified he was concerned about being charged with another crime, including conspiracy to commit murder. (Sent. Tr. 587, 596). Trial counsel had a copy of this testimony and Alfredo Parrish, one of Petitioner's trial attorneys, also represented Petitioner at the sentencing hearing.

4

At trial, Dennis Putzier testified he was awaiting trial on an assault charge and a driving-under-the-influence charge, and that no one on behalf of the government promised him that anything would be done regarding those charges in exchange for his testimony. (Tr. 1276). He testified he had numerous past convictions, but never received any benefit from the government in relation to those convictions in exchange for his cooperation. (Tr. 1277-78). Putzier testified he pled guilty to attempting to escape from prison and helping Honken escape from the Woodbury County Jail, and that his sentence on that charge was reduced for his cooperation against Honken. (Tr. 1278-79). He testified he had no expectation of getting any benefits for testifying at Honken's trial. (Tr. 1280).

Anthony Johnson was approached by law enforcement in connection with Petitioner's sentencing hearing in 1998. Johnson was provided with a proffer letter, pursuant to which he provided the information about Petitioner. Johnson's interview report, which was included in the government's discovery file provided to Petitioner's counsel, references the proffer letter in the second sentence. (Exhibit C). There was no other written agreement with Johnson. He was not prosecuted by the federal government, but there was also no written agreement that he couldn't be prosecuted by the federal government.

At trial, Johnson testified he pled guilty to his federal drug charges without a plea agreement. (Tr. 2088-89). Johnson testified he served his five-and-a-half-year sentence without receiving any reduction for cooperation. (Tr. 2089-90). He testified he got no benefit "whatsoever" for testifying against Petitioner. (Tr. 2090). At the time of trial, Johnson was not in custody and was employed. (Tr. 2087). He testified he was

5

not getting anything for testifying at the trial. (Tr. 2090). Johnson testified he did have an agreement that his involvement in purchasing a methamphetamine recipe from Petitioner for $1,000 while they were incarcerated in the Woodbury County Jail would not be used against him. (Tr. 2000-2001).

B.    Collusion

The WitSec prisoner witnesses were transported from the facilities where they were incarcerated to the courthouse and back to their facilities in a segregated manner. Each was transported separate from other WitSec witnesses, and separate from all other non-WitSec witnesses, while in transit and during their time in Sioux City. Each was kept apart from all other witnesses before and after their testimony. Exhibit A (Affidavit from Duane Walhoff).

## IV.    ARGUMENT

A.    Petitioner's Request Exceeds the Scope of the Court's Order

Petitioner's renewed motion is premised upon a portion of this Court's order denying his discovery request.

> Given the statements that Dennis Putzier and Terry Bregar made, it is impossible to determine whether the other witnesses that have already been interviewed by the movant or the witnesses in the WitSec program are the jailhouse informants that Dennis Putzier and Terry Bregar claim colluded with each other.

> Although it will not permit the movant to interview all of the witnesses who is in the WitSec program merely to determine if they could provide information that might support his claims, the court finds that it should permit the movant an additional opportunity to request appropriate discovery that pertains to witnesses who are in the WitSec program because requesting appropriate discovery is especially important in cases that involve the death penalty. If information about a particular witness who is in the WitSec program exists and it is relevant to the movant's allegation that jailhouse informants colluded, the movant may move the

6

court to allow him to conduct discovery.

(Doc. 41, at 11).

Petitioner has overlooked that the Court's invitation to renew its discovery request was limited to the collusion allegation. Instead, he also renews his request to conduct discovery on his claim the government pressured or promised leniency to witnesses. The Court should deny his discovery request to the extent it renews his discovery request on the alleged pressure and promises claim as the Court has already definitively denied that request and did not offer Petitioner an opportunity to renew the discovery request on that claim.

B.    Petitioner Has Not Proffered Any New Evidence on the Collusion Claim

The Court's order conditioned any renewal of Petitioner's motion for discovery on the collusion claims upon Petitioner producing some "information about a particular witness who is in the WitSec program . . . relevant to the movant's allegation that jailhouse informants colluded . . .." (Doc. 41, at 11). For example, if Putzier and Bregar could or would actually identify a WitSec witness as one of the inmates involved in the collusion, then it would justify discovery with regard to that WitSec prisoner. In other words, the government read the Court's order as requiring Petitioner to come back with something more than the "allegations that he is relying on [which] lack specificity and are conclusory." (Doc. 41, at 11). Petitioner has failed to do so. He alleges no new facts or information linking any WitSec inmate with the collusion allegation.

