# DIVISION OF NARCOTICS ENFORCEMENT
# DEPARTMENT OF PUBLIC SAFETY

**EXHIBIT #**
**INTERVIEW**

**CASE 9605382**
**TYPED BY: jpg**

**NAME:** **Dennis Putizer**
**ADDRESS:** **Newton Correctional Facility**

**SEX:** **Male**
**RACE:** **Caucasian**
**BIRTH DATE:** **05-12-1965**
**SSN:** **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**
**EMPLOYMENT:**
**OCCUPATION:**
**PHONE (RES):**
    **(BUS):**

**DATE:** **July 25, 2011**
**TIME:** **12:20 PM**
**PLACE:** **Newton Correctional Facility**

**BY:** **SAC John Graham (DNE)**
**SA Lori Lewis (DNE)**

**DATE DICTATED: July 28, 2011**

**PURPOSE:** **Obtain information regarding Dustin Honken's 2255 motion.**

SYNOPSIS

1. Prior to the interview, Newton Correctional Facility staff informed SAC Graham and SA Lewis that PUTIZER had been placed into the facility's infirmary due to mental stress. Furthermore, PUTIZER was being released from the infirmary upon the agent's arrival.

2. SAC Graham informed PUTIZER that he and SA Lewis were meeting with him regarding DUSTIN HONKEN'S 2255 motion filed in the Northern District of Iowa. Specifically, agents wanted to ask PUTIZER questions concerning his interview conducted by HONKEN'S current counsel. PUTIZER was asked if he could proceed with the interview in light of his recent release from the infirmary. PUTIZER stated he could.

3. Regarding PUTIZER being threatened by government agents, PUTIZER stated he was told he could receive a life sentence for aiding and abetting to escape custody to commit murder. PUTIZER clarified that was the sentence he could have faced if he wouldn't have cooperated with the government. PUTIZER added the agents talked in general about what charges PUTIZER could have been charged with concerning the attempted escape from Woodbury County jail. PUTIZER recalled he was interviewed by AUSA Steve Colloton and DEA SA Mark Hein. PUTIZER believed he was interviewed after TERRY DAVENPORT was interviewed.

4. PUTIZER advised he didn't know HONKEN killed kids; only that HONKEN told him he had killed people. PUTIZER stated what he testified to at grand jury, HONKEN'S drug sentencing and HONKEN'S murder trial was the truth. PUTIZER went on to say that HONKEN may not have told him the truth but what PUTIZER testified to was what PUTIZER believed to be the truth.

5. Regarding being interviewed by new attorneys, PUTIZER stated two different attorneys interviewed him. The first was a man who said he represented HONKEN. He met with this attorney in December 2010 while PUTIZER was housed in Woodbury County jail.

6. The interview was a question/answer type format, with the attorney writing PUTIZER'S answers down. PUTIZER stated he was watching the attorney write his answers. Some of them weren't accurate and PUTIZER advised the attorney some of what he was writing was not correct. The attorney informed PUTIZER it was close to what he said.

7. Once the attorney left he later returned, wanting to meet with PUTIZER again. PUTIZER advised he refused to meet with the attorney.

8. A few weeks later, the second interview took place. A woman who said she represented ANGELA JOHNSON met with PUTIZER in the Woodbury County jail. Again this interview was in a question/answer format.

9. At or about 12:40 PM, the interview concluded. PUTIZER informed he was getting tired due to just being released from lockdown. PUTIZER was not provided anything during the interview by SAC Graham or SA Lewis.

2