County of Fremont)   SS. Affidavit of Wayne A. Byerly
State of Colorado)

I, Wayne A. Byerly, do hereby make the following statement under penalty of perjury:

1.  I am a prisoner incarcerated in the Federal Penitentiary in Florence, Colorado;

2.  I arrived at this federal institution on or about the month of June 2000;

3.  I am currently housed in BB Unit cell #223.

4.  Almost immediately upon my arrival here at USP Florence I was introduced to another inmate named Dustin L. Honken #06951-029.  We since that date have been close associates throughout my stay here at USP Florence, Colorado.

5.  In or around the month of August 2000, I moved in with inmate Steve Vest.  We remained cellmates until he moved out in or about the month of January 2001.

6.  During the time-frame I was cellmates with Mr. Vest, he became "very" interested in my associate Dustin Honken and his pending investigation into alleged disappearances of witnesses.

7.  Even though Mr. Vest had been here at USP Florence for a number of years, he knew of Mr. Honken but did not associate with him until I infuenced Mr. Honken to do so.  Mr. Honken did then to some degree associate with Mr. Vest but mainly in my presence because as Mr. Honken stated, "I do not trust Steve (Vest) because of things I have heard about him and I have enough people making things up about me to get "deals" without any other people joining in".

8.  I told Mr. Honken that I felt (at that time) that Mr. Vest was a "good dude" and that he need not fear of Mr. Vest making up things about him to get a "deal" because he had four life sentences.

9.  Mr. Honken frequently gave me newspaper articles printed about himself and Angela Johnson in Iowa newspapers about his case. Even though he told me to keep them to myself, I let my then cellmate Steve Vest read them also.  At this point I thought that Mr. Vests interest in Mr. Honken's case was purely because of similarities between Mr. Vests case and Mr. Honken's case.

10.  As time went on, Mr. Vest became "too" interested in Mr. Honken's case and I became suspicios of his motives.  I questioned him about his motives in a casual way and he said that he felt that we could get a "deal" from what we knew from the newspaper articles and our association with him even though Mr.Honken made no such admissions of guilt to any of us.  Vest said that all we had to do was say Mr. Honken made admissions and that he knew it had already worked for at least one other cellmate that he had.

11. Mr. Vest during the time that I was his cellmate and close associate spoke of many different scenarios of escape and his fanaticism of getting out of prison. But, until he started talking about making "deals" on people such as Mr. Honken I had no problem with him. After Mr. Vest told me of his idea of making a "deal" on Mr. Honken I then told him that that was going too far and I wanted no part of it. I then told him that he should find another cell to move to. Mr. Vest told me to please keep our conversation confidential and that he was not really going to do it anyway and that he was only "testing" me to see if I would frame somebody out of the desire to get out of prison. I told him that I did not like to be "tested" and that he was out of line in doing so. I furthur told him that he was "lucky" that I did not tell others of his so called "test" he was giving me. Soon after Mr. Vest moved in with another inmate and I put the "test" out of my mind. However, I remained suspicious of Mr. Vest but kept my suspicions to myself not wanting to get involved in something that I had no proof of.

12. Soon after Mr. Vest moved out, Mr. Honken came out of the SHU (hole) and moved back into his old cell BB #221 in which Mr. Vest had moved. Mr. Vest and Mr. Honken were cellmates only a short time before Mr. Vest left. During that time Mr. Honken repeatedly asked me if Mr. Vest was acting suspiciously. I told Mr. Honken that I really did not know. Mr. Honken also became concerned that his legal papers looked as if to have been rifled through. Mr. Honken told me that he did not trust Mr. Vest and that he never had. Mr. Honken told me that he would soon be looking for another cell to move to. Soon after that Mr. Vest left.

13. At no time did Mr. Honken ever admit to any wrongdoing in regards to the missing witnesses in the articles that I and Mr. Vest read. Mr. Honken always maintained his innocense and stated that the government and lying prisoners were trying to frame him. Mr. Honken and I were very close associates, much closer that he and Mr. Vest, and if he were to tell anyone something in confidence it would have been myself and not Mr. Vest.

I, Wayne A. Byerly, swear, declare, and affirm, under penalty of perjury, that I am the person in the above Affidavit and the information contained therein is True and Correct. Pursuant to Title 28 U.S.C. § 1746; Title 18 § 1621.

Dated: March 28, 2001
March 28, 2001

Signed: _____
Wayne A. Byerly
#21902-008

CASE MANAGER   _____
AUTHORIZED BY THE ACT OF JULY 7, 1955,
TO ADMINISTER OATHS (18 USC 4004)