# 73

## Declaration of Alfredo Parrish, Esq.
## Pursuant to 28 U.S.C. § 1746

1.    My name is Alfredo Parrish. I am an attorney admitted to practice in the State of Iowa, and my office is located in Des Moines. In 2004, I was one of three lawyers who represented Dustin Honken in his federal capital murder trial. I have been asked by Mr. Honken's current counsel to provide information with regard to specific aspects of our representation.

2.    I had previously represented Mr. Honken in a federal drug case that commenced in 1996. In the murder trial, Leon Spies was also appointed to represent Mr. Honken, and Charlie Rogers was later appointed as learned capital counsel. Neither Mr. Spies nor I had extensive experience defending capital cases prior to our assignment to this case, so we deferred to Mr. Rogers' expertise on capital cases and jurisprudence.

3.    I was primarily responsible for the guilt phase. Mr. Spies was primarily responsible for preparing the penalty phase case, and Mr. Rogers advised on all matters. We often talked by phone and in-person. While we made many decisions jointly, I spent most of my time preparing for the guilt phase of the trial and the significant number of jailhouse witnesses that the Government called.

4.    I have been provided a copy of the Section 2255 Motion that has been submitted by Mr. Honken's current counsel. My understanding is that claims one and two are based upon findings made by the court in Mr. Honken's prior drug case, in which I represented him. I recall that we raised a double jeopardy challenge in the murder case regarding the successive prosecution of Mr. Honken for drug conspiracy. I do not recall considering challenging the use of Judge Bennett's specific findings in the

murder trial or considering using any of his findings in Mr. Honken's defense. Nor do I recall any discussions that we had among counsel in this regard. It just never came up. There was no tactical or strategic reason for not raising these issues. Mr. Rogers took the lead on researching and drafting the double jeopardy motion. If he had suggested making the challenges that current counsel have now raised, I believe we would have done so.

5.      I also do not believe we ever had any discussions regarding objecting on double jeopardy grounds to Mr. Honken's multiplicitous convictions for drug conspiracy, murder and continuing criminal enterprise murder. I believe Angela Johnson raised that issue in the Eighth Circuit, which vacated her drug conspiracy convictions. I do not recall that we had any tactical or strategic reason for objecting on this basis.

6.      I understand that Mr. Honken is raising a claim that asserts that we failed to conduct an adequate investigation into mitigation for the penalty phase. At Mr. Rogers' suggestion, we retained Lisa Rickert as a mitigation specialist. Mr. Spies worked most closely with her, although I spoke with her on a number of occasions.

7.      Ms. Rickert did a background investigation and generated a life history report for us. Based on the investigation she did, she recommended that we hire a mental health professional to explore the psychological impact of that upbringing. Mr. Rogers, Mr. Spies and I discussed Ms. Rickert's recommendation, along with other strategic concerns, and decided not to use a mental health expert to evaluate Mr. Honken. One of our concerns was that having Mr. Honken evaluated would open the door to an evaluation by a government expert who would find Mr. Honken to have anti-

social personality disorder.  Primarily, based on this concern, we decided not to retain an expert or have Mr. Honken evaluated.

8.      I do not recall any significant discussion of the fact that we could have had Mr. Honken evaluated for the mitigation phase of the trial and would not have been required to disclose that fact to the government unless we decided to use the results of the evaluation.  We never had any discussion of firewall provisions that would have apparently allowed us not to disclose the results of an evaluation to the trial prosecutors unless and until a capital-eligible verdict was returned in the guilt phase.  If I had considered these confidentially protections, I would likely have given further consideration to retaining a mental health expert to conduct an evaluation.

9.      I understand from current counsel that they have had Mr. Honken evaluated by mental health experts.  I have had an opportunity to consider the opinions of their experts.  Had these opinions been available at the time of trial, I believe that we would have strongly considered using them.

10.     This declaration provides a summary of my views on the issues discussed, but it is not inclusive of all information that I possess on these topics.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief, subject to the penalty of perjury, pursuant to 28 U.S.C. § 1746.

Date: _June 6, 2011_

Alfredo Parrish, Esq.