# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| ——————————————— | : | |
| UNITED STATES OF AMERICA, | : | No. CV10 – 3074 – LRR |
| | : | |
| Respondent, | : | **CAPITAL 2255 PROCEEDINGS** |
| | : | |
| -v- | : | HON. LINDA R. READE |
| | : | Chief U.S.D.J. |
| DUSTIN LEE HONKEN, | : | |
| | : | |
| Petitioner. | : | |
| ——————————————— | : | |

### PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59

Leigh Skipper
Chief Federal Defender
By: Shawn Nolan
Assistant Chief, Capital Habeas Unit
Timothy Kane
Aren Adjoian
Ayanna Williams
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Petitioner, Dustin Lee Honken

Dated:     November 1, 2013
               Philadelphia, PA

## INTRODUCTION

Petitioner Dustin Lee Honken, through undersigned counsel, hereby moves the Court, pursuant to FED. R. CIV. P. 59(e), to alter or amend its judgment entered October 4, 2013, denying Mr. Honken's motion for post-conviction relief pursuant to 28 U.S.C. § 2255.

This Motion addresses only certain allegations of error that demonstrate manifest error of law or fact, and does not address all allegations of error or all claims. By not addressing any issue in this Motion, Petitioner does not intend to waive any argument or claim.

Stylistic conventions and citations in this Motion conform to those employed in Petitioner's Memorandum of Law and Supplemented § 2255 Motion. (*See* Dkt. No. 19 at x-xii; Dkt. No. 29 at v.) Transcripts of the evidentiary hearing are cited as "2255 Tr." followed by a page citation. Transcripts of the trial proceedings are cited as "Tr." followed by a page citation. Notations to the exhibits introduced at the evidentiary hearing are cited as "Pet. Ex." or "Gov. Ex." followed by the number or letter.

i

# CONTENTS

INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Claim Six**

Petitioner's Rights under the Fifth, Sixth and Eighth Amendments Were Violated When Trial Counsel Ineffectively Failed to Object to the Admission of Hearsay Evidence Regarding the Quantity of Drugs Alleged in the Superceding Indictment; Appellate Counsel Ineffectively Failed to Raise and Litigate this Issue. . . . . . . . . . . . . . . . . . . . . . . . . . .

**Claim Nine**

Petitioner Was Denied His Sixth Amendment Right to Effective Assistance of Counsel at His Capital Sentencing.. . . . . . . . . . . . . . . . . . . . . .

**Claim Eleven**

Victim Impact Evidence Presented to the Jury Was Received in Violation of the Fifth, Sixth and Eighth Amendments.. . . . . . . . . . . . . . . . .

**Claim Twelve**

The Government Violated Petitioner's Rights under the Eighth Amendment and the Due Process Clause by Presenting Inconsistent Arguments at His Trial and His Co-Defendant's Trial; Counsel Were Ineffective under the Sixth Amendment for Failing to Discover and Present Readily Available Evidence that Was Presented by the Government at His Co-Defendant's Trial.. . . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Mr. Honken filed his motion for post-conviction relief pursuant to 28 U.S.C. § 2255 on December 14, 2010. ( Dkt. 1). After briefing by both parties and taking evidence through depositions and an evidentiary hearing held October 31, 2011 to November 3, 2011, this Court issued an opinion order denying Mr. Honken's 2255 motion on October 4, 2013 (hereinafter, "Opinion"). (Dkt. 99). On that same date, this Court also entered its judgment entry. (Dkt. 100). Petitioner now files his motion to alter and amend pursuant to FED. R. CIV. P. 59(e).

## STANDARD OF REVIEW

Through his Rule 59(e) motion, Petitioner asks the Court to reconsider its denial of relief and denial of a certificate of appealability ("COA") on several issues.

Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations omitted). The Court has broad discretion in deciding whether to grant a motion under Rule 59(e). *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). Reconsideration should be allowed under Rule 59(e) to correct clear error of law or fact, *id.*, or to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Relief is appropriate under Rule 59(e) for the reasons set forth herein.

The relief Petitioner seeks also includes reconsideration of the Court's denial of a certificate of appealability ("COA") on all claims.  A COA is appropriate when "the issues are debatable among jurists of reason; ... a court could resolve the issues [in a different manner]; or ... the questions are adequate to deserve encouragement to proceed further."  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal quotations omitted, bracketed material in original); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  A COA "does *not* require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337.  "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."  *Id.* at 338.  "In a capital case, the nature of the penalty is a proper consideration" to weigh in favor granting a COA.  *Barefoot*, 463 U.S. at 893.

