IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DUSTIN HONKEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 10-CV-3074-LRR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S RESISTANCE TO PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE OF CIVIL PROCEUDRE 59**

**TABLE OF CONTENTS**

I.     Introduction ........................................................................................2

II.    Claim Six – Alleged Hearsay Evidence on Drug Quantity ....................2

III.   Claim Nine – Ineffective Assistance of Counsel Regarding Mental
       Health Mitigation Claim...........................................................................5

       A.     Performance Claims.......................................................................5

       B.     Prejudice Claim..............................................................................13

       C.     Conclusion ......................................................................................15

IV.    Claim Eleven – Victim Impact Evidence................................................16

V.     Claim Twelve – Alleged Inconsistent Arguments..................................18

VI.    Conclusion ...............................................................................................21

## I.    INTRODUCTION

Movant asks the Court to reconsider its order denying his motion pursuant to 28 U.S.C. § 2255 ("Court's Order," Doc. # 99).   Movant's motion was brought under Rule 59(e) of the Federal Rules of Civil Procedure.   Rule 59(e) "serve[s] the limited function of correcting manifest errors of law or fact or to present newly discovered evidence."   *Holder v. United States*, 721 F.3d 979, 986 (8th Cir. 2013) (internal quotations and citations omitted).   Movant does not claim newly discovered evidence.   Rather, movant identifies four grounds where he claims the Court erred, and further requests the Court reverse its denial of a certificate of appealability. Movant cites no authority, and the government can find none, that applies Rule 59(e) to a denial of a certificate of appealability.

Movant's arguments are without merit and should be denied.

## II.    Claim Six – Alleged Hearsay Evidence on Drug Quantity

Movant faults the Court for failing to "rule on whether the Government violated Petitioner's Confrontation Clause rights via the use of this un-cross-examinable hearsay testimony [a laboratory report] to establish an element of several of his criminal charges."   (Doc. 101, at 4).   Movant's argument fails because whether trial counsel could have objected on confrontation right grounds is not determinative of whether the failure to object constituted ineffective assistance of counsel.   That a trial attorney may object to evidence does not mean the attorney must or should object in order to be an effective advocate.   Here, the Court has found

2

trial counsel were not ineffective for failing to object, even assuming they could have done so.

The Court properly found trial counsels' performance was not deficient because it was not unreasonable for trial counsel to recognize an attack on drug quantity was not material to the defense. (Doc. 99, at 133-36). The Court similarly found movant was not prejudiced because there was an abundance of evidence establishing drug quantity, aside from the laboratory report. (*Id.*). Further, drug quantity was an element of only the charges of murder in furtherance of a drug conspiracy. Drug quantity was not an element of the offense of murder in furtherance of a Continuing Criminal Enterprise. This Court found movant cannot be convicted of violating both statutes, so has vacated the convictions on the murder in furtherance of the drug conspiracy charges. (Doc. 99, at 398). Accordingly, drug quantity was not even an element of the offenses of conviction.

Movant makes much of his claim that the only reference to drug quantity in the closing argument was to the laboratory report. (Doc. 101, at 4 & n.1). Movant is wrong that the only reference to drug quantity was in relation to the laboratory report – the prosecutor also referenced the testimony of Tim Cutkomp and Jeff Honken as well. (Tr. 3290). Regardless, the limited references to drug quantity in the closing argument reveal how unimportant drug quantity was at trial. The trial was focused on whether movant murdered the victims in furtherance of his drug activity, not on the quantity of drugs involved. In any event, movant does not and

