# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

DUSTIN LEE HONKEN,

      Movant,

vs.

UNITED STATES OF AMERICA.

No. CV10-3074-LRR
No. CR01-3047-MWB


ORDER REGARDING MOTION TO
ALTER OR AMEND JUDGMENT
UNDER FEDERAL RULE OF CIVIL
PROCEDURE 59(e)

---

## TABLE OF CONTENTS

I.      **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     **ARGUMENTS OF THE PARTIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

    A.    *The Movant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
        *1.*    *Ground Six* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
        *2.*    *Ground Nine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
        *3.*    *Ground Eleven* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        *4.*    *Ground Twelve* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    B.    *The Government* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
        *1.*    *Ground Six* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
        *2.*    *Ground Nine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
        *3.*    *Ground Eleven* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
        *4.*    *Ground Twelve* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

III.    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

    A.    *Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
    B.    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
        *1.*    *Newly discovered evidence* . . . . . . . . . . . . . . . . . . . **16**
        *2.*    *Manifest error* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

IV.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

# I. INTRODUCTION

The matter before the court is Dustin Lee Honken's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59 ("motion") (civil docket no. 101). Dustin Lee Honken ("the movant") filed the motion on November 1, 2013. The government filed a resistance to the motion (civil docket no. 103) on November 14, 2013. The movant did not file a reply. Neither party requested to present oral arguments on the motion, and the court finds that they are unnecessary. The court now turns to consider the parties' written submissions.

# II. ARGUMENTS OF THE PARTIES

## A. The Movant

In his motion, the movant asks the court to reconsider its denial of relief under 28 U.S.C. § 2255 (civil docket nos. 99, 100). More specifically, the movant objects to the court's resolution of Ground Six, Ground Nine, Ground Eleven and Ground Twelve. Aside from asking the court to reconsider its decision in light of the errors that it allegedly made, the movant asks the court to reconsider its denial of a certificate of appealability under 28 U.S.C. § 2253. More specifically, the movant objects to the court's refusal to grant a certificate of appealability as to Ground Six, Ground Nine, Ground Eleven and Ground Twelve because the issues that he raised are debatable among jurists of reason, a court could resolve the issues that he raised differently and/or the questions that he raised are adequate to deserve encouragement to proceed further.

### 1. Ground Six

As to Ground Six, the movant asserts that the court failed to address whether the government's use of a laboratory report without proper foundation violated his rights under the Confrontation Clause of the Sixth Amendment. He maintains that it was necessary for the court to address the underlying constitutional violation before deciding whether trial counsel provided ineffective assistance. He faults the court for justifying trial counsel's failure to object to the introduction of the laboratory report because the other drug quantity

evidence that came out during trial was substantially less reliable. Further, he claims that a certificate of appealability should issue because he has substantially showed that he was denied his constitutional right to confront a witness against him.

## 2. *Ground Nine*

Regarding Ground Nine, the movant raises multiple errors of law and fact that allegedly undermined the court's analysis of trial counsel's conduct under *Strickland v. Washington*, 466 U.S. 668 (1984). As to the court's analysis of trial counsel's performance, the movant advances six allegations of error. First, the movant claims that the court repeatedly speculated about strategic decisions that trial counsel could have made under the circumstances of this case and states that speculation as to plausible or potential strategic decisions is improper where the record demonstrates that trial counsel's actions were not based on any of the strategic decisions that the court offered. The movant emphasizes that trial counsel had a duty to obtain appropriate evaluations, undertake more testing and consult with the proper experts because red flags indicated that a mental health evaluation was important and necessary and additional red flags indicated that he endured a turbulent and damaging upbringing. In support of his claim that the court clearly erred by speculating about the decisions that could have been made and ignoring the reasons offered by trial counsel, the movant points to particular statements of trial counsel and several excerpts from the court's October 4, 2013 order.

Second, the movant contends that the court conflated the decision not to present mitigating evidence with the decision not to collect mitigating evidence. He states that the court misconstrued his core allegation because it failed to take into account that trial counsel never obtained mental health evaluations and, therefore, they could not weigh the benefits of what they could present against a potential response from the government. He also states that trial counsel's decisions are not subject to deference because they failed to conduct a thorough investigation.