C.    WitSec Inmate Witnesses Could Not Have Colluded With Others

In contrast to Petitioner's failure to produce evidence linking a WitSec witness to the collusion allegations made by Bregar and Putzier, the government has provided the

7

Court with an affidavit from Duane Walhoff establishing it was impossible for a WitSec witness to have colluded with any other witness. From the time the WitSec witnesses were removed from their place of incarceration until the time they were returned to that location, they were kept segregated from every other witness. Each WitSec witness is transported alone with no other witness, moved to and from the courthouse separate from all other witnesses, and housed separate from all other witnesses. The very nature of the WitSec program is premised on keeping these inmates safe, in part by restricting access to them. Thus, not only has Petitioner failed to come forward with any new alleged facts connecting a WitSec witness to the collusion allegations, the government has established that it could not have occurred.

D. Petitioner's "Pattern of Evidence" Argument Regarding the Pressure and Promises Claim Does Not Extend to WitSec Witnesses

Though the Court's invitation to renew the discovery request was limited to the collusion allegation, Petitioner's renewed discovery request exceeds that limitation. Petitioner asserts the "pattern of evidence" regarding pressure on or promises to other inmate witnesses is sufficient to permit him access to the WitSec prisoners on the theory the pattern continued regarding those witnesses. The Court should deny the motion because this is nothing more than the same fishing expedition this Court previously denied. Again, Petitioner has alleged no new information to justify such discovery and the Court can and should deny his renewed discovery request on that ground alone. Regardless, Petitioner's argument that the "pattern of evidence" extends to cover the WitSec inmates fails on its merits.

Petitioner's claim there was a pattern of *Brady* violations involving the Woodbury

8

County Jail witnesses does not itself survive scrutiny. Petitioner claims part of the pattern is that the inmates were told they would face criminal charges if they did not provide information. (Doc. 46, at 3). While Putzier and Johnson make this allegation, however, Bregar does not. Petitioner claims the pattern includes an offer of leniency if the witness provided information (Id.), but neither Bregar nor Putzier stated they were promised leniency. Petitioner claims part of the pattern is the witnesses provided testimony that was "inaccurate due to this influence" (Id.), but neither Bregar nor Johnson allege they provided false information at trial. Finally, Petitioner claims part of the pattern is that witnesses provided testimony that was based in whole or in part "as a result of information that was initially provided to them by law enforcement agents." (Id.). Not one of the three witnesses, Bregar, Putzier, and Johnson, stated that law enforcement officers provided them information, or that their testimony was based in whole or in part on such information. Thus, there is not much of a "pattern" among the allegations made by Bregar, Putzier, and Johnson.

In any event, to the extent there is any pattern with regard to the allegations made by Bregar, Putzier, and Johnson, the pattern cannot be expanded to cover the WitSec witnesses. Bregar, Putzier, and Johnson had in common their incarceration in the Woodbury County Jail in 1997-1998. In contrast, the WitSec prisoners were all inmates from federal prisons where Honken was incarcerated after 1998.[1] The two who claim they were threatened with charges, Putzier and Johnson, had exposure to

---

[1] The one exception is Robert McNeese, who's obtained the maps from Angela Johnson which showed the location of the bodies. McNeese was never incarcerated with Honken, either in jail or in prison.

9

criminal charges based on their conduct in the jail – Putzier helped Honken attempt to escape and Johnson purchased a methamphetamine recipe. In contrast, Petitioner has cited to nothing in the record to establish any of the WitSec prisoners had exposure to criminal charges that would have subjected them to alleged pressure or promises of leniency by the government. The agents who interviewed Bregar, Putzier and Johnson and allegedly engaged in pressuring and promising were Special Agents Mark Hein and Lori Lewis. (Exhibit B – Bregar Declaration; Exhibit C – interview report of Anthony Johnson; and Exhibit D – Unsigned Putzier declaration produced by Petitioner). In contrast, of the seven alleged WitSec witnesses identified by Petitioner (Doc. 32, at 5-6), only one (Dean Donaldson) was interviewed by Special Agents Hein and Lewis. Donaldson was one of the Woodbury County inmates and is not and was not in the WitSec program. The rest of the inmates were interviewed by a combination of other agents including Special Agents Bill Basler, John Graham, and Dave Mizell.

Thus, even if there is a "pattern of evidence" regarding the government's contact with Woodbury County Jail witnesses, there is no factual basis from which to expand that pattern to the government's dealings with WitSec witnesses.

10

## V. CONCLUSION

For the reasons set forth above, the United States respectfully requests the Court deny Petitioner's Renewed Motion for Access to Witnesses.

Respectfully submitted,

STEPHANIE M. ROSE
United States Attorney

By: s/ C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
401 First Street SE, Suite 400
Cedar Rapids, Iowa 52401
319-363-6333
(Fax 319-363-1990)
cj.williams@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on October 13, 2011.

UNITED STATES ATTORNEY

BY: s/ Lkb

COPIES TO: Counsel of Record

11