## CLAIM SIX

**PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH AND EIGHTH AMENDMENTS WERE VIOLATED WHEN TRIAL COUNSEL INEFFECTIVELY FAILED TO OBJECT TO THE ADMISSION OF HEARSAY EVIDENCE REGARDING THE QUANTITY OF DRUGS ALLEGED IN THE SUPERCEDING INDICTMENT; APPELLATE COUNSEL INEFFECTIVELY FAILED TO RAISE AND LITIGATE THIS ISSUE.**

In this claim, Petitioner argued that his Confrontation Clause right, along with his rights to the effective assistance of trial and appellate counsel, were violated when the Government introduced the report of a crime laboratory technician regarding drug quantity via the hearsay testimony of a police officer who did not himself conduct any testing. *See Crawford v. Washington*, 541 U.S. 36 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-12 (2009); *United States v. Le*, 272 F.3d 530, 531-32 (8th Cir. 2001).

The Court denied Petitioner's claim, ruling that neither trial nor appellate counsel was ineffective for failing to object and/or to litigate this issue because they had a reasonable strategic basis for doing so and because Petitioner was not prejudiced by their conduct. Opinion at 133-36. The Court did not at any point, however, rule on whether the Government violated Petitioner's Confrontation Clause rights via the use of this un-cross-examinable hearsay testimony to

establish an element of several of his criminal charges.[1]

The Court should reconsider its ruling, and in so doing rule upon the underlying Confrontation Clause claim. Before deciding whether an attorney can reasonably decide not to object to a fundamental constitutional violation, it is necessary to decide whether the violation, in fact, took place. Petitioner submits that the Government's tactic represented a clear violation of the Confrontation Clause. Counsel's conduct should not be so easily justified, merely because other (substantially less reliable) evidence came out at trial. This is particularly the case given that the Government did not even cite to this other evidence in its closing argument in support of this element of the crimes.

Should the Court decline to grant relief upon reconsideration, it should, at a minimum, grant a certificate of appealability on this claim. Petitioner submits that it is clear that his Confrontation Clause rights were violated. As such, he has made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2). *See Miller-El*, 537 U.S. at 335-36).

---

[1]While the Court noted that other evidence came out at trial regarding various quantities of methamphetamine, it remains the case that this crime laboratory evidence was the *only* evidence relied upon by the prosecution in closing argument in support of this element. Tr., 3285-86. This is not surprising, given that the remaining evidence of drug distribution came in the form of testimony (often from cooperating witnesses who received benefits to testify) and did not involve law enforcement seizure of any actual drugs.

4

## CLAIM NINE

### PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT HIS CAPITAL SENTENCING.

In denying this claim, the Court made clear errors of law and fact. The Court's errors undermined its analysis of both prongs of the *Strickland* standard. Properly analyzed, Petitioner's claim establishes a reasonable probability of a different outcome if trial counsel had collected and presented the available mitigating evidence.

### A. Deficient Performance

One overarching error affected the Court's entire deficient performance analysis: the Court repeatedly speculated about strategic decisions that trial counsel "could have" made under the circumstances of this case, and then determined that such *potential* strategic bases for counsel's actions defeat Petitioner's allegations of deficient performance. The Court's analysis was clearly erroneous because it is improper to speculate about plausible or potential strategic decisions where, as here, the record demonstrates that counsel's actions were not based on such decisions.

Under *Strickland*, a court is not at liberty to defer to strategic bases for counsel's actions where no such reason actually existed at the time of trial. *See Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003) ("the strategic decision [invoked] to justify counsel's limited pursuit of mitigating evidence resembles more a post hoc rationalization of counsel's conduct than an accurate description of their

5

deliberations prior to sentencing"); *Kimmelman v. Morrison*, 477 U.S. 365, 386-87 (1986) (under *Strickland*, courts cannot use hindsight to supply a strategy for counsel); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) ("Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer.") *quoted approvingly in Williams v. Roper*, 695 F.3d 825, 846 (8th Cir. 2012); *Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003) (rejecting government effort to "assume facts not in the record in order to manufacture a reasonable strategic decision"); *Griffin v. Warden*, 970 F.2d 1355, 1358 (4th Cir. 1992) ("courts should not conjure up tactical decisions an attorney could have made, but plainly did not").

Here, counsel was on notice of red flags indicating that a mental health evaluation of Petitioner was important and necessary, and counsel was likewise on notice of red flags indicating that Petitioner had endured a turbulent and damaging upbringing. *See, e.g.*, 2255 Tr. at 243 (Rogers); *id*. at 549-50 (Spies); Rickert Dep. at 10-12, 16, 44. Under such circumstances, capital defense counsel have a Sixth Amendment duty to obtain appropriate evaluations and to reasonably consult with the proper experts. *E.g., Rompilla v. Beard*, 545 U.S. 374, 391 n.8 (2005) (counsel "could not reasonably have ignored mitigation evidence or red flags" indicating the need for more testing or evaluation); *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) (mitigating evidence "of emotional disturbance is typically introduced by defendants in mitigation").