3

cannot dispute that there was significant, unrebutted testimony, including movant's own statements, establishing that the operation produced pounds of very pure methamphetamine. (See, e.g., Trial Exhibit 20 (recording of Greg Nicholson and movant in which they discussed Nicholson distributing a quarter pound of methamphetamine, Nicholson ordering another kilogram of methamphetamine, movant bragging about the purity of his methamphetamine, and discussion about movant making more than $100,000 from drug sales to Nicholson in the last year); Trial Exhibit 27, pp. 9-12 (Greg Nicholson's grand jury testimony that movant delivered to him at least 900 grams of pure methamphetamine); Tr. 700-705 (testimony by Tim Cutkomp that he and movant manufactured between five and six batches of methamphetamine, the first producing between two and four ounces, the largest producing between 1 and 1 & 1½ pounds of methamphetamine, that they added "cut" to the methamphetamine, and on one trip alone Cutkomp delivered a pound and a half of uncut methamphetamine equaling more than 680 grams).

Accordingly, it was not necessary for the Court to determine whether the laboratory report was admissible for it to find trial counsel were not ineffective for failing to object to admission of the laboratory report. Even assuming it was inadmissible, trial counsel's performance did not fall outside the wide range of reasonable conduct in failing to object to admission of the report when there was overwhelming evidence of drug quantity aside from the report, drug quantity was not seriously an issue of contention, and movant suffered no prejudice when drug

quantity is not an element of the counts of conviction. Movant has failed to demonstrate manifest error in the Court's analysis. Moreover, movant has failed to demonstrate why the Court's denial of a certificate of appealability on this issue was in error.

## III. Claim Nine – Ineffective Assistance of Counsel Regarding Mental Health Mitigation Claim

Movant claims the Court erred when if found trial counsel were not ineffective in their investigation of mental health mitigation evidence. Movant claims the Court erred because it "repeatedly speculated about strategic decisions that trial counsel 'could have' made," arguing that "it is improper to speculate about plausible or potential strategic decisions where, as here, the record demonstrates that counsels' actions were not based on such decisions." (Doc. 101, at 5). Regarding the prejudice prong, movant claims the Court erred in placing too much weight on the aggravating evidence (Doc. 101, at 13), "misapprehend[ing] the value of mitigating evidence as being dependent on its causal nexus to the crime," (*Id.*, at 15), used a subjective analysis (*Id.*, at 16), and by "faulting Petitioner" for asserting his innocence (*Id.*, at 16). Movant's arguments are without merit.

### A. Performance Claims

Movant asserts the Court erred by speculating trial counsel had strategic reasons for making their decisions regarding a possible mental health mitigation claim. Movant fundamentally misapprehends the meaning of the presumption that trial counsel's performance is reasonable under the test enunciated in *Strickland v.*

*Washington*, 466 U.S. 668, 689 (1984).   The Supreme Court held that trial counsel's performance must be presumed reasonable and that it is movant's burden to overcome the presumption that the challenged action might be considered a sound strategy decision by trial counsel.   466 U.S. at 689.   Thus, the government need not prove, and the record need not contain, subjective testimony by trial counsel justifying each decision as a product of strategy.   Rather, trial counsels' decisions are presumed to be a product of strategy, unless movant can overcome that presumption.   *See, e.g.*, *Theus v. United States*, 611 F.3d 441, 446-47 (8th Cir. 2010) (citing *Strickland*, and finding trial counsel was "presumably" aware that moving for a new trial could result in a higher sentence, and therefore finding his performance was the result of a reasonable strategy decision); *United States v. Recendiz*, 557 F.3d 511, 533 (7th Cir. 2009) (where there is no record of trial counsel's motivation for an action, the court must presume it was strategic unless persuaded otherwise); *Thomas v. Varner*, 428 F.3d 491, 499-500 (3rd Cir. 2005) ("At first, the presumption is that counsel's conduct might have been part of a sound strategy . . . . In cases in which the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy . . . could have supported the conduct.").   Thus, the burden was on the movant to prove trial counsels' decisions were not a product of strategy; the government did not have to prove the decisions were the product of strategy.

6

Therefore, the Court properly evaluated trial counsel's conduct to determine if it could have been based on a strategic decision.