3

Third, the movant claims that the court repeatedly misconstrued mitigating evidence as merely relating to justification for his crimes rather than possibly serving as a basis for a sentence of less than death and impermissibly countenanced the suggestion that his mental health evidence was not relevant because it did not have a causal nexus to the crimes. He states that, as a result of discounting mental health evidence that was undoubtedly relevant even if it did not excuse his conduct, the court erred when it determined that trial counsel conducted an adequate investigation.

Fourth, the movant states that the court erred when it observed that the movant assisted with his defense. He argues that, in the event that the court found that he decided to refrain from pursuing mental health evidence or other mitigation evidence, support for the notion that he made such a decision or that trial counsel relied on it is lacking. In addition, the movant asserts that the duty to thoroughly investigate a case and to determine the course of the penalty phase falls on trial counsel, not him, and such duty persists regardless of the level of involvement that he had in his defense.

Fifth, the movant claims that the court erred when it found that Dr. Richard G. Dudley, Jr.'s findings lacked credibility. He maintains that the court impermissibly concluded that Dr. Richard G. Dudley, Jr.'s review of collateral material undermined his opinions because other courts have concluded that doing so is entirely proper and reliable. He also maintains that, rather than ignore what the movant expressed, Dr. Richard G. Dudley, Jr. based his opinions on a wide range of sources and evidence. In light of the court's findings, the movant asserts that the court lacked a proper understanding of the duty and role of forensic mental health experts.

Sixth, the movant argues that the court erred when it found his mental health experts unpersuasive because they did not explore his state of mind just prior to committing the murders, while committing the murders and after committing the murders. He states that the court plainly overlooked its own role in setting the limits of the mental health evaluations. Namely, the movant points out that, when ruling on the government's motion

for a court order regarding a mental health evaluation, the court restricted the government's mental health evaluation to the issues that he raised in Ground Nine. The movant emphasizes that it is impermissible to fault his counsel or his experts for abiding by the parameters that the court itself set.

Concerning the court's analysis of the prejudice he suffered as a result of decisions that trial counsel made in relation to the penalty phase, the movant advances four allegations of error. First, the movant claims that the court's pervasive sentiments about the aggravating evidence caused it to overlook the fact that there are cases where life sentences are obtained in spite of highly aggravating evidence. The movant states that constitutional principles apply in all capital cases, including those where shocking or egregious crimes have been committed, and require the sentence imposed during the penalty phase to reflect a reasoned moral response to his background, character and crimes. He also states that the court's premise that very little could be done during the penalty phase ignores constitutional principles and the reality of capital punishment in contemporary America.

Second, the movant maintains that the court misapprehended the value of the mitigating evidence by requiring a causal nexus to the crimes. He states that the court unreasonably discounted the expert evidence concerning the impact that his upbringing and use of drugs as an adult had on him. And, the movant again emphasizes that the court failed to undertake a broad assessment of his moral culpability.

Third, the movant asserts that the court improperly intimated a subjective analysis of what kind of evidence is prejudicial or persuasive when it referenced trial counsel's familiarity with jurors from Iowa. He states that the assessment of prejudice does not depend on the idiosyncrasies of the particular decision maker and a proper objective inquiry only addresses whether it is reasonably probable that a jury's decision would have been affected by the evidence that was not presented.

Fourth, the movant claims that the court erred by drawing negative inferences from his assertion of innocence and refusal to express any remorse. He states that the Fifth Amendment of the United States Constitution prohibits any censure for exercising his privilege against self-incrimination even after the jury has determined his guilt and the court's statements typify the inquisitorial system of criminal justice that is forbidden.

So, with respect to the ten factual and legal allegations of error concerning Ground Nine, the movant advances that it is a given that there was a reasonable probability of a different outcome if trial counsel had collected and presented all of the available evidence during the penalty phase. And, at a minimum, the movant maintains that a certificate of appealability should issue because he has demonstrated that reasonable jurists could debate trial counsel's effectiveness. The movant asserts that it is at least debatable among jurists of reason whether there is a reasonable probability that further development and presentation of his upbringing and use of drugs would have influenced the jury's appraisal of his moral culpability.