6

Counsel testified that their failure to obtain appropriate mental health evaluations was based on a concern that a rebuttal evaluation by a government expert could have found Petitioner to have anti-social personality disorder. *E.g.*, 2255 Tr. at 263 (Rogers); *id.* at 549 (Spies). This was an unreasonable basis for counsel's decision not to investigate further, however, because counsel would not have been required to disclose any expert report until they decided to call the expert, and, in any event, not until after the merits phase of the trial. Counsel admitted their error. *See id.* at 243 (Rogers); *see also id.* at 549, 594 (Spies).

Against this backdrop, the Court found that trial counsel was not ineffective by relying on various speculations as to reasonable strategic decisions that effective counsel "could have" made. For example, the Court speculated that (all emphases added):

- "Experienced lawyers such as trial counsel *could have* properly decided not to pursue mental health evidence." Opinion at 223.

- Trial counsel "*could have*" relied on Dr. Greenstein's report to conclude that Petitioner did not have a mental illness. *Id*. at 223-24.

- Trial counsel "*could have*" relied on Ms. Rickert's reports to conclude that Petitioner was raised in "a stable and nurturing environment." *Id.* at 224.

- Trial counsel "*could have*" relied on Dr. Gelbort's report to determine that Petitioner did not have significant cognitive impairments. *Id.*

- "[T]rial counsel *could have* reasonably concluded that there were not substantial circumstances about movant's mental

7

makeup and background that were mitigating." *Id.*

- "[A] competent attorney *could have and most likely would have* chosen the path taken by trial counsel." *Id.* at 234.

- "[T]rial counsel *could have* reasonably feared that other damning evidence might be discovered by the government and that their own expert would diagnose the movant as a sociopath." *Id*. at 236.

- "[E]xperienced attorneys such as trial counsel *would have been able* to discern the nature of the mitigation case that might be feasible" in light of Dr. Greenstein's prior mental health report. *Id.* at 239.

- "Although trial counsel could not recall a specific reason as to why they did not consult a toxicologist, the record indicates that they had good reason to doubt that they would find any helpful mitigating evidence on this point." *Id.* at 241.

- "A reasonable attorney *could have* concluded that it was likely the movant would be convicted and that, instead of trying to show how the movant's mental impairments and mental state affected and explained why he committed murder, it was worth trying to emphasize that the movant had many good qualities and was loved by his family." *Id*. at 245.

As these extensive quotes make clear, the Court's speculations undermined its analysis of each aspect of Petitioner's allegations of deficient performance. The Court's speculation likewise ran afoul of the rule that a reviewing court "should [] not construct strategic defenses which counsel does not offer." *Harris*, 894 F.2d at 878. The Court clearly erred.

Moreover, the Court erred in conflating a fully informed decision not *to*

*present* mitigating evidence with a decision not *to collect* mitigating evidence. Thus, the Court upheld counsel's decision not to present mental health evidence and cited *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006), for the proposition that "anticipation of the government's response is a proper basis for choosing not to present mental health evidence." Opinion at 234. This reasoning, however, misconstrues Petitioner's core allegations, because here counsel never obtained the available mental health evaluations of Petitioner and thus could not weigh the benefits of what they could present against a potential government response. Such a decision is not subject to deference because it was not informed by thorough investigation. *E.g., Wiggins*, 539 U.S. at 523 (*Strickland* analysis focuses "on whether the investigation supporting counsel's decision ... was itself reasonable."); *see also Blystone v. Horn*, 664 F.3d 397, 420 (3d Cir. 2011) ("[I]f counsel has failed to conduct a reasonable investigation to *prepare* for sentencing, then he cannot possibly be said to have made a reasonable investigation as to what to *present* at sentencing.") (emphasis in original).