Further, movant fails to appreciate the standard is an objective one, not a subjective one. In other words, if, objectively, a reasonable attorney could have acted for sound strategic reasons, it does not matter whether trial counsel's conduct was actually the product of mistake, oversight, or strategy. *See, e.g., Gordon v. United States*, 518 F.3d 1291, 1031 (11th Cir. 2008) ("Because the standard is objective . . ., it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel.").

Not surprisingly, then, there are any number of cases where courts have used the identical "could have" language movant here criticizes this Court for using. *See, e.g., Bucci v. United States*, 662 F.3d 18, 31-32 (1st Cir. 2011) (finding trial counsel's conduct objectively reasonable because counsel "<u>could have</u> made the strategic decision to forego the Sixth Amendment argument . . ..") (emphasis added); *Ball v. United States*, 271 Fed. App'x 880, 885 (11th Cir. 2008) ("Under the circumstances, competent counsel <u>could have</u> concluded that, rather than telegraph his impeachment strategy as to Styron in a possibly unsuccessful motion to suppress, he would save it in hopes that his cross examination would be more effective.") (emphasis added); *United States v. Martin*, 262 Fed. App'x 392, 398 n.4 (3rd Cir. 2008)

7

("The district court considered the strategy raised by the Government and found '[i]t could have been a strategic decision on the part of trial counsel, and [the defendant] does not present evidence to meet his burden of proving otherwise.'") (emphasis added).

The cases movant cites are distinguishable. In *Wiggins v. Smith*, 539 U.S. 510 (2003), the defendant demonstrated that what could have been a strategy decision was a decision based on a failure to investigate. Thus, *Wiggins* does not stand for the proposition that a court cannot presume a strategy existed for a decision. Rather, it is an example of the settled law that the presumption can be overcome by evidence. The same is true of *Kimmelman v. Morrison*, 477 U.S. 365 (1986), where the evidence showed trial counsel failed to conduct any pretrial discovery. *Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990), cites to *Kimmelman*, but incorrectly reasons from its holding, just as movant has done here, that a court cannot presume a decision was the result of strategy. *Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003), is distinguishable because in that case the criticism was that the government assumed facts not in evidence to support a strategy, not that the court presumed there was a strategic reason for a decision. Finally, *Griffin v. Warden*, 970 F.2d 1355 (4th Cir. 1992), is similar to *Wiggins* and *Kimmelman* in that the court found the evidence overcame the presumption.

Therefore, movant is simply wrong in criticizing this court for presuming trial counsel made strategic decisions. The Court did not err when it looked at the record

8

and determined objectively what could have motivated trial counsels' actions.   In this case, movant simply failed to present sufficient evidence to rebut that presumption.

Moreover, this was not a case where trial counsel failed completely to investigate a possible mental health mitigation case.   There is no evidence in the record to support movant's contention that trial counsel made "a decision not to collect mitigating evidence."   (Doc. 101, at 9).   To the contrary, trial counsel hired mental health experts and had movant evaluated.   They hired a mitigation specialist who collected extensive information about movant's childhood, school performance, and upbringing.   The Court concluded from the record that "[i]t cannot be said that trial counsel's investigation was substandard or that they made an unreasonable decision after conducting an inadequate investigation."   (Doc. 99, at 223).   The test of competent counsel is not whether their performance was perfect. Rather, it's whether their performance was reasonable.   *White v. Helling*, 194 F.3d 937, 941 (8th Cir. 1999) ("We must resist the temptation to use hindsight to require that counsel's performance have been perfect.").   Here, the record aptly demonstrated trial counsels' performance was reasonable.   The truth is, there was simply insufficient evidence that movant suffered any mental health disease or defect that would merit presentation as mitigation evidence, especially given the possible use the government could have made of the evidence in cross examination and on rebuttal.