### 3. *Ground Eleven*

With respect to Ground Eleven, the movant claims that the court denied him the opportunity to meaningfully litigate whether the victim impact evidence was too emotional and highly charged. He states that the court unreasonably decided that the jury was unaffected by either the evidence or the presiding judge's emotional reaction to the evidence because it prevented him from interviewing the jurors. He emphasizes that, because the court refused to grant him access to the jurors, there was no way for him to prove to the court that: (1) any juror saw the presiding judge react to the victim impact evidence or recognized the emotion in his voice and (2) anything the presiding judge did intimated to the jury what sentencing decision to make. Further, the movant contends that the court could not conclude that trial counsel made tactical decisions because trial counsel could not recall a specific reason for the course that they chose and that the court only addressed whether the victim impact testimony violated his right to due process. As to the

latter contention, the movant states that, if the court had undertaken an analysis under the Eighth Amendment of the United States Constitution, it would have concluded that a constitutional violation occurred due to the overwhelming nature of the victim impact evidence. In light of the record, the movant argues that the court should allow him access to the jurors, reopen the record and grant him a new penalty phase hearing, and he maintains that, at a minimum, a certificate of appealability should issue because he has made a substantial showing of the denial of a constitutional right.

### 4.    *Ground Twelve*

Lastly, regarding Ground Twelve, the movant asserts that the court's reasoning is flawed because it focused on the wrong thing, that is, the facts of the underlying crimes. The movant states that, rather than claim that the government's presentation during his trial and presentation during Angela Johnson's trial in her related case were inconsistent as to the facts of the underlying crimes, he claimed that the government did not tell a consistent story regarding his relative moral culpability and Angela Johnson's relative moral culpability. He once again emphasizes that a jury in a capital case is not asked to determine whether a defendant should live or die based solely on the facts of the underlying crimes and that mitigating evidence presented at the penalty phase need not have any nexus whatsoever to the crimes. He points out that inconsistencies in arguments at the penalty phase of the trials of co-defendants will necessarily be more nuanced than inconsistencies relating to the facts presented during the merits phase. Based on the record, the movant argues that the court failed to reconcile the government's post-trial statements that indicated he was incapable of murder absent Angela Johnson's influence with trial statements that suggested he was a remorseless, dangerous killer. He contends that the court should address the gravamen of Ground Twelve and put aside its necessarily infirm harmless error analysis. In addition, the movant claims that a certificate of appealability should issue because he has made a substantial showing of the denial of a constitutional right and further appellate guidance is necessary.

### B. The Government

In its resistance, the government emphasizes that the movant does not rely on newly discovered evidence to alter or amend the judgment, and it contends that the movant's four allegations of error are without merit. In addition, the government asserts that there is no basis to reverse the denial of a certificate of appealability.

#### 1. Ground Six

Concerning Ground Six, the government observes that: (1) the issue of whether trial counsel could have objected to the introduction of a laboratory report on the basis of the movant's constitutional right of confrontation is not determinative of whether the failure to object constituted ineffective assistance of counsel; (2) the fact that an attorney may object to certain evidence does not mean he or she must object to be an effective advocate; (3) the five capital counts of continuing criminal enterprise murder did not require proof of drug quantity; (4) the limited references to drug quantity during closing arguments reveal how unimportant the issue of drug quantity was at trial; (5) the focus of the movant's trial was on whether he murdered Gregory Nicholson, Lori Duncan, Kandi Duncan, Amber Duncan and Terry DeGeus; and (6) the non-laboratory report evidence that was introduced during trial established that the drug operation produced pounds of very pure methamphetamine. In light of those observations, the government states that it was not necessary for the court to determine whether the laboratory report was or was not admissible before concluding that it was reasonable for trial counsel to recognize that contesting drug quantity was not central to the movant's defense and that the movant suffered no prejudice as a result of trial counsel's actions because substantial evidence established drug quantity. It maintains that relief, which includes issuing a certificate of appealability, is not warranted because the movant has failed to demonstrate manifest error in the court's analysis.