The Court's analysis was clearly erroneous in several additional respects. First, the Court repeatedly misconstrued mitigating evidence as evidence that "justified or excused the crimes that [Petitioner] had been found guilty of committing." Opinion at 245; *see also id.* at 264 (characterizing the proffered mitigation as evidence seeking "to justify his conduct"); *id.* at 267 (characterizing

9

penalty phase issues as seeking "to excuse what he did").  Relatedly, the Court

upheld limitations on counsel's investigation where evidence did not have a causal

nexus to the crimes.  *See, e.g., id.* at 277.  This reasoning is clearly erroneous

under *Skipper v. South Carolina*, 476 U.S. 1 (1986), and *Tennard v. Dretke*, 542

U.S. 274 (2004).  Mitigating evidence includes *any* evidence that "might serve as a

basis for a sentence less than death."  *Skipper*, 476 U.S. at 4.  The Eighth

Amendment therefore "cannot countenance the suggestion that [mental health]

evidence is not relevant mitigating evidence ... unless the defendant also

establishes a nexus to the crime."  *Tennard*, 542 U.S. at 287; *accord McKoy v.*

*North Carolina*, 494 U.S. 433, 441 (1990) (recognizing that "evidence was

undoubtedly relevant to mitigation even if it did not excuse the defendant's

conduct").  The Court thus erred in finding trial counsel's investigation adequate

on such grounds.

Second, the Court asserted that there was "evidence that the movant ... was

actively involved with his defense."  Opinion at 223.  To the extent the Court has

relied on a purported decision by Petitioner not to pursue mental health or other

mitigating evidence, there is simply no support for the notion that Petitioner made

such a decision or that trial counsel relied on it.  *Cf.* Parrish Decl., Pet. Ex. 73 at ¶

9 (trial counsel would have strongly considered presenting mental health evidence

if they had it before trial); Spies Decl., Pet. Ex. 74 at ¶ 13 (same).  In any event, it

10

is counsel's duty, not Petitioner's, to thoroughly investigate a case and to determine the course of a penalty phase presentation. Thus, regardless of Petitioner's involvement in his defense, trial counsel's duty to investigate persists. *See, e.g., Rompilla*, 545 U.S. at 381 ("Rompilla's own contributions to any mitigation case were minimal. Counsel found him uninterested in helping. ... There were times when Rompilla was even actively obstructive by sending counsel off on false leads."); *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (counsel's duty to conduct mitigation investigation is not obviated where defendant is "fatalistic or uncooperative"); *Blystone*, 664 F.3d at 422 ("Counsel cannot avoid the consequences of his inadequate preparation simply by virtue of the serendipitous occurrence that ... his client stuck with the decision not to go forward with a mitigation case."); *Hamblin v. Mitchell*, 354 F.3d 482, 492 (6th Cir. 2003) (counsel cannot fulfill Sixth Amendment duty without first knowing what mitigating circumstances exist).

Third, the Court criticized the credibility of, and findings made by, Dr. Dudley. The Court stated: "Rather than remain objective, Dr. Richard G. Dudley, Jr. admittedly reviewed collateral material in an effort to anticipate what the movant's difficulties might be." Opinion at 256. Although the Court found such review of collateral material to undermine Dr. Dudley's opinions, this approach was entirely proper and reliable, as other courts have recognized. *E.g., Rompilla*,

11

545 U.S. at 391 (finding that collateral sources of information about petitioner's upbringing "would have destroyed the benign conception of Rompilla's upbringing and mental capacity [that] defense counsel had formed from talking with Rompilla himself and some of his family members, and from the reports of the mental health experts."); *Mason v. State*, 489 So.2d 734, 737 (Fla. 1986) ("Commentators have pointed out the problems involved in basing psychiatric evaluations exclusively, or almost exclusively, on clinical interviews with the subject involved. ... [A]n interview should be complemented by a review of independent data.") (citation omitted). Dr. Dudley therefore did not "ignor[e] what the movant expressed," Opinion at 257, but rather based his opinions on a wide range of sources and evidence. The Court erred in its understanding of the duty and role of forensic mental health experts.

In a similar vein, the Court found Petitioner's mental health experts unpersuasive because they purportedly "refused to explore the movant's state of mind just prior to committing the murders, while committing the murders and after committing the murders." *Id*. at 264. Conversely, the Court stated that, "[a]ccording to Dr. Christopher L. Grote's credible account, the movant . . . refused to answer any questions about the murders because the statute of limitations on the murders had not run in Iowa and he had been advised not to speak about the murders." *Id.* at 274. The Court plainly overlooked its own role

12

in setting the limits of the mental health evaluations. The Court ordered that Dr. Grote's "evaluation is limited to the issues that are raised in ground nine of the movant's motion to vacate, set aside or correct sentence."). Order, Dkt. No. 35 at 2. Ground nine of the Petition plainly addressed only the penalty phase and did not raise guilt phase issues regarding Petitioner's *mens rea*. *See* Dkt. No. 19 at 81 *et seq*. Neither Petitioner, his counsel, nor his experts can properly be faulted for abiding the parameters that the Court itself set.

### B.    Prejudice

Like its analysis of the deficient performance prong, the Court's analysis of prejudice was undermined by several fundamental errors. Most prominently, the Court, after recounting in detail the crimes of which Petitioner was convicted, concluded that "there was very little that could be done to nullify the overwhelming aggravating evidence." Opinion at 277. This sentiment pervaded the Court's prejudice analysis. *See id.* at 274-79.