9

Movant continues to criticize the Court's opinion in other particulars. Movant claims "the Court repeatedly misconstrued mitigating evidence as evidence that 'justified or excused the crimes that [Petitioner] had been found guilty of committing.'" (Doc. 101, at 9, quoting the Court's order at 245). Movant asserts this "clearly erroneous" reasoning is related to the Court upholding "limitations on counsel's investigation where evidence did not have a causal nexus to the crimes." (Doc. 101, at 10). Movant claims this analysis is clearly erroneous because mitigating evidence is not limited to evidence tied to a causal connection to the crimes, but is any evidence supporting a sentence less than death. (*Id.*).

Movant's criticism here is unfounded. First, movant has taken the Court's words out of context. No where did the Court indicate that mitigating evidence must be tied to excusing the murders. The quotes movant cites are lifted from portions of the Court's order where it discussed the reasonableness of trial counsels' conduct in evaluating the impact of weak or non-existent mental health claims that fail to explain why movant committed the crimes. While mental health problems can constitute mitigating evidence even if they do not justify or explain the criminal conduct, the weight such evidence has is, realistically, much less than when it does arguably justify or excuse the criminal conduct. It was not unreasonable for trial counsel to take this into account in weighing the advisability of pursuing mental health mitigation as a theme.

10

Movant claims the Court erred when it "asserted there was 'evidence that the movant . . . was actively involved with his defense'" because, movant reasons, the Court must have "relied on a purported decision by Petitioner not to pursue mental health or other mitigating evidence. . .." (Doc. 101, at 10). Once again, movant takes the Court's words out of context and misconstrues them. The Court did not at any point reason that trial counsel was justified in not pursuing a mental health mitigation case because of decisions by movant. Movant lifted the quote from a section of the Court's order where it was summarizing the nature and extent of trial counsels' investigation into movant's background and noted that they had developed rapport with movant. That reference was not explicitly or implicitly an assertion the Court excused trial counsels' performance because of input by movant.

Movant criticizes the Court's criticism of movant expert, Dr. Richard G. Dudley, for "'reviewing collateral material in an effort to anticipate what movant's difficulties might be.'" (Doc. 101, quoting the Court's order at 256). Movant claims reliance on collateral material is appropriate. (Doc. 101, at 11-2). Nothing in the Court's order suggests reliance on collateral material is inappropriate. The Court's criticism was focused on the review of "biased collateral information" collected by a mitigation specialist, which alleged movant suffered "trauma, abuse, [and] abandonment," when there was "virtually no evidence that demonstrates the movant experienced any trauma, abuse or abandonment during his childhood or adolescence." (Doc. 99, at 256). Further, the Court recognized a fundamental

11

difference between review of collateral information to help reach an opinion after an evaluation, and Dr. Dudley's review of this biased collateral information in an effort to anticipate what movant's difficulties might be.

Movant argues "in a similar vein," the Court erred when it "found Petitioner's mental health experts unpersuasive because they purportedly 'refused to explore the movant's state of mind just prior to committing the murders, while committing the murders and after committing the murders." (Doc. 101, at 12). Movant claims this is error because the "Court plainly overlooked its own role in setting the limits of the mental health evaluations," citing the Court's order that the government's expert's "evaluation is limited to the issues that are raised in ground nine of the movant's motion to vacate, set aside or correct sentence." (Doc. 101, at 13). Movant then boldly asserts that his ground nine "plainly addressed only the penalty phase and did not raise guilt phase issues regarding Petitioner's *mens rea.*" (*Id.*). This is mere sophistry. The Court was well within its right, in evaluating persuasiveness of movant's experts, to consider that movant chose to limit the scope of the evaluations to evade movant's state of mind before, during, and after the murders. That movant limited that scope by the manner in which he crafted his argument or by instructions to his experts, or both, does not mean that the Court is bound blindly to accept that limitation. When movant killed five people, including two little girls, movant's state of mind before, during, and after the murders is obviously relevant to any realistic

12

understanding of his mental health.   That movant's experts did not explore that state of mind detracts from the persuasiveness of any opinion they reached.