**2.      *Ground Nine***

As to Ground Nine, the government argues that the court did not err when it found that trial counsel's investigation of the mitigation evidence was reasonable and that trial counsel exercised professional judgment in determining the best possible mitigation case to present during the penalty phase.  The government states that the movant's arguments regarding the court's analysis of trial counsel's conduct under *Strickland* are without merit.

With respect to the court's analysis of trial counsel's performance, the government contends that the court properly evaluated their conduct in light of the following: (1) the movant fundamentally misapprehends the meaning of the presumption that trial counsel's performance is reasonable under *Strickland*; (2) it is the movant's burden to overcome the presumption that the challenged action of trial counsel might be considered a sound strategic decision; (3) it need not prove that trial counsel made a strategic decision and the record need not contain subjective testimony by trial counsel that justifies each decision as a product of strategy; and (4) the movant failed to overcome the strong presumption that trial counsel's decisions were a product of strategy.  It also contends that the movant fails to appreciate that an objective standard is applicable and, consequently, it does not matter whether trial counsel's conduct was the product of mistake, oversight or strategy.  The government states that a proper inquiry addresses what reasonably could have motivated trial counsel and whether the movant has overcome the presumption that trial counsel's conduct might have been part of a sound strategy.  And, the government maintains that the movant's criticism of the court for looking to the record and objectively determining what could have motivated trial counsel's decisions is proper because the movant failed to rebut the presumption that trial counsel made strategic decisions.  Further, the government states that the cases relied on by the movant are distinguishable, points out that the movant's case is unlike cases where the investigation lacked efforts to discover mitigating evidence and emphasizes that a meaningful mitigation case that included evidence of the movant's mental

health could not be presented, especially considering what might have been introduced on cross-examination and during rebuttal.

As to the movant's criticism of the court for discounting the role that mental health evidence could play in arriving at a sentence of less than death, the government observes that the court never indicated that mitigating evidence must be tied to excusing the murders. It contends that the court's discussion concerned the reasonableness of trial counsel's evaluation of the impact of weak or non-existent mental health claims that fail to explain why the movant committed the crimes, that the weight of mental health mitigating evidence that does not explain criminal conduct is much less than when it does arguably justify or excuse criminal conduct and that it was reasonable for trial counsel to take into account how the jury would view such evidence when considering whether to pursue mental health mitigation as a theme.

Aside from observing that the movant took the court's words out of context when he referenced the court's discussion about the use of mental health mitigating evidence, the government observes that the movant took the court's reference to the movant's role in his own defense out of context. The government states that the court never reasoned that trial counsel was justified in failing to pursue a mental health mitigation case based on decisions that the movant made. It points out that, when summarizing the nature and extent of trial counsel's investigation into the movant's background and noting that they had developed rapport with the movant, the court did not explicitly or implicitly excuse trial counsel's performance as a result of input by the movant.

Similarly, the government states that the movant misrepresents the court's discussion relating to Dr. Richard G. Dudley, Jr.'s opinions. It states that nothing in the court's October 4, 2013 order suggests that reliance on collateral material is inappropriate and that the court focused on Dr. Richard G. Dudley, Jr.'s use of biased collateral material, that is, information that was collected by a mitigation specialist who alleged that the movant suffered trauma, abuse and abandonment when there was virtually no evidence

that demonstrated he experienced any maltreatment during his childhood or adolescence. It also states that the court recognized a difference between a forensic mental health expert's review of collateral information to help reach an opinion after an evaluation and Dr. Richard G. Dudley, Jr.'s review of biased collateral information in an effort to anticipate what the movant's difficulties might be.