The Court's reasoning, however, overlooks the fact that highly aggravated cases frequently result in life sentences. *See, e.g., United States v. Moussaoui*, No. 01-CR-455 (E.D. Va.) (life verdict returned against conspirator in 9/11 attacks); *State v. Nichols (Brian)*, No. 05SC29988 (Ga. Super., Fulton Cnty.) (life verdict for defendant convicted of murdering a judge, a court reporter, a sheriff's deputy, and a federal agent and taking a fifth victim hostage during an escape from an

13

Atlanta courthouse); *United States v. Nichols (Terry)*, No. 96-cr-68 (D. Colo.) (Timothy McVeigh's codefendant sentenced to life for his involvement in the Oklahoma City bombing that killed 168 people); *State v. Matthews*, No. M2005-00843-CCA-R3-CD, 2008 WL 2662450 (Tenn. Ct. Crim. App. 2008) (life verdicts for execution-style murders of four people); *Burkett v. State*, 172 S.W.3d 250 (Tex.App. 2005) (life sentences for killing three people, two of whom were kidnapped and taken to a secluded area where they were shot to death with a shotgun); *State v. Lingle*, 140 S.W.3d 178 (Mo. App. 2004) (life verdicts for the murders of a pregnant mother and her three children); *State v. Perry*, 822 A.2d 434 (Md. App. 2002) (life verdicts where defendant convicted of committing three murders-for-hire); *State v. Roseboro*, 604 A.2d 1286 (Conn. 1992) (life sentences for killings of an elderly woman, a mentally retarded man, and a young girl); Terry Pristin, *Jury Votes to Spare Life of Killer of 4 Women*, Los Angeles Times (Aug. 9, 1986) (life verdicts where defendant guilty of murdering four elderly women while committing rape, sodomy, arson, and burglary).

Indeed, the Eighth Amendment principles that govern penalty phase proceedings apply with equal force in *all* capital cases, regardless of how egregious or shocking the crimes may be. As the Fifth Circuit has explained:

> Texas's next argument – that Walbey suffered no prejudice because the brutality of his crime eclipses any mitigating evidence – is a non-starter. ... To permit a jury to impose the death sentence solely

14

> because the facts are heinous and egregious would be to return to the days of inflicting capital punishment based on emotion and revenge .... Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief ... would virtually never be available, so testing for it would amount to a hollow judicial act.

*Walbey v. Quarterman*, 309 F. App'x 795, 804 (5th Cir. 2009). The Eighth Amendment thus requires that "the sentence imposed at the penalty stage ... reflect a reasoned moral response to the defendant's background [and] character, *and not merely the crime*." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (internal quotation omitted). This Court's premise that "there was very little that could be done" at a penalty phase defense ignores both this Eighth Amendment principle and the reality of capital punishment in contemporary America.

Further, the Court's prejudice analysis was flawed because, as discussed above, the Court misapprehended the value of mitigating evidence as being dependent on its causal nexus to the crime. The Court thus concluded:

> Because the jury found significant aggravating circumstances and the movant was not young at the time of the murders, the court finds that expert evidence concerning the impact that the movant's upbringing and use of drugs as an adult had on him is entitled to little, if any, mitigating weight.

Opinion at 277. The Court's analysis recalls the error found in *Porter*, in which the Supreme Court held the state court's prejudice analysis unreasonable where it

15

"discounted the evidence of Porter's abusive childhood because he was 54 years old at the time of the trial." *Porter*, 558 U.S. at 37, 42. This Court committed similar error in discounting the mitigating value of the proffered evidence and in failing to undertake the broad appraisal of moral culpability required by the Eighth Amendment. *See Skipper*, 476 U.S. at 4; *Tennard*, 542 U.S. at 287; *McKoy*, 494 U.S. at 441.

The Court also erred when it reasoned that "[i]n light of their experience, trial counsel clearly knew what evidence is and is not persuasive when jurors from Iowa are asked to decide a murder case." Opinion at 223; *see also id.* at 277-79. The Court intimated a subjective analysis of what kind of evidence is prejudicial or "persuasive," but such an approach is clear error. The "assessment of prejudice ... should not depend on the idiosyncracies of the particular decisionmaker." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). Rather, prejudice is an *objective* inquiry, which asks whether it is reasonably probable that an objective jury's decision would have been affected by the unpresented evidence. *See id.* at 695, 700; *Wiggins*, 539 U.S. at 537.