B. Prejudice Claim

Movant argues "the Court's analysis of prejudice was undermined by several fundamental errors . . . [m]ost prominently," the Court's conclusion "there was very little that could be done to nullify the overwhelming aggravating evidence."   (Doc. 101, at 13, quoting the Court's order, at 277).   Movant asserts "[t]his sentiment pervaded the Court's prejudice analysis."   (*Id.*).   Movant reasons this was error because "[t]he Court's reasoning . . . overlooks the fact that highly aggravated cases frequently result in life sentences."   (*Id.*).   Nothing in the Court's analysis reflects that it "overlooked" the fact that other egregious cases have resulted in life sentences. In evaluating the impact of trial counsels' decision not to present weak or non-existent mental health mitigation evidence, the Court obviously must consider and weigh, just as a jury would, the impact of the highly aggravating factors.   Of course, it is possible in other cases, based on the unique facts of those cases, including the defendant's role in the offense, the defendant's mental health issues, and other mitigating evidence, for a defendant to escape death for committing horrendous crimes.   That does not in any way mean that the Court erred, in evaluating the possible prejudice in this case, based on these facts, in considering the aggravating nature of the crimes movant committed.

13

Movant further asserts "the Court's prejudice analysis was flawed because . . . the Court misapprehended the value of mitigating evidence being dependent on its causal nexus to the crime."   (Doc. 101, at 15).   Movant claims the Court's analysis "recalls the error" in *Porter v. McCollum*, 558 U.S. 130 (2009).   The Court's analysis here is nothing like the trial court's analysis in *Porter*.   In *Porter*, there was uncontroverted evidence the defendant witnessed his father regularly beating his mother, one time so severely his mother had to go to the hospital, the defendant's father was violent every weekend, the defendant's father regularly beat the defendant, and the defendant's father shot at the defendant.   *Porter*, 558 U.S. at 449.   The trial court discounted that abusive childhood because of its age relative to the time of the murder.   Here, the Court found there was virtually no evidence of childhood abuse.   Further, the Court did not discount the alleged abuse because of its age.   Rather, the Court, here, recognized that purported evidence of childhood abuse would have provided little, if any, mitigating weight when the jury found significant aggravating factors and movant committed the offense when he was an adult.

Movant goes on to assert "the Court also erred when it "intimated a subjective analysis of what kind of evidence is prejudicial" by reference to jurors from Iowa. (Doc. 101, at 16, quoting a portion of the Court's order at 223).   Again, movant takes the Court's statements out of context.   The quote movant cites came from that portion of the Court's opinion evaluating trial counsels' performance, not the Court's

14

prejudice analysis. Although movant provides a "see also" citation to pages 277-79 of the Court's opinion, there is nothing on those pages indicating, or intimating, that the Court engaged in a subjective analysis of prejudice based on the "idiosyncrasies" of an Iowa jury.

Finally, once again taking the Court's statements out of context, movant argues "the Court erred in faulting Petitioner for 'his assertion of innocence and his refusal to express any remorse,'" boldly arguing this was a violation of Petitioner's exercise of his Fifth Amendment rights. (Doc. 101, at 16). It was nothing of the sort. The Court was not faulting the movant for asserting his innocence or refusing to express remorse. Rather, the Court was noting that the aggravating evidence and cross examination of movant's experts would have undermined his defense "especially . . . because the movant's current theory of defense still encompasses his assertion of innocence and his refusal to express any remorse." (Doc. 99, at 278). Thus, there is nothing in the Court's order supporting movant's assertion the Court drew "negative inferences from what it perceived as Petitioner's 'refusal to express any remorse.'" (Doc. 101, at 17).