In addition, the government characterizes the movant's argument that the court erred when it faulted the movant's mental health experts for failing to explore the movant's state of mind just prior to committing the murders, while committing the murders and after committing the murders because it set the limits of the mental health evaluations as sophistry. It states that, when evaluating the persuasiveness of the movant's mental health experts, the court properly considered that the movant chose to limit the scope of the evaluations so as to avoid his state of mind before, during and after the murders. The government argues that the court is not bound to blindly accept a limitation that the movant established when he framed his ground for relief and/or instructed his mental health experts. The government emphasizes that the movant's state of mind before, during and after the murders is obviously relevant to any realistic understanding of his mental health and the failure to explore that state of mind detracts from the persuasiveness of the opinions that the movant's mental health experts reached.

Like the movant's contentions relating to the court's analysis of trial counsel's performance, the government claims that the movant's contentions relating to the court's analysis of the prejudice he suffered as a result of trial counsel's conduct are without merit. The government asserts that nothing in the court's analysis reflects that it overlooked the fact that other egregious cases have resulted in life sentences, and it points out that, when evaluating trial counsel's decision not to present weak or non-existent mental health mitigating evidence, the court must consider and weigh the impact of the highly aggravating evidence. It states that it is possible that the unique facts in other cases could have led to a sentence of less than death even where horrendous crimes have been

11

committed but it does not necessarily follow from those cases that the court's analysis under *Strickland* failed to take into account the movant's role in the crimes, the movant's mental health and other mitigating evidence.

Regarding the movant's assertion that the court misapprehended the value of mitigating evidence by requiring a causal nexus to the crimes, the government asserts that the court's analysis is unlike the analysis of the state courts that the Supreme Court took issue with in *Porter v. McCollum*, 558 U.S. 30 (2009). Namely, the government contends that, unlike the record in *Porter*, there was virtually no evidence that the movant experienced childhood abuse and, unlike the state courts, the court did not discount the alleged abuse because of its age. It emphasizes that the court recognized that the purported evidence of childhood abuse would have provided little, if any, mitigating weight when the jury found significant aggravating factors and the movant committed the crimes when he was an adult.

As for the movant's allegation that the court intimated a subjective analysis of what kind of evidence is prejudicial by referencing jurors from Iowa, the government asserts that the movant once again misrepresents what the court actually stated. It contends that the court was evaluating trial counsel's performance rather than the prejudice to the movant's defense. It also contends that the court never engaged in a subjective analysis of prejudice based on the idiosyncrasies of an Iowa jury.

Similarly, the government claims that the movant's assertion that the court faulted him for asserting his innocence and for refusing to express any remorse is incorrect. It states that the court did not violate the movant's right against self-incrimination because the court merely noted that the aggravating evidence and cross-examination of the movant's mental health experts would have undermined his defense because it still encompasses his assertion of innocence and his refusal to express any remorse. It emphasizes that the court's October 4, 2013 order does not support the movant's assertion

that the court drew negative inferences from the movant's refusal to express any remorse for his crimes.

In light of the movant's arguments and the record, the government asserts that the movant failed to show manifest error of fact or law. It states that the court did not err in its analysis of whether the movant demonstrated a violation of his right to counsel in relation to trial counsel's investigation and presentation of mitigating evidence during the penalty phase. Because the court properly concluded that there was no reasonable probability that the outcome of the penalty phase would have been different had trial counsel collected mitigating evidence and presented the movant's current mitigation case, the government maintains that altering or amending the judgment is not justified. And, the government asserts that the facts in this case do not indicate that the court erred in denying a certificate of appealability.

### 3.    *Ground Eleven*

As to the movant's victim impact evidence allegations of error, the government maintains that the court appropriately addressed the movant's contentions in its October 4, 2013 order. The government observes that, insofar as the movant contends that the court erred in finding that he failed to show the jury witnessed an emotional reaction by the judge because there was no way to make such a showing without interviewing the jurors, the movant is mistaken. It states that there were other people who could have testified about the matter and the movant could have offered some evidence in support of his contentions had trial counsel, a spectator or anyone else in the courtroom observed the jury and the presiding judge. The government emphasizes that Federal Rule of Evidence 606(b) prevents a juror from testifying about the effect of anything on his or her vote or another juror's vote and, consequently, the movant could not use the interviews of jurors to establish the impact that the presiding judge's emotional reaction to the evidence had on the jurors.