Finally, the Court erred in faulting Petitioner for "his assertion of innocence and his refusal to express any remorse." Opinion at 278. The Court's reliance, even in part, on its censure of Petitioner's exercise of his Fifth Amendment's rights is clear error. As the Supreme Court has long held, "comment on the refusal

16

to testify is a remnant of the 'inquisitorial system of criminal justice,' which the Fifth Amendment outlaws." *Griffin v. California*, 380 U.S. 609, 614 (1965) (quoting *Murphy v. Waterfront Comm.*, 378 U.S. 52, 55 (1964)). This fundamental privilege against self-incrimination extends to sentencing hearings, even after guilt has been decided. *Mitchell v. United States*, 526 U.S. 314, 315 (1999). This Court plainly erred in drawing negative inferences from what it perceived as Petitioner's "refusal to express any remorse." *See id.*

### C. Conclusion

As the above discussion makes clear, numerous factual and legal errors pervaded the Court's analysis of Petitioner's allegations of counsel's ineffectiveness at the penalty phase of trial. After removing these errors from the Court's analysis, the conclusion is inescapable that there was a reasonable probability of a different outcome if counsel had collected and presented all of the available evidence at penalty phase. At a minimum, Petitioner has demonstrated that reasonable jurists could debate trial counsel's effectiveness, as analogous case law makes patently clear. *See Penney v. Sec'y, Dep't of Corr.*, 707 F.3d 1239, 1242 (11th Cir. 2013) (granting COA on ineffective assistance claim because "reasonable jurists could debate whether counsel's failure to call [a psychological expert] to testify during sentencing or submit his report at that phase constituted ineffective assistance of counsel in violation of the Sixth Amendment."); *Simon v.*

17

*Epps*, 344 F. App'x 69, 76 (5th Cir. 2009) ("because Simon's trial counsel presented no evidence of abuse at sentencing, we conclude that it is debatable among jurists of reason whether there is a reasonable probability that the development and presentation of Simon's history of abuse would have influenced the jury's appraisal of Simon's moral culpability"); *Alexander v. Dretke*, 152 F. App'x 387, 391 (5th Cir. 2005) (granting COA despite fact that counsel "conducted considerable investigation designed to discover mitigating evidence and produced substantial evidence during the punishment phase," because "reasonable jurists could debate whether or not additional evidence of Alexander's background was available to and accessible by trial counsel ....").

## CLAIM ELEVEN

### VICTIM IMPACT EVIDENCE PRESENTED TO THE JURY WAS RECEIVED IN VIOLATION OF THE FIFTH, SIXTH AND EIGHTH AMENDMENTS.

The victim impact testimony in this case was so emotionally charged that the presiding judge cried in front of the jury. Petitioner has repeatedly requested permission to interview the jurors so that he can litigate this claim in a meaningful way. This Court denied Petitioner's requests to speak to the jurors and then held that Petitioner did not establish that the jury was affected by the testimony and by the presiding judge's reaction to the testimony. Such a ruling is inconsistent with the constitutional requirements of the Eighth and Fifth Amendments.

In his habeas petition and in subsequent filings, Petitioner alleged that the

18

introduction of victim impact evidence violated the Constitution for several reasons and that prior counsel was ineffective in the handling of this evidence. Petitioner has argued that the testimony was so emotional and prejudicial that it caused the trial judge to become visibly distraught in front of the jury. Petitioner has also claimed that some of the testimony was speculative, and in some instances untrue. Finally, Petitioner has argued that the trial court's instruction failed to properly permit the jury to narrow its sentencing decision in accordance with the requirements of the Eighth Amendment. This Court's denial of this claim is in error for several reasons and Petitioner deserves reconsideration of this issue. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

With respect to Petitioner's claim that the emotional reaction by the trial Court in the presence of the jury rendered the victim impact presentation unconstitutional, this Court held that Petitioner did not establish that the jury actually witnessed that reaction and that, in any event, Petitioner did not show that this resulted in prejudice. *See* Opinion at 308 ("he points to no evidence that any juror saw the presiding judge react to the victim impact evidence or recognized the emotion in his voice."). Relying on this basis to deny the claim is erroneous in light of the fact that the Court denied Petitioner's repeated requests to interview the jurors. Indeed, there is no way for Petitioner to prove what this Court faults him for failing to prove, unless he is granted access to the jurors. The Court also faults Petitioner for merely speculating that the presiding judge's response to this evidence "intimated to the jury what sentencing decision to make." *Id.* at 307.

19

Again, Petitioner was hamstrung in his ability to prove the impact of the court's reaction on the jurors without having the opportunity to interview the jurors. The Court should reconsider its finding in this regard and should order that Petitioner have access to the jurors. As Petitioner has noted in his previous filings, the presiding judge specifically acknowledged the necessity of taking evidence on this issue (regarding the Court's emotional reaction) "may come *and probably will come* at a later day." Tr. at 3674 (emphasis added). Unless this Court reconsiders its denial of Petitioner's request for access to the jurors, that day can never come.