C. <u>Conclusion</u>

Movant has failed to carry his burden of showing manifest error of fact or law. Contrary to movant's argument, the Court did not err in its analysis of whether movant demonstrated ineffective assistance of counsel based on movant's allegations that trial counsel failed to investigate and present mitigating evidence. The Court's

conclusion was sound that there was no probability that there would be a different outcome if counsel had collected and presented the mitigation evidence proffered by movant. Under the facts of this case, based on the evidence presented in this case, the Court also did not err in denying a certificate of appealability on this issue.

## IV.    Claim Eleven – Victim Impact Evidence

Movant claims the Court erred in finding there was no violation of the movant's constitutional rights regarding the government's presentation of victim impact evidence. (Doc. 101, at 18-21). Movant makes several specific allegations of error.

First, movant claims the Court erred in finding Petitioner did not show an emotional reaction by the trial judge was witnessed by the jury "in light of the fact that the Court denied Petitioner's repeated requests to interview the jurors." (Doc. 101, at 19). Movant asserts "there is no way for Petitioner to prove what this Court faults him for failing to prove, unless he is granted access to the jurors." (*Id*.). Movant is wrong. First, there was any number of other people in the courtroom, including movant's own counsel, who could have testified about the matter. Had defense counsel, or a spectator, or marshal, or anyone else in the courtroom observed the jury watching the judge and exhibiting some reaction, that would have been some evidence to support movant's claim. Movant presented no such evidence. Second, testimony by jurors about "the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . ." is inadmissible.

16

Fed. R. Evid. 606(b)(1).   Therefore, movant could not use interviews of jurors about what impact, if any, the judge's emotional reaction to the evidence had on the jurors in any event.

Movant further faults the Court for rejecting movant's argument that trial counsel were ineffective for failing to object to the victim impact evidence because, he claims, he "argued that counsel were ineffective for failing to reasonably object to this evidence *in limine* or otherwise outside the presence of the jury."   (Doc. 101, at 20). Movant's Memorandum of Law and Supplemental Motion Pursuant to 28 U.S.C. § 2255 only asserted that "[t]rial counsel ineffectively failed to object to or otherwise litigate the issues arising from the victim impact evidence."   (Doc. 19, at 118). Movant did not specifically claim trial counsel erred in failing to anticipate the victim impact evidence by filing a motion in limine on the issue.   In any event, the Court found "the victim impact evidence was neither false nor unduly prejudicial" (Doc. 99, at 305), or "excessive or cumulative" (Doc. 99, at 306).   Therefore, there would have been no merit to an objection, whether made in limine or otherwise outside the presence of the jury.

Finally, movant claims the court erred in failing to address his claim that the victim impact evidence violated the Eighth Amendment.   (Doc. 101, at 20).   The Court was fully aware of movant's argument that the victim impact evidence violated his Eighth Amendment rights.   (Doc. 99, at 297, 300, 301 – referencing movant's Eighth Amendment argument).   Moreover, the Court cited and relied upon the

17

decisions in *Payne v. Tennessee*, 501 U.S. 808 (1991) and *Williams v. Norris*, 612 F.3d 941 (8th Cir. 2010), which movant so strongly argues the Court should have considered.  (Compare Doc. 101, at 21, where movant argues the Court should have considered the Eighth Amendment analysis under these decisions, with Doc. 99, at 303, where the Court discusses and analyzes these, and other decisions). Ultimately, the Court found "no constitutional violation occurred."  (Doc. 99, at 311). Talismanic recitation to specific Constitutional provisions the Court considered is unnecessary when a fair reading of its analysis shows it was aware of, and analyzed movant's claims, under the Eighth Amendment.

Accordingly, movant has failed to carry his burden of demonstrating the Court committed manifest error of law or fact.  The Court should not reverse its decision. It should not permit movant to invade the privacy of the jurors to solicit inadmissible information.  And it should not certify this claim for appeal.