In addition, the government claims that the movant's argument that the court failed to properly address trial counsel's failure to object to the victim impact evidence pursuant to a motion in limine or otherwise object outside the presence of the jury is without merit because the movant did not specifically claim that trial counsel erred in failing to anticipate the victim impact evidence by filing a motion in limine on the issue. And, the government states that, in any event, there would have been no merit to raising as an issue the victim impact evidence because the court found that it was not false, unduly prejudicial, excessive or cumulative.

Further, the government asserts that the record belies the movant's assertion that the court did not analyze his claim under the Eighth Amendment of the United States Constitution. It states that the court was fully aware of the movant's argument that the victim impact evidence violated his constitutional rights, including his right to be free from cruel and unusual punishment. And, it emphasizes that the court properly found that no constitutional violation occurred and that the court need not recite specific constitutional provisions when a fair reading of its analysis indicates that it considered all of the movant's constitutional arguments.

Based on the record, the government argues that the movant failed to establish manifest error of fact or law and, therefore, relief is not available. Aside from arguing that the court should not reverse its decision with respect to Ground Eleven, the movant argues that the court should not issue a certificate of appealability.

### 4. Ground Twelve

With regard to Ground Twelve, the government maintains that the court did not err. The government claims that the movant's argument as to the court's failure to analyze the inconsistent stories that addressed his relative moral culpability and Angela Johnson's relative moral culpability is without merit. The government points out that the movant did fault it and continues to fault it for presenting inconsistent evidence during his trial and Angela Johnson's trial. It also points out that the movant misrepresents its arguments

regarding his relative moral culpability and Angela Johnson's relative moral culpability. The government states that it never claimed or implied that the movant was incapable of murder absent Angela Johnson's influence during Angela Johnson's trial. It also states that its theme that the movant and Angela Johnson created a deadly combination was consistent during both trials. In addition, the government contends that the legal authority relied on by the movant is not persuasive because it cannot be said that its arguments were inherently factually inconsistent. It emphasizes that the movant's relative moral culpability and Angela Johnson's relative moral culpability for murdering Gregory Nicholson, Lori Duncan, Kandi Duncan, Amber Duncan and Terry DeGeus is not an issue of factual inconsistency and that it argued consistently that each was morally culpable in their own way—the movant by planning and carrying out the murders and Angela Johnson by prodding the movant to commit the murders.

### III.  ANALYSIS

#### A.  Applicable Standards

Rule 59(e) of the Federal Rules of Civil Procedure provides as follows: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). On its face, this rule does not set forth standards for granting relief. *See id.* Nonetheless, the Eighth Circuit Court of Appeals has explained that such rule "authorizes a district court to alter or amend a judgment based on newly discovered evidence," *Briscoe v. Cnty. of St. Louis, Mo.*, 690 F.3d 1004, 1015 (8th Cir. 2012) (citing *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413-14 (8th Cir. 1988)), or authorizes a district court "[to correct] manifest errors of law or fact," *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care, Inc. v. P.T.—O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)) (internal quotation mark omitted). *Accord Lowry v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 761 (8th Cir. 2008). Although it is clear that a "district court possesses the power to rectify its own mistakes in the period immediately following the entry of

judgment" under Rule 59(e), *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (quoting 5 F.R.D. 433, 476 (1946)) (internal quotation mark omitted), "[Rule 59(e)] motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered and raised prior to entry of judgment." *Holder v. United States*, 721 F.3d 979, 986 (8th Cir. 2013) (quoting *Innovative Home Health Care, Inc.*, 141 F.3d at 1286) (internal quotation marks omitted).

Further, relief under Rule 59(e) is subject to the district court's "broad discretion." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) (quoting *Metro. St. Louis Sewer Dist.*, 440 F.3d at 933). "An abuse of discretion occurs where the district court fails to consider an important factor, gives significant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors." *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 863 (8th Cir. 2011) (quoting *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010)) (internal quotation marks omitted).