With respect to Petitioner's claim that prior counsel were ineffective for failing to limit, challenge or object to the victim impact evidence, the Court held that trial counsel's actions were "a result of tactical choices [deserving of] considerable deference." Opinion at 310. However, as Petitioner stated in his prior submissions, Mr. Spies, who was responsible for dealing with this evidence, did not recall why he did not object. 2255 Tr. at 524, 582-85. He merely speculated that he may not have wanted to appear insensitive in front of the jury. *Id.* at 585. However, Petitioner has argued that counsel were ineffective for failing to reasonably object to this evidence *in limine* or otherwise out of the presence of the jury.

Finally, this Court erred in failing to address Petitioner's claim that the victim impact testimony violated the Eighth Amendment. The Court's analysis only dealt with the question of whether this testimony violated due process. The Court should also address the issue under the Eighth Amendment. Indeed, the

20

*Payne* decision was grounded in an Eighth Amendment analysis. In its holding, the *Payne* Court stated, "[w]e thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar." *Payne*, 501 U.S. at 827. This Court engaged in no such analysis. If it had, the Court would have come to the conclusion that, due to the overwhelming nature of the victim impact evidence, evidence that caused the jury and the presiding judge to weep, the Eighth Amendment was violated. Indeed, central to the Court's decision in *Payne* to overrule prior precedent and allow victim impact evidence was the fact that the evidence presented in *Payne* was extremely limited. *Payne*, 501 U.S. at 826 ("the only evidence of the impact of Payne's offenses during the sentencing phase was Nicholas' grandmother's description – in response to a single question – that the child misses his mother and baby sister"). Such testimony must be narrow and is permitted only as a "legitimate way 'of informing the sentencing authority about specific harm caused by the crime in question.'" *Williams v. Norris*, 612 F.3d 941, 951 (8th Cir. 2010) (quoting *Payne*, 501 U.S. at 825). The testimony here far exceeded the limits envisioned by the *Payne* Court and the Constitution.

As such, this Court should reconsider its rulings, grant Petitioner access to the jurors and allow Petitioner to reopen the record to present evidence from the jurors. Following that hearing, Petitioner should be granted a new penalty hearing. At the very least, the Court should grant a certificate of appealability on this claim. Petitioner he has made a substantial showing of the denial of a

constitutional right.  *See Miller-El*, 537 U.S. at 335-36).

**CLAIM TWELVE**

**THE GOVERNMENT VIOLATED PETITIONER'S RIGHTS UNDER THE EIGHTH AMENDMENT AND THE DUE PROCESS CLAUSE BY PRESENTING INCONSISTENT ARGUMENTS AT HIS TRIAL AND HIS CO-DEFENDANT'S TRIAL; COUNSEL WERE INEFFECTIVE UNDER THE SIXTH AMENDMENT FOR FAILING TO DISCOVER AND PRESENT READILY AVAILABLE EVIDENCE THAT WAS PRESENTED BY THE GOVERNMENT AT HIS CO-DEFENDANT'S TRIAL.**

Petitioner has argued that the Government violated his due process and Eighth Amendment rights when it presented inconsistent penalty phase evidence and theories of culpability at his trial and his co-defendant Angela Johnson's trial. Petitioner has further argued that, to the extent trial counsel could have discovered and presented evidence that was utilized by the Government at Johnson's trial, they were ineffective for failing to do so and Petitioner was prejudiced by this failing.

The Court denied Petitioner's claim, ruling that: Petitioner has not shown how the Government's evidence or arguments affected the fundamental fairness of his trial; the evidence presented at both trials was not inconsistent; the Government's arguments at both trials were not inconsistent; any error would be harmless; and trial counsel was not constitutionally ineffective.  Opinion at 320-25.

The Court's rationale was flawed, because in denying this claim, it focused exclusively on the facts of the crime.  Regarding the fundamental fairness of

22

Petitioner's trial, it noted that nothing presented at Johnson's trial amounts to a "truly persuasive demonstration of [the movant's] 'actual innocence,'" or "demonstrates that there is evidence showing the movant is 'innocent of the death penalty." Opinion at 320 (citing *Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 335-36, 345 (1992)). Regarding the evidence presented by the Government, the Court reasoned that Petitioner

> points to argument and testimony from Angela Johnson's trial, but none of the excerpts indicate that the government presented improper or inconsistent evidence that was essential to the successful prosecution of Angela Johnson. In other words, it is clear that the government did not rely on a different factual premise to obtain convictions in Angela Johnson's case because it was unable to rely on the facts that it presented in the movant's case.