## V.     Claim Twelve – Alleged Inconsistent Arguments

Movant claims the Court's analysis of this claim "was flawed, because in denying this claim, it focused on the facts of the crime."  (Doc. 101, at 22).  Movant claims "[t]he Court's reasoning is misplaced [because] Petitioner has never claimed that the Government's presentation at the two trials . . . were inconsistent as to the facts of the underlying crimes [but, rather, movant claims] the Government did not…tell a consistent story regarding the relative culpability of Petitioner and Johnson."  (Doc. 101, at 23-24).  Movant's argument is without merit.

18

First, movant is wrong regarding his own claims. Movant did claim that the government's presentation at the two trials was inconsistent as to the facts. In his Petition, movant claimed "the Government relied on inconsistent <u>evidence</u> and theories . . .." (Doc. 19, at 121) (emphasis added). *See also* Doc. 19, at 122 ("The Government's <u>evidence</u> and argument regarding Petitioner's relative culpability was much different during Johnson's case.") (emphasis added); Doc. 19, at 127 ("The Government's contrary views and <u>evidence</u> from Johnson's trial were directly relevant to Petitioner's culpability and numerous disputed issues at Petitioner's penalty phase, including the question of his future dangerousness.") (emphasis added). Moreover, movant continues to claim there was inconsistent evidence presented at the two trials. See Doc. 101, at 25 ("The Government's argument and <u>evidence</u> at Johnson's trial were thus directly contrary to its presentation at Petitioner's trial . . ..") (emphasis added).

Second, movant misrepresents the government's arguments regarding the movant's and Johnson's relative culpability. Movant claims the "Government argued that Petitioner was incapable of murder absent Johnson's influence." (Doc. 101, at 25). *See also* Doc. 101, at 25 ("Although it quotes the same passages of the Government's argument cited by Petitioner in his motion, nowhere does the Court reconcile the Government's statements at Johnson's trial that Petitioner was <u>incapable</u> of murder without her influence with the Government's presentation at

19

Petitioner's trial suggesting that he was a remorseless, dangerous killer.") (emphasis added).

The government made no such argument. The government never claimed in Johnson's trial that movant was incapable of murder. Movant fails to cite the transcript to support this claim. A word search of the transcript, in fact, failed to reveal any use of the word "incapable." Movant cannot simply recast the government's argument in an effort to fabricate an inconsistency. The government's theme in both trials was consistent -- the combination of movant and Johnson was deadly. The government never said or implied that movant was incapable of murder.

Third, movant's authority shows the fallacy of his argument. In *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000), the court vacated the defendant's conviction where the prosecutor argued "inherently factually inconsistent theories." In *Smith*, the government argued in one trial that Smith was guilty of felony murder because one of his associates killed the victims during a robbery, but in a subsequent trial the government argued another person killed the victims before Smith arrived. 205 F.3d at 1048. There was nothing in the government's arguments here that were inherently factually inconsistent. The relative culpability of two defendants who, together, murdered five people, is not an issue of factual inconsistency. The government argued, consistently, that each was morally culpable for the murders, each in their own way. There is nothing factually inconsistent in arguing that

20

Case 3:10-cv-03074-LTS-KEM   Document 103   Filed 11/14/13   Page 20 of 21

movant lacked the guts to commit a murder without prodding by Johnson, and that Johnson lacked the brains to plan and carry out the murders without movant's capacity for evil scheming.

Movant's speculation about whether Johnson will return to death row is irrelevant to an analysis of whether the government presented an unconstitutional, factually inconsistent, argument at movant's trial.

## VI.    CONCLUSION

For the reasons set forth above, the United States respectfully requests the Court deny movant's Rule 59(e) motion in its entirety.

Respectfully submitted,

SEAN R. BERRY
United States Attorney

By: s/C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
111 7th Avenue SE; Box 1
Cedar Rapids, IA 52401
(319) 363-6333;(319) 363-1990 - fax
CJ.Williams@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on November 14, 2013.

UNITED STATES ATTORNEY

BY:    s/   S. Van Weelden

COPIES TO: Defense counsel

21