## B.  Application

With respect to the merits of the movant's motion, the court finds that it did not err when it entered judgment against the movant. The court adequately applied the law to the facts in the movant's case. A review of the record indicates that the arguments the movant included in his motion are without merit and/or disingenuous. On the other hand, the record indicates that the assertions the government made in its resistance to the motion are fair and compelling.

### 1.    Newly discovered evidence

The movant states that he is asking the court to address only certain errors that rise to manifest error of law or fact and that he is not raising all of the court's errors. He does not assert that newly discovered evidence authorizes the court to alter or amend the judgment. *See generally Briscoe*, 690 F.3d at 1015-16. Thus, altering or amending the judgment on the basis of newly discovered evidence is not warranted.

## 2.     Manifest error

Concerning Ground Six, the court reaffirms its conclusion that there was no constitutional violation due to ineffective assistance of trial counsel. Contrary to the movant's assertions, neither *Strickland* nor any other legal authority requires a court to make a finding that a violation of the Confrontation Clause occurred prior to determining whether a constitutional violation due to ineffective assistance of counsel occurred. The court fairly addressed the movant's allegations because the movant never asserted a stand-alone claim based on his constitutional right of confrontation. Rather than assert a stand-alone claim, the movant asserted that trial counsel failed to challenge the use of a laboratory report on the basis that the Confrontation Clause and the Federal Rules of Evidence bar testimonial hearsay. He necessarily had to allege ineffective assistance of counsel because a stand-alone assertion based on the Confrontation Clause was procedurally defaulted. Moreover, the court's two-pronged analysis comports with the law. When addressing the performance of trial counsel, the court explicitly rejected the movant's contention that trial counsel has an obligation to object to all objectionable evidence. Similarly, regarding prejudice, the court determined that the movant suffered none for multiple reasons. All of the reasons given by the court remain valid. Because all of the movant's assertions as to Ground Six are unpersuasive, it is unnecessary to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). And, the movant's arguments do not lead the court to conclude that its resolution of Ground Six requires a certificate of appealability.

As to Ground Nine, none of the movant's arguments lead the court to a different conclusion. Contrary to the movant's assertions, the court's analysis is not flawed because it impermissibly speculated about strategic decisions that trial counsel could have made. The court accurately described trial counsel's conduct. The court did not conjure up tactical decisions that trial counsel plainly did not make, assume facts not in the record to manufacture a reasonable strategic decision or use hindsight to supply a strategy for trial

counsel. Instead, the court relied on the extensive record to support its conclusions. Although it did not designate particular post-conviction statements from trial counsel that were credible and not credible, the court's analysis reflects that it made credibility determinations based on the facts, the passage of time, the uncertainty of recollections of the past and the inherent desire to achieve a different outcome. The court's analysis also reflects that it understood the nature of the movant's claims and rejected them after taking into account all of the facts. The court adequately addressed the thoroughness of trial counsel's investigation and the reasonableness of trial counsel's decision not to present mental health evidence in light of their investigation.

Further, the court disagrees with the movant's assertion that it failed to properly consider the movant's mitigating evidence. A fair reading of the court's October 4, 2013 order indicates that it considered the facts and determined that there were not substantial circumstances about the movant's mental makeup and background that were mitigating in a capital sentencing setting. The court appropriately considered all aspects of the movant's mitigation case. Those aspects included but were not limited to trial counsel's investigation and consideration of evidence that might explain why he resorted to violence and evidence that might serve as a basis for a sentence of less than death. And, the court appropriately considered trial counsel's investigation in light of their relationship with the movant.

With respect to the movant's assertion that the court lacked a proper understanding of the duty and role of forensic mental health experts, the bases for such assertion do not cause the court to second-guess any of its findings. The movant misrepresents the court's analysis of Dr. Richard G. Dudley, Jr's opinions. Consequently, the court stands by its determination that the testimony offered by Dr. Richard G. Dudley, Jr. is not credible. Similarly, the court concludes that it properly considered the scope of the evaluations that the movant's mental health experts conducted. The government correctly points out that the movant chose the issues that he wanted to litigate and that the failure to explore the

18

movant's state of mind before, during and after the murders detracts from the persuasiveness of the opinions that the movant's mental health experts reached.