Opinion at 321. And regarding the prosecution's argument at each trial, the Court stated that the government's theory was that Petitioner and Johnson acted in concert and, "after the jury found that the movant was the principal offender, the government sought the death penalty for Angela Johnson on the theory that she aided and abetted the movant." *Id.* at 322.

The Court's reasoning is misplaced. Petitioner has never claimed that the Government's presentations at the two trials – either through its evidence or its argument – were inconsistent as to the facts of the underlying crimes (*e.g.*, by arguing that Petitioner was the triggerperson at his trial and arguing that Johnson was the triggerperson at her trial). Petitioner fully acknowledges that the Government cast him as the triggerperson at both trials and generally told the same

23

story regarding its version of the underlying events. What the Government did *not* do, however, was tell a consistent story regarding the relative moral culpability of Petitioner and Johnson. As set forth in Petitioner's § 2255 Motion, the Government made numerous statements and presented a good deal of evidence at Johnson's trial showing that Petitioner was nonviolent prior to meeting Johnson, and suggesting that Petitioner was not even capable of murder absent Johnson's influence.

Sentencing juries in death penalty cases are not asked to determine whether a defendant should live or die based solely on the facts of the underlying crime. *See*, *e.g.*, *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring) ("the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime") (emphasis in original); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (jurors are required to consider "the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind" in passing a sentence). Indeed, mitigating evidence presented at the penalty phase need have no nexus whatsoever to the crime. *Tennard v. Dretke*, 542 U.S. 274, 287 (2004).

Because capital sentencing decisions are, by their very nature, more subjective than guilt phase determinations, inconsistencies in prosecutorial evidence and argument at the penalty phase of co-defendants' trials will necessarily be more nuanced than inconsistencies relating to the hard facts of the guilt phase. Nevertheless, the inconsistencies present in this case are plain. At

24

Johnson's trial, Government argued that Petitioner was incapable of murder absent Johnson's influence. Someone who is incapable of murder, by definition, does not have the "character" necessary to support a death sentence. The Government's argument and evidence at Johnson's trial were thus directly contrary to its presentation at Petitioner's trial, where it argued that Petitioner was supremely deserving of the death penalty. These inconsistences regarding the two defendants' characters in the penalty phase context run afoul of the precept that the prosecution's "use of inherently factually contradictory theories violates the principles of due process" in the same way that inconsistencies regarding historical facts violate due process in the guilt phase context. *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000).

The Court failed to address these inconsistencies in its opinion. Although it quotes the same passages of the Government's argument cited by Petitioner in his motion, nowhere does the Court reconcile the Government's statements at Johnson's trial that Petitioner was incapable of murder without her influence with the Government's presentation at Petitioner's trial suggesting that he was a remorseless, dangerous killer. All of the Court's rationale is narrowly focused on the facts of the underlying crimes.

Moreover, these inconsistencies take on even greater significance now, given that Johnson has received a new sentencing hearing and may not even return to death row. Should that eventuality come to fruition, the stark difference in the Government's presentations at the two original trials will become even more

25

troublesome.

The Court should correct its error in failing to address the gravamen of Petitioner's claim. Given that the Court did not rule upon the central thrust of the claim, its resulting harmless error analysis was necessarily infirm as well. At a minimum, the Court should grant a certificate of appealability as to this claim. The error claimed here certainly involves a substantial showing that Petitioner was denied his constitutional rights under 28 U.S.C. § 2253(c)(2). Moreover, because further appellate guidance regarding the prosecution's duty not to present inconsistent penalty phase presentations is necessary, a certificate of appealability would serve the ends of justice.

## CONCLUSION

For the reasons stated, and based upon the entire record herein, this Court should grant relief under Rule 59(e) by reconsidering its denial of relief on the above-described issues or, at least, by granting a COA.

Respectfully Submitted,

/s/ Shawn Nolan
Shawn Nolan
Timothy Kane
Aren Adjoian
Ayanna Williams
Federal Community Defender
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Counsel for Petitioner
Dustin Lee Honken


Dated:        November 1, 2013
             Philadelphia, Pennsylvania

27

**CERTIFICATE OF SERVICE**

I, Shawn Nolan, hereby certify that on this 1st day of November, 2013, I served the foregoing on the following person via the Court's electronic delivery system:

C.J. Williams, Esq.
Assistant United States Attorney
United States Attorney's Office
Northern District of Iowa
401 First Street, S.E.
Hach Building, Suite 400
Cedar Rapids, IA 52401-1825

/s/ Shawn Nolan
Shawn Nolan