Aside from concluding that its analysis of trial counsel's performance with respect to the penalty phase of trial did not include manifest error, the court concludes that the movant's contentions relating to the court's analysis of the prejudice he suffered as a result of trial counsel's conduct lack merit. Contrary to the movant's assertions, the court did not overlook anything or ignore constitutional principles. The court appropriately took into account the mitigating evidence as well as the aggravating evidence in the movant's case. The court's analysis indicates that it correctly considered whether sentences of death reflect a reasoned moral response to the movant's background, character and crimes. It cannot be said that the court impermissibly limited its evaluation of the movant's moral culpability in light of the mitigating evidence that the movant offered. The court neither misapprehended the value of the mitigating evidence by requiring a causal nexus to the crimes nor unreasonably discounted the expert evidence concerning the impact that the movant's upbringing and use of drugs as an adult had on him.

Further, the court disagrees that it intimated that a subjective analysis of prejudice is appropriate. The movant misstates the record. The court properly addressed trial counsel's conduct and never took into account the idiosyncracies of the jurors when determining whether the defense suffered any prejudice as a result of trial counsel's conduct. Likewise, the court is unconvinced by the movant's assertion that the court's analysis runs afoul of his rights under the Fifth Amendment of the United States Constitution. The court's reference to the defense that the movant asserted is not improper.

Thus, none of the movant's arguments establish manifest error by the court. Because the court's analysis as to Ground Nine comports with the law and the facts, it is unnecessary to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). And, the movant's arguments do no lead the court to conclude that its resolution of Ground

Nine necessitates a certificate of appealability. The court disagrees that reasonable jurists could debate trial counsel's effectiveness or that reasonable jurists could debate that there is a reasonable probability that further development and presentation of the movant's upbringing and use of drugs would have influenced a jury's assessment of his moral culpability.

With regard to Ground Eleven, the court concludes that the movant's assertions are baseless. The movant had a full and fair opportunity to litigate Ground Eleven, and the lack of support for his contentions is not attributable to the court's refusal to allow him to interview jurors. Further, trial counsel did not unreasonably fail to do anything prior to trial, during trial or after trial, especially considering the nature of the victim impact evidence. And, contrary to the movant's assertion, the court took into account all of the constitutional provisions that he cited as a basis for relief. The court's analysis reflects that it rejected the movant's contention that the victim impact testimony was not consistent with his right to due process and right to be free from cruel and unusual punishment because it was not narrow enough, it was too overwhelming or it failed to inform the sentencing authority about the specific harm caused by the crimes in question. So, the court declines to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or issue a certificate of appealability under 28 U.S.C. § 2253 with respect to Ground Eleven.

Lastly, the movant's assertions as to the court's analysis regarding Ground Twelve are without merit. Contrary to the movant's claims, the government did not offer inherently factually inconsistent arguments during the movant's trial and Angela Johnson's trial in her related case. The government appropriately addressed the movant's relative moral culpability and Angela Johnson's relative moral culpability. Consequently, there is no basis to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or issue a certificate of appealability under 28 U.S.C. § 2253 with regard to Ground Twelve.

## IV.  CONCLUSION

In sum, the court considered the movant's arguments and is unable to discern any error of fact or law.  *See generally Holder*, 721 F.3d at 986.  Because the movant offers no valid bases that indicate the court made a mistake when addressing his grounds for relief, the court is unwilling to rely on Federal Rule of Civil Procedure 59(e) to alter or amend the judgment.  In addition, with respect to a certificate of appealability, the court disagrees that further appellate guidance is necessary.  The court is mindful of the fact that the movant need not show that an appeal will succeed but declines to issue a certificate of appealability in light of the record.  This is so even in light of the nature of the penalty that the movant faces.

**IT IS THEREFORE ORDERED:**

The movant's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59 (civil docket no. 101) is denied.

**DATED** this 11th day of December